SIDLEY AUSTIN LLP
Samuel A. Newman (SBN 217042)
(sam.newman@sidley.com)
Julia Philips Roth (SBN 324987)
(julia.roth@sidley.com)
555 West Fifth Street
Los Angeles, CA 90013
Telephone: 213.896.6000
Facsimile: 213.896.6600

SIDLEY AUSTIN LLP
Charles M. Persons (*pro hac vice* pending)
(cpersons@sidley.com)
Juliana Hoffman (*pro hac vice* pending)
(jhoffman@sidley.com)
Jeri Leigh Miller (*pro hac vice* pending)
(jeri.miller@sidley.com)
2021 McKinney Avenue
Suite 2000
Dallas, TX 75201
Telephone: 214.981.3300
Facsimile: 214.981.3400

*Proposed Attorneys for Debtors and
Debtors in Possession*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>WAVE COMPUTING, INC., *et al.*,<br><br>    Debtors.[1] | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 20-50682 (MEH)<br><br>Chapter 11 (Joint Administration Requested)<br><br>Assigned to the Hon. M. Elaine Hammond<br><br>**MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), AND 503 FOR ENTRY OF ORDERS (I) AUTHORIZING THE PAYMENT OF CRITICAL VENDORS; AND (II) GRANTING RELATED RELIEF**<br><br>Hearing Scheduled:<br>Date: May 1, 2020<br>Time: 11:15 a.m. (Pacific Time) |

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Wave Computing, Inc. (4264), MIPS Tech, Inc. (8247), Hellosoft, Inc. (8640), Wave Computing (UK) Limited (None), Imagination Technologies, Inc. (6967), Caustic Graphics, Inc. (7272), and MIPS Tech, LLC (2161). The Debtors' mailing address is 3201 Scott Blvd, Santa Clara, CA 95054.

)  Place:  280 South 1st St.
)          San Jose, CA 95113-3099
)

Wave Computing, Inc. ("Wave") and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), submit this motion (this "Motion"), pursuant to sections 105, 363, and 503 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (i) authorizing, but not directing, the Debtors to pay prepetition amounts owing in the ordinary course on account of certain Critical Vendors and 503(b)(9) Claimants (each as defined below and collectively, the "Claimants"), in an aggregate interim amount not to exceed $80,000 (the "Interim Order Cap") and in an aggregate final amount not to exceed $160,000, inclusive of the amounts paid pursuant to this Interim Order (the "Final Order Cap"); (ii) authorizing, but not directing, the Debtors to honor outstanding obligations to the Claimants on a postpetition basis in the ordinary course of business and consistent with past practice; and (iii) authorizing, but not directing, the Debtors to pay in advance if reasonably desirable to procure goods and services in the ordinary course of business and otherwise consistent with past practice; and (iv) granting related relief.

A proposed form of order granting the relief requested herein on an interim basis (the "Interim Order") is attached hereto as **Exhibit A**.

# TABLE OF CONTENTS

I.      JURISDICTION ...............................................................................................1

II.     BACKGROUND ...............................................................................................1

III.    RELIEF REQUESTED .....................................................................................1

IV.    DESCRIPTION OF DEBTORS' VENDORS .................................................2

       A.      The Critical Vendors .............................................................................2

       B.      The 503(b)(9) Claimants ........................................................................4

V.      BASIS FOR RELIEF REQUESTED ...............................................................5

       A.      The Court Should Grant the Relief Requested Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code..............................................................5

       B.      The Court Should Authorize the Payment of Claims Entitled to Priority Pursuant to Section 503(b)(9) of the Bankruptcy Code...................................7

       C.      The Processing of Checks and Electronic Fund Transfers Should Be Authorized.......................................................................................7

VI.    EMERGENCY CONSIDERATION .................................................................8

VII.   REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS ...............................8

VIII.   RESERVATION OF RIGHTS ..........................................................................9

IX.    NOTICE ...........................................................................................................9

Case: 20-50682    Doc# 33    Filed: 04/28/20    Entered: 04/28/20 19:02:54    Page 3 of 30

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Am. Suzuki Motor Corp.*,
    Case No. 12-22808.................................................................................................5

*Armstrong World Indus., Inc. v. James A. Phillips, Inc.* (*In re James A. Phillips, Inc.*),
    29 B.R. 391( S.D.N.Y. 1983)..................................................................................5

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'Ship*,
    526 U.S. 434 (1999)...................................................................................................6

*Burchinal v. C. Wash. Bank (In re Adams Apple, Inc.)*,
    829 F2d 1484 (9th Cir. 1987)...................................................................................5

*In re CoServ, L.L.C.*,
    273 B.R. 487 (Bankr. N.D. Tex. 2002)...................................................................5

*Czyzewski v. Jevic Holding Corp.*,
    137 S. Ct. 973 (2017)................................................................................................5

*In re Forever 21, Inc.*,
    Case No. 19-12122 (Bankr. D. Del. Sept. 30, 2019) .............................................5

*In re Global Home Prods., LLC*,
    Case No. 06-10340, 2006 WL 3791955 (Bankr. D. Del. Dec. 21, 2006).................7

*In re Ionosphere Clubs, Inc.*,
    98 B.R. 174 (Bankr. S.D.N.Y. 1989)......................................................................5

*In re Just for Feet, Inc.*,
    242 B.R. 821 (D. Del. 1999) ...............................................................................5, 6

*In re PG&E Corp.*,
    Case Nos. 19-30088, 19-30089 (Bankr. N.D. Cal. Jan. 31, 2019)........................5

*In re Verity Health Sys. of Cal., Inc.*,
    Case No. 18-20151 (Bankr. N.D. Cal. Sept. 7, 2018)............................................5

**Statutes**

11 U.S.C. § 105(a) ............................................................................................................5, 6

11 U.S.C. § 363(b) ............................................................................................................5, 6

11 U.S.C. § 365.....................................................................................................................9

Case: 20-50682    Doc# 33    Filed: 04/28/20    Entered: 04/28/20 19:02:54    Page 4 of 30

11 U.S.C. § 503(b)(9) ......................................................................................................7

11 U.S.C. § 1107(a) ........................................................................................................1

11 U.S.C. § 1108 .............................................................................................................1

11 U.S.C. § 1129(a)(9) ....................................................................................................7

28 U.S.C. § 157 ...............................................................................................................1

28 U.S.C. § 1334 .............................................................................................................1

28 U.S.C. § 1408 .............................................................................................................1

28 U.S.C. § 1409 .............................................................................................................1

**Other Authorities**

Bankruptcy Rule 2002 .....................................................................................................9

Bankruptcy Rule 6003 .....................................................................................................8

Bankruptcy Rule 6004(a) .............................................................................................8, 9

Bankruptcy Local Rule 5011-1(a) ..................................................................................1

iii

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. JURISDICTION

The United States Bankruptcy Court for the Northern District of California (this "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the Northern District of California (the "Bankruptcy Local Rules"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under the Bankruptcy Code in this Court. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in these Chapter 11 Cases, and no statutory committee has been appointed.

Additional information regarding the Debtors' business, capital structure, and the circumstances preceding the Petition Date may be found in *Declaration of Lawrence R. Perkins in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.[2]

## III. RELIEF REQUESTED

By this Motion, the Debtors respectfully request entry of the Interim Order, substantially in the form of **Exhibit A**, and the granting of, among other things, the following relief:

    i.    authorizing, but not directing, the Debtors to pay:

        a.    prepetition amounts owing in the ordinary course on account of certain Critical Vendors (as defined below), provided such vendor has executed an agreement substantially in the form attached as **Exhibit 1** to the Interim Order (the "Vendor Agreement"); and

---

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

1

b. prepetition amounts owing in the ordinary course on account of certain 503(b)(9) Claimants (as defined below);

ii. authorizing, but not directing, the Debtors to honor outstanding obligations to the Claimants on a postpetition basis in the ordinary course of business and consistent with past practice;

iii. authorizing, but not directing, the Debtors to pay in advance if reasonably desirable to procure goods and services in the ordinary course of business and otherwise consistent with past practice; and

iv. granting related relief.

## IV. DESCRIPTION OF DEBTORS' VENDORS

### A. The Critical Vendors

The Debtors operate a privately-traded, independent technology company engaged in the licensing of coarse grain reconfigurable architecture. As part of these operations, the Debtors rely on certain information technology, software, and colocation services (collectively, the "Critical Vendors"). Without these services, the Debtors would likely experience significant disruption in licensing their products to customers, which would cause revenue streams to dry up and cause a negative impact on the Debtors' likelihood of success in these Chapter 11 Cases.

The Debtors do not have long-term supply agreements with most of their Critical Vendors, and instead, source the service on an order-by-order basis. As a result, the Debtors have limited leverage to compel performance from the Critical Vendors on commercially reasonable terms.

With the assistance of their advisors, the Debtors have identified five (5) service providers that may be "critical" to the Debtors' business.[3] In identifying the Critical Vendors, the Debtors considered a variety of factors including:

- the services provided;

- the general terms of vendor performance over the past twelve (12) months;

- the Debtors' business needs for the services provided;

---

[3] Such Critical Vendors disclosed on **Exhibit B** attached hereto. Exhibit B has been filed under seal pending the Court's ruling on the Debtors' Motion to Seal, filed contemporaneously herewith.

2

- whether the services are provided pursuant to a long-term contract or on an order-by-order basis;

- whether failure to pay all or part of a particular vendor's claim would cause the vendor to refuse to provide services on a postpetition basis;

- whether failure to pay a particular vendor could result in contraction of trade terms as a matter of applicable non-bankruptcy law or regulation;

- whether the vendor is a sole- or limited-source service provider due to particular local, regional, or national customer preferences;

- whether alternative vendors are available that could provide similar services on equal (or better) terms and, if so, whether the Debtors would be able to continue operating while transitioning business thereto;

- the degree to which replacement costs (including pricing, transition expenses, etc.) would exceed the amount of a vendor's prepetition claim; and

- whether the Debtors' inability to pay all or part of the vendor's prepetition claim could trigger financial distress for the applicable vendor.

Through the prescreening process, the Debtors determined that the Critical Vendors identified are vendors that (i) do not have long-term contractual relationships with the Debtors; (ii) provide services critical to the Debtors' ongoing business operations; and (iii) are either sole-source providers or cannot be replaced without significant time and expense, which would cause irreparable harm to the Debtors' operations. The Debtors do not intend to afford any contract counterparties critical vendor status unless absolute necessary for the preservation of the Debtors' business and otherwise consistent with their sound business judgment.

The Debtors will use commercially reasonable efforts to require Critical Vendors to continue to provide services in line with historical terms. In connection with these efforts, the Debtors seek authority to require, in their sole discretion and as a condition of payment of any Critical Vendor claim, the Critical Vendor to enter into a Vendor Agreement, substantially in the form attached as **Exhibit 1** to the Interim Order. The Vendor Agreement will require the Critical Vendor to continue to supply services to the Debtors on customary trade terms until the earlier of (i) the effective date of a chapter

3

11 plan for the Debtors or (ii) two (2) years from the date of such agreement. As defined in the Vendor Agreement, "customary trade terms" means trade terms at least as favorable to the Debtors as those terms governing the relationship between the Critical Vendor and Debtors within the twelve (12) months prior to the Petition Date, or such other trade terms that are acceptable to the Debtors in their sole discretion, including payment of cash in advance. The Vendor Agreement, once accepted by a Critical Vendor, shall be the legally binding contractual relationship between the parties governing the commercial relationship as provided therein.

As of the Petition Date, the Debtors estimate that they owed $80,000 or less to Critical Vendors on account of prepetition debt.

### B.      The 503(b)(9) Claimants

In the ordinary course of business, the Debtors may have received certain inventory, goods, or materials from various domestic vendors (collectively, the "503(b)(9) Claimants") within the 20-day period immediately preceding the Petition Date. Each of these 503(b)(9) Claimants provide their respective inventory, goods, or materials on an order-by-order basis. The Debtors believe that, as of the Petition Date, they do not owe any amounts on account of goods or materials delivered by the 503(b)(9) Claimants. Out of an abundance of caution, however, the Debtors are requesting the authority, but not the direction, to pay any *de minimis* undisputed claims of 503(b)(9) Claimants as may emerge, with total aggregate payments not to exceed $5,000. The Debtors intend to pay the 503(b)(9) Claimants only where they believe, in the exercise of their sound business judgment, that the benefits to their estates from making such payments will exceed the costs to their estates.

4

## V.     BASIS FOR RELIEF REQUESTED

### A.     The Court Should Grant the Relief Requested Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code

Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate.[4]  In so doing, these courts have acknowledged that the theories behind sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as requested herein.[5]

Pursuant to section 363(b) of the Bankruptcy Code, payment of prepetition obligations may be authorized where a sound business purpose exists for doing so.[6]  In fact, courts have recognized that in certain instances a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim."[7]  As such, courts in this and other districts routinely grant debtors authority to pay certain prepetition claims in similar circumstances.[8]

---

[4] *See, e.g.*, *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (noting that courts have approved payment of prepetition invoices of essential suppliers); *In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a bankruptcy court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."); *see also Burchinal v. C. Wash. Bank (In re Adams Apple, Inc.)*, 829 F2d 1484, 1490 (9th Cir. 1987) (acknowledging in the context of an appeal of a debtor in possession financing motion that cases permit the unequal treatment of prepetition debt in contexts such as payment of debts to providers of unique and irreplaceable supplies when necessary for rehabilitation).

[5] *See Jevic*, 137 S. Ct. at 985 (offering considerations for when payment should be made to critical vendors)

[6] *See Ionosphere Clubs*, 98 B.R. at 175 (touting the "broad flexibility" of section 363(b)); *Armstrong World Indus., Inc. v. James A. Phillips, Inc.*, (*In re James A. Phillips, Inc.*), 29 B.R. 391, 398( S.D.N.Y. 1983) (citing section 363 as basis for allowing contractor to pay prepetition claims of potential lien claimants).

[7] *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

[8] *See In re PG&E Corp.*, Case Nos. 19-30088, 19-30089 (Bankr. N.D. Cal. Jan. 31, 2019) (authorizing payment of prepetition claims of shippers, warehouseman, and other lien claimants) [Docket No. 214]; *In re Verity Health Sys. of Cal., Inc.*, Case No. 18-20151 (Bankr. N.D. Cal. Sept. 7, 2018) (authorizing payment of prepetition claims of certain critical vendors) [Docket No. 134]; *In re Am. Suzuki Motor Corp.*, Case No. 12-22808 (Bankr. C.D. Cal. Nov. 7, 2012 (authorizing payment of prepetition claims of critical vendors in the ordinary course) [Docket No. 69]; *see also In re Forever 21, Inc.*, Case No.

Courts may also authorize payment of prepetition vendor claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[9] Permitting a debtor to honor certain prepetition obligations under section 105(a) is consistent with the recognized policy of the Bankruptcy Code—preserving going concern value and maximizing property available to satisfy creditors.[10] Thus, section 105(a) permits courts to authorize the payment of prepetition obligations prior to plan confirmation when such payment is essential to the continued operation of the debtor's business.[11]

Here, there is a significant likelihood that one or more of the Critical Vendors identified will refuse to continue providing services to the Debtors absent payment of their prepetition debt. Without these services, the Debtors will likely experience significant difficulty in maintaining their license agreements with various customers, potentially leading to a significant decline in royalty revenue.

In an effort to avoid maintain the greatest flexibility possible, the Debtors have filed their list of five (5) service providers that may be "critical" to their business under seal as **Exhibit B**. The Debtors do not intend to award any party Critical Vendor status unless absolutely necessary to maintain services, and thus do not wish to tip their hand in postpetition negotiations. The Debtors do believe, however, that a termination of services from each of the Critical Vendors identified would cause immediate and irreparable harm to the Debtors' business, their customer base, and their estates. As a result, the Debtors request the authority, but not the direction to pay their Critical Vendors the

---

19-12122 (Bankr. D. Del. Sept. 30, 2019) (authorizing payment of prepetition claims of both critical and foreign vendors under sections 105(a) and 363(b) of the Bankruptcy Code) [Docket No. 103].

[9] 11 U.S.C. § 105(a).

[10] *See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 453 (1999).

[11] *See Just for Feet*, 242 B.R. at 825.

modest amounts requested under the Interim Order Cap and the Final Order Cap, with the aggregate total to be paid to all Claimants on account of prepetition debt not to exceed $160,000.

## B. The Court Should Authorize the Payment of Claims Entitled to Priority Pursuant to Section 503(b)(9) of the Bankruptcy Code

Section 503(b)(9) of the Bankruptcy Code provides administrative priority for the "value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which goods have been sold to the debtor in the ordinary course of such debtor's business."[12] These claims must be paid in full for the Debtors to confirm a chapter 11 plan.[13] The exact timing of such payments is left to the court's discretion.[14] Accordingly, payment of such claims at the outset of the case rests with the discretion of the court and affords claimants with no more than what they would already be entitled to receive under a chapter 11 plan.

In the ordinary course, the Debtors may purchase certain inventory, goods, or materials from various domestic vendors. Although the Debtors do not believe any such inventory goods, or materials were recently purchased, there is a chance certain items may been purchased within the twenty days immediately preceding the filing of these Chapter 11 Cases. Therefore, out of an abundance of caution, the Debtors are requesting the authority, but not the direction, to pay the undisputed claims of such 503(b)(9) Claimants in an aggregate amount not to exceed $5,000.

## C. The Processing of Checks and Electronic Fund Transfers Should Be Authorized

The Debtors have sufficient funds to pay the Claimants in the ordinary course of business using cash proceeds from the Debtors' proposed debtor in possession financing and the cash generated through operations. Under the Debtors' existing cash management system, the Debtors have the

---

[12] 11 U.S.C. § 503(b)(9).

[13] *See* 11 U.S.C. § 1129(a)(9).

[14] *See In re Global Home Prods., LLC*, Case No. 06-10340, 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (agreeing with parties that the timing of the payment of administrative expense claims is left to the discretion of the court).

7

ability to readily identify checks or wire transfer requests relating to the prepetition Claimants, as applicable, and believe there is minimal risk that inadvertent payment of unauthorized checks or wire transfer requests will be made. Thus, the Debtors respectfully request that the Court authorize, but not direct, applicable banks and financial institutions to receive, process, honor, and pay, to the extent of funds on deposit, any and all checks issued or to be issued and electronic fund transfers requested or to be requested by the Debtors relating to the prepetition Claimants as set forth herein. The Debtors also seek authority, but not direction, to issue new postpetition checks or effect new postpetition electronic fund transfers in replacement of any checks or transfer requests on account of the prepetition Claimants that is dishonored or rejected as a result of these Chapter 11 Cases.

## VI. EMERGENCY CONSIDERATION

The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." To preserve the value of its business and comply with applicable law, the Debtors may need to pay certain prepetition claims of their Claimants on an expedited basis. Failure to make these payments may result in a termination of software or technology services, which has the potential to immediately and irreparably disrupt licensing arrangements and customer relations to the detriment of the Debtors' estates, creditors, and other parties in interest. Accordingly, the Debtors respectfully submit that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

## VII. REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS

The Debtors respectfully request a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to

Bankruptcy Rule 6004(h). As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## VIII. RESERVATION OF RIGHTS

Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim of any creditor or interest holder under applicable nonbankruptcy law; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (iv) an assumption, adoption, or rejection of any agreement, contract, or lease between the Debtors and any third party under section 365 of the Bankruptcy Code. The Debtors reserve all of their rights under the Bankruptcy Code.

## IX. NOTICE

Notice of this Motion has been provided by email, facsimile, or overnight courier to: (i) the Office of the U.S. Trustee Region 17 (Attn: Marta E. Villacorte); (ii) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (iii) counsel for the DIP Agent and DIP Lender; (iv) the Debtors' Critical Vendors and 503(b)(9) Claimants; and (v) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice is required.

No prior request for the relief sought in this Motion has been made by the Debtors to this or any other court.

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WHEREFORE**, the Debtors respectfully request entry of the Interim Order, substantially in the form attached hereto as **Exhibit A** granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: April 28, 2020

SIDLEY AUSTIN LLP

/s/ *Samuel A. Newman*
Samuel A. Newman

*Proposed Attorneys for Debtors and Debtors in Possession*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>EXHIBIT A</u>**

**INTERIM ORDER**

SIDLEY AUSTIN LLP
Samuel A. Newman (SBN 217042)
(sam.newman@sidley.com)
Julia Philips Roth (SBN 324987)
(julia.roth@sidley.com)
555 West Fifth Street
Los Angeles, CA 90013
Telephone: 213.896.6000
Facsimile: 213.896.6600

SIDLEY AUSTIN LLP
Charles M. Persons (*pro hac vice* pending)
(cpersons@sidley.com)
Juliana Hoffman (*pro hac vice* pending)
(jhoffman@sidley.com)
Jeri Leigh Miller (*pro hac vice* pending)
(jeri.miller@sidley.com)
2021 McKinney Avenue
Suite 2000
Dallas, TX 75201
Telephone: 214.981.3300
Facsimile: 214.981.3400

*Proposed Attorneys for Debtors and
Debtors in Possession*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| In re: | Case No. 20-50682 (MEH) |
| WAVE COMPUTING, INC., *et al.*, | Chapter 11 (Joint Administration Requested) |
| Debtors.[1] | Assigned to the Hon. M. Elaine Hammond |
| | **INTERIM ORDER GRANTING MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), AND 503 FOR ENTRY OF ORDERS (I) AUTHORIZING THE PAYMENT OF CRITICAL VENDORS; AND (II) GRANTING RELATED RELIEF** |
| | Hearing Scheduled: Date: May 1, 2020 Time: 11:15 a.m. (Pacific Time) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Wave Computing, Inc. (4264), MIPS Tech, Inc. (8247), Hellosoft, Inc. (8640), Wave Computing (UK) Limited (None), Imagination Technologies, Inc. (6967), Caustic Graphics, Inc. (7272), and MIPS Tech, LLC (2161). The Debtors' mailing address is 3201 Scott Blvd, Santa Clara, CA 95054.

2

| | |
|---|---|
| ) | Place:  280 South 1st St. |
| ) | San Jose, CA 95113-3099 |
| ) | |

Upon the motion (the "Motion"),[2] dated April 27, 2020 of Wave Computing, Inc. ("Wave") and its debtor affiliates, as debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), pursuant to sections 105, 363, and 503 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (i) authorizing, but not directing, the Debtors to pay prepetition amounts owing in the ordinary course on account of certain Critical Vendors and 503(b)(9) Claimants (each as defined below and collectively, the "Claimants"), in an aggregate interim amount not to exceed $80,000 (the "Interim Order Cap") and in an aggregate final amount not to exceed $160,000, inclusive of the amounts paid pursuant to this Interim Order (the "Final Order Cap"); (ii) authorizing, but not directing, the Debtors to honor outstanding obligations to the Claimants on a postpetition basis in the ordinary course of business and consistent with past practice; and (iii) authorizing, but not directing, the Debtors to pay in advance if reasonably desirable to procure goods and services in the ordinary course of business and otherwise consistent with past practice; and (iv) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Local Rule 5011-1(a) of the Bankruptcy Local Rules for the Northern District of California; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and the Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this proceeding and the Motion being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found and determined that notice of the Motion as provided to the Notice Parties is reasonable and sufficient under the circumstances, and no other or further notice need be provided; and the relief requested in the Motion being in the best

---

[2] Each capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the Motion.

interests of the Debtors' estates, their creditors and other parties in interest and necessary to prevent immediate and irreparable harm; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted as provided herein.

2. The Debtors are authorized, but not directed, to pay on an interim basis up to $80,000 on account of the prepetition claims of one or more of the Critical Vendors identified on Exhibit B to the Motion.

3. Notwithstanding anything to the contrary contained herein, the Debtors are not authorized to pay any Critical Vendor claim for claimants bound by an executory contract, except for those 503(b)(9) Claimants, if any, which the Debtors shall be authorized to pay in an aggregate amount not to exceed $5,000 pursuant to this Interim Order and subject to the Interim Order Cap.

4. The Debtors are authorized, but not directed, to use their commercially reasonable efforts to obtain from any Critical Vendor, as a prerequisite to obtaining payment pursuant to this Interim Order, written acknowledgement of its obligation to continue providing services to the Debtors on customary trade terms, substantially in the form attached to this Interim Order as **Exhibit 1** (the "Vendor Agreement"), which shall require, among other things, that the customary trade terms be no less favorable than the most favorable trade terms provided by the Critical Vendor to the Debtors in the three months prior to the Petition Date; provided, however, that such payment shall not prejudice the Debtors' right to challenge, as a violation of the automatic stay or otherwise, a Critical Vendor's refusal to provide postpetition goods or services on customary trade terms; provided further that the Debtors' failure to request such an acknowledgement shall not be deemed a waiver of the Debtors' rights hereunder.

5. The Vendor Agreement attached hereto as **Exhibit 1** is approved on an interim basis; provided, however, that the Debtors are authorized to modify the Vendor Agreement if a particular situation so requires.

4

6.      If any Critical Vendor accepts payment according to the terms of this Interim Order and does not continue supplying goods or services to the Debtors in accordance with the customary trade terms, then: (i) the Debtors may seek to cause such Critical Vendor to repay payments made to it on account of its prepetition claim to the extent that such payments exceed the postpetition amounts then owing to such Critical Vendor; (ii) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (iii) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may seek to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and the Debtors may take appropriate steps to cause such supplier to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

7.      In addition, the Debtors are authorized, but not directed, to pay in advance if reasonably desirable to procure goods and services in the ordinary course of business and otherwise consistent with past practice.

8.      Nothing herein shall impair or prejudice the Debtors' ability to contest, in their sole discretion, the extent, perfection, priority, validity, or amounts due on account of the Claimant's prepetition claims.  The Debtors do not concede that any claims satisfied pursuant to this Interim Order are valid, and the Debtors expressly reserve all rights to contest the extent, validity, or perfection or to seek the avoidance of all such liens or the priority of such claims.

9.      Each of the banks and/or financial institutions at which the Debtors maintain their accounts relating to payment of the prepetition obligations approved herein is authorized, when requested by the Debtors in the Debtors' discretion, to receive, process, honor, and pay all checks presented for payment and all fund transfer requests made by the Debtors related thereto to the extent that sufficient funds are on deposit in such accounts.  Such banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks or fund transfer requests are issued or authorized to be paid pursuant to this Interim Order without any further inquiry and without liability for following the Debtors' instructions.

5

10. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the Claimant's prepetition claims.

11. Nothing in this Interim Order: (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; or (iv) shall be construed as a promise to pay a claim or continue any applicable program postpetition, which decision shall be in the discretion of the Debtors. Any payment made pursuant to this Interim Order is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

12. Notwithstanding anything to the contrary contained in this Interim Order, any payment made or other action taken by the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to any interim and/or final orders regarding the Debtors' use of cash collateral and/or postpetition debtor in possession financing facilities, approved by this Court in these Chapter 11 Cases (the "DIP Orders").

13. In the event of any inconsistency between the terms or conditions of this Interim Order and the terms or conditions of the DIP Orders, the provisions of the DIP Orders shall govern and control.

14. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion under the circumstances and such notice satisfies the notice requirements of Bankruptcy Rule 2002 and the Bankruptcy Local Rules.

15. Notwithstanding any potential applicability of Bankruptcy Rule 6004(h), this Order is immediately effective and enforceable upon its entry.

6

16.     The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order

17.     A final hearing to consider the relief requested in the Motion shall be held on [_____] at [_____] (Prevailing Pacific Time) and any objections or responses to the Motion shall be filed and served so as to be actually received on or prior to [_____] at [_____] (Prevailing Pacific Time).

18.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order

** END OF ORDER **

7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>EXHIBIT 1</u>**

**VENDOR AGREEMENT**

# **VENDOR AGREEMENT**

Wave Computing, Inc. and each of its debtor affiliates (collectively, the "Company"), on the one hand, and the supplier identified in the signature block below ("Supplier"), on the other hand, hereby enter into the following vendor agreement (this "Vendor Agreement") dated as of the date in the Supplier's signature block below.

## **Recitals**

WHEREAS, on April 27, 2020 (the "Petition Date"), Wave Computing, Inc. and each of its debtor affiliates filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Northern District of California (the "Court").

WHEREAS, on [●], the Court entered the *Interim Order Granting Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 503 for Entry of Orders (I) Authorizing the Payment of Critical and Foreign Vendors; and (II) Granting Related Relief* (the "Interim Order") [Docket No. [●]], which authorize the Debtors, on an interim basis and under certain conditions, to pay the prepetition claims of certain Critical Vendors and/or Foreign Vendors, subject to the terms and conditions set forth therein.

[WHEREAS, on [●], the Court entered the *Final Order Granting Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 503 for Entry of Orders (I) Authorizing the Payment of Critical and Foreign Vendors; and (II) Granting Related Relief* (the "Final Order," and together with the Interim Order, the "Vendor Orders")[1] [Docket No. [●]], which authorize the Debtors, on an final basis and under certain conditions, to pay the prepetition claims of certain Critical Vendors and/or Foreign Vendors, subject to the terms and conditions set forth therein.][2]

WHEREAS, prior to the Petition Date, Supplier provided services to the Company, and the Company paid Supplier for such services, according to Customary Trade Terms (as defined herein).

WHEREAS, the Company and Supplier (each a "Party," and collectively, the "Parties") agree to the following terms as a condition of payment on account of certain prepetition claims Supplier may hold against the Company.

## **Agreement**

1.     Recitals.  The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2.     Supplier Payment.  Supplier represents and agrees that, after due investigation, the sum of all amounts currently due and owing by the Company to Supplier is $[●] (the "Agreed Supplier Claim").  Following execution of this Vendor Agreement, the Company shall, in full and final satisfaction of the Agreed Supplier Claim, pay Supplier $[●] on account of its prepetition claim

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Vendor Orders.

[2] [NTD: To be included in Vendor Agreements entered into after entry of the Final Order.]

1

(the "<u>Supplier Payment</u>") (without interest, penalties, or other charges), as such invoices become due and payable.

        3.     <u>Agreement to Supply</u>.

        a.    Supplier shall supply goods to and/or perform services for the Company, and the Company shall accept and pay for goods and/or services from Supplier, for the duration of the Company's chapter 11 cases based on the following: trade terms at least as favorable to the Company as those practices and programs (including credit limits, pricing, cash discounts, timing of payments, allowances, product mix, availability, and other programs) in place in the 180 days prior to the Petition Date except for any partial payments or other payments (or assurances) the Company made with respect to any unfinished product (collectively, the "<u>Customary Trade Terms</u>").

        b.    The Customary Trade Terms may not be modified, adjusted, or reduced in a manner adverse to the Company, except as agreed to in writing by the Parties.

        4.     <u>Other Matters</u>.

        a.    Supplier will not separately seek payment from the Company on account of any prepetition claim (including, without limitation, any reclamation claim or any claim pursuant to section 503(b)(9) of the Bankruptcy Code) outside the terms of this Vendor Agreement or a plan of reorganization confirmed in the Company's chapter 11 case.

        b.    Supplier will not file or otherwise assert against the Company, its assets, or any other person or entity or any of their respective assets or property (real or personal) any lien, regardless of the statute or other legal authority upon which the lien is asserted, related in any way to any remaining prepetition amounts allegedly owed to Supplier by the Company arising from prepetition agreements or transactions. Furthermore, if Supplier has taken steps to file or assert such a lien prior to entering into this Vendor Agreement, Supplier will promptly take all necessary actions to remove such liens.

        5.     <u>Supplier Breach</u>.

        a.    In the event that the Company pays Supplier its Supplier Payment and Supplier is determined to have breached this Vendor Agreement (a "<u>Supplier Breach</u>"), upon written notice to Supplier, Supplier shall promptly pay to the Company immediately available funds in an amount equal to, at the election of the Company, the Supplier Payment or any portion of the Supplier Payment which cannot be recovered by the Company from the postpetition receivables then owing to Supplier from the Company.

        b.    In the event that the Company recovers the Supplier Payment pursuant to Section 5(a) hereof or otherwise, the full Agreed Supplier Claim shall be reinstated as if the Supplier Payment had not been made and treated in accordance with the plan of reorganization confirmed in the Debtors' chapter 11 cases.

        c.    Supplier agrees and acknowledges that irreparable damage would occur in the event of a Supplier Breach and remedies at law would not be adequate to compensate the Company. Accordingly, Supplier agrees that the Company shall have the right, in addition to any other rights and remedies existing in its favor, to seek an injunction or injunctions to prevent breaches of the provisions

of this Vendor Agreement and to enforce its rights and obligations hereunder not only by an action or actions for damages but also by an action or actions for specific performance, injunctive relief and/or other equitable relief.  The right to equitable relief, including specific performance or injunctive relief, shall exist notwithstanding, and shall not be limited by, any other provision of this Vendor Agreement. Supplier hereby waives any defense that a remedy at law is adequate and any requirement to post bond or other security in connection with actions instituted for injunctive relief, specific performance, or other equitable remedies.

    6.    Notice.

        If to Supplier, notice shall be provided to the person and address identified in the signature block hereto.

        If to Company, notice shall be provided to:

        Wave Computing, Inc.
        Attn: Sanjai Kohli
        3201 Scott Boulevard
        Santa Clara, CA 95054
        skohli@wavecomp.com

        and

        Sidley Austin LLP
        Attn: Samuel A. Newman
        555 West Fifth Street
        Los Angeles, CA 90013
        sam.newman@sidley.com

    7.    Representations and Acknowledgements.    The Parties agree, acknowledge, and represent that:

        a.    the Parties have reviewed the terms and provisions of the Vendor Orders and this Vendor Agreement and consent to be bound by such terms;

        b.    this Vendor Agreement is expressly subject to the procedures approved in the Vendor Orders;

        c.    any payments made on account of the Agreed Supplier Claim shall be subject to the terms and conditions of this Vendor Agreement and the Vendor Orders;

        d.    if Supplier refuses to supply goods or services to the Company as provided herein or otherwise fails to perform any of its obligations hereunder, the Company may exercise all rights and remedies available under the Vendor Orders, the Bankruptcy Code, or applicable law; and

        e.    in the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Court for a determination of their relative rights, in which event, no action may be taken by either Party, including but not limited to, the discontinuing of

3

shipment of goods or provision of services from Supplier to the Company, until a ruling of the Court is obtained.

8. <u>Confidentiality</u>. In addition to any other obligations and confidentiality between Supplier and Company, Supplier agrees to hold in confidence and not disclose to any party: (a) this Vendor Agreement; (b) any and all payments made by the Company pursuant to this Vendor Agreement; (c) the terms of payment set forth herein; and (d) the Customary Trade Terms (collectively, the "<u>Confidential Information</u>"); <u>provided</u> that if any party seeks to compel Supplier's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or Supplier intends to disclose any or all of the Confidential Information, Supplier shall immediately provide the Company with prompt written notice so that the Company may seek an injunction, protective order, or any other available remedy to prevent such disclosure; <u>provided</u>, <u>further</u>, that, if such remedy is not obtained, Supplier shall furnish only such information as Supplier is legally required to provide.

9. <u>Miscellaneous</u>.

a. The Parties hereby represent and warrant that: (i) they have full authority to execute this Vendor Agreement on behalf of the respective Parties; (ii) the respective Parties have full knowledge of, and have consented to, this Vendor Agreement; and (iii) they are fully authorized to bind that Party to all of the terms and conditions of this Vendor Agreement.

b. This Vendor Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them. This Vendor Agreement may not be changed, modified, amended, or supplemented, except in a writing signed by both Parties.

c. Signatures by facsimile or electronic signatures shall count as original signatures for all purposes.

d. This Vendor Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

e. The Parties hereby submit to the exclusive jurisdiction of the Court to resolve any dispute with respect to or arising from this Vendor Agreement.

f. This Vendor Agreement shall be deemed to have been drafted jointly by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any Party.

*[Signature Page Follows]*

4

AGREED AND ACCEPTED AS OF THE DATE SET FORTH BELOW:

**[COMPANY]**                                      **[SUPPLIER]**

_____         _____
By:                                                By:
Title:                                             Title:
Date:                                              Address:
                                                   Date:

5

**EXHIBIT B**

**CRITICAL VENDORS**

**POTENTIAL CRITICAL VENDORS**

Redacted

1