Kassra P. Nassiri (SBN 215405)
kass@njfirm.com
Jose Raul Alcantar Villagran (SBN 304981)
raul@njfirm.com
NASSIRI & JUNG LLP
1700 Montgomery Street, Suite 207
San Francisco, California 94111
Telephone: (415) 762-3100
Facsimile: (415) 534-3200

Attorneys for Interested Party
CANYON BRIDGE FUND I, LP

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>WAVE COMPUTING, INC., et al.,<br><br>Debtors.[1] | Bankruptcy Case No. 20-50682 (MEH)<br>Chapter 11 (Lead Case)<br><br>Assigned to the Hon. Elaine M. Hammond<br><br>**LIMITED OPPOSITION TO DIP FINANCING MOTION**<br><br>Date: May 1, 2020<br>Time: 11:15 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>280 South First St.<br>San Jose, CA 95113-3099 |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Wave Computing, Inc. (4264), MIPS Tech, Inc. (8247), Hellosoft, Inc. (8640), Wave Computing (UK) Limited (None), Imagination Technologies, Inc. (6967), Caustic Graphics, Inc. (7272), and MIPS Tech, LLC (2161). The Debtors' mailing address is 3201 Scott Blvd., Santa Clara, CA 95054.

Interested party Canyon Bridge Fund I, LP ("Canyon Bridge") hereby files this limited objection to *Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 363, and 364 for Orders Authorizing (i) Postpetition Financing, (ii) Cash Collateral Use; (iii) Adequate Protection to Existing Secured Parties; (iv) Liens and Superpriority Claims; and (v) Modifying the Automatic Stay* and related filings and interim relief (collectively, the "DIP Financing Motion") [ECF Nos. 14, 15, 44, and 45] filed by the above-captioned debtors ("Debtors").

## I. INTRODUCTION

In the DIP Financing Motion, Debtors request that this Court approve a broad release of liability in favor of the DIP Lender, Tallwood Technology Partners LLC. The scope of the proposed release would encompass derivative claims asserted by Canyon Bridge on behalf of debtor Wave Computing, Inc. ("Debtor" or "Wave") against certain Tallwood entities and other non-debtors in a shareholder complaint filed on April 20, 2020 in the Superior Court of California for the County of Santa Clara.[2] The magnitude of potential damages recoverable by the Debtor from the claims asserted in the Shareholder Lawsuit – Wave's loss of enterprise value resulting from wrongdoing in connection with its Series E financing and subsequent $40 million settlement with the lead investor in the Series E – is substantial enough to potentially pay creditors in full and put Canyon Bridge and other preferred stockholders back "in the money."

Canyon Bridge does not categorically oppose Tallwood providing Wave with adequate DIP financing to finance and adequately operate during these chapter 11 cases – it simply opposes Tallwood's attempt to summarily avoid liability to the Debtor. Canyon Bridge's investigation of the evidence available to it so far indicates that the derivative claims asserted in the Shareholder Lawsuit may be substantial. These claims—which belong to the Debtor and would benefit its

---

[2] *See* "Shareholder Lawsuit," attached hereto as Exhibit A to Declaration of Jose Raul Alcantar Villagran filed concurrently herewith. The Shareholder Lawsuit also includes claims asserted directly by Canyon Bridge against Tallwood and other non-debtors, which should certainly be clearly carved out of any third-party releases.

1

waves and shareholders alike—should be fully investigated and vetted through independent investigation – a process which will at a minimum require several months. Fairness and due process require that at the very least, no third-party releases should be granted outside of the strictures and procedural safeguards of a plan.

Canyon Bridge therefore respectfully requests that this Court deny Debtor's request to broadly release Tallwood and that it permit Canyon Bridge to participate in an investigation and any prosecution of the derivative claims at issue.

## II. BACKGROUND FACTS[3]

Canyon Bridge is a shareholder of record of Wave that owns, upon information and belief, approximately six (6%) of the fully diluted equity in Wave. Canyon Bridge invested approximately $10 million in the Series D financing, and $3 million in the Series E financing.

Upon information and belief, the proposed DIP Lender, Tallwood Technology Partners LLC, is wholly owned by the family of Wave founder Diosdado Banatao ("Banatao"). Banatao owns several other entities that, taken together (hereafter, "Tallwood"), are currently and at all times have been the largest shareholder group in debtor Wave Computing, Inc.[4]

In June 2018, Wave acquired MIPS Tech, Inc. ("MIPS") in an interested party transaction. Banatao stood on both sides of the deal. Through Tallwood, he controlled approximately 47% of Wave. And the Banatao family (i.e., Banatao, his wife and children) owned 100% of MIPS.

In September 2018, Wave raised approximately $50 million in its Series E financing. The lead investor, an entity named Windtree Drive, LLC ("Windtree"), purchased approximately $40

---

[3] These background facts are taken from the Shareholder Lawsuit. (Alcantar Decl., Ex. A.)

[4] Upon information and belief, the following Tallwood entities are shareholders of record of Wave: (1) Tallwood III Associates, L.P., (2) Tallwood III Partners, L.P., (3) Tallwood III, L.P., and (4) Tallwood Investment Partners LLP.

2

million of Series E preferred stock. Canyon Bridge also participated in this round, purchasing roughly $3 million of Series E preferred stock.

Then, unexpectedly, in July 2019 Wave entered into a settlement with Windtree for more than $40 million. Upon information and belief, Windtree had learned that representations made to it in connection with its purchase of Series E preferred stock were false or misleading, and that the "books were cooked." Upon information and belief, when Windtree threatened to sue Wave, its Directors (including Banatao) and Tallwood, Wave agreed to return Windtree's entire Series E investment to it. Notably, Banatao and Tallwood obtained releases in the settlement.

But because Wave did not have enough cash to pay the $40 million settlement, Tallwood lent approximately $10 million to Wave to help finance the settlement. Upon information and belief, **this loan was secured and is part of Tallwood's "Prepetition First Lien Debt" that forms the basis for the broad DIP Lender releases sought by the Debtor.** Therefore, the releases sought in the DIP Note would appear to include claims related to Series E financing and $40 million settlement with Windtree.

As a result of the $40 million settlement with Windtree, Wave immediately faced serious liquidity issues. Wave was forced to shut down certain divisions and never recovered from the downward spiral set in motion with the Windtree settlement, resulting in a massive loss in enterprise value and culminating in this bankruptcy.

Canyon Bridge and other Wave shareholders repeatedly sought information from Wave about the nature of the claims asserted by Windtree, and why entering into the $40 million settlement was in the best interests of Wave. When it received no answers, in March 2020, Canyon Bridge served a shareholder books and records inspection demand seeking the same information. When Wave failed to produce any information, Canyon Bridge was forced to file its Shareholder Lawsuit.

Among other claims, the Shareholder Lawsuit alleges derivative claims on behalf of the Debtor against Banatao and Tallwood related to (1) the interested party MIPS transaction, and (2) approval of the $40 million Windtree settlement. Alleged damages include the loss of enterprise

3

value. Notably, Wave's pre-money valuation at the time of the Series E financing was orders of magnitude larger than where the Debtor finds itself today.

### III. ARGUMENT

The broad third-party release of Tallwood proposed as part of the DIP financing includes the Prepetition First Lien Debt, which, upon information and belief, includes the Prepetition Note and $10 million in proceeds used to finance the Windtree Settlement and "all acts, omissions or conduct of the DIP Agent and/or the DIP Lender relating thereto." Interim Order at ¶ D(i). After an expedited 30-day Committee Review Period, the Release is proposed to bind the Debtor, any creditors' committee, and all other creditors and parties in interest, even if the latter have no right to participate in investigating the released claims and even if they do not consent to the Releases. *See* DIP Motion at pp. 13-18, DIP Note §§ 5.7-5.8, Interim Order at ¶ D(iv)-(v), ¶ 5.

Because the proposed release encompasses "all acts, omissions or conduct . . . relating to" the Prepetition First Lien Debt, approval of § 5.8 of the DIP Note would forever bar the Debtor's ability to recover damages from Tallwood related to the Series E financing and $40 million Windtree settlement. Indeed, the DIP Note appears to be designed to avoid any meaningful investigation into the circumstances surrounding the Windtree settlement.

The Ninth Circuit views third-party releases with disfavor, particularly broad releases of claims based on the operation or management of the business regardless of whether that act or omission had anything to do with the bankruptcy case and without any limit as to time. *See In re American Hardwoods, Inc.*, 885 F.2d 621, 624–27 (9th Cir.1989) (distinguishing permanent injunction affecting mass tort claims). Even in the context of a plan of reorganization, proposed third-party releases must be fully disclosed and purely voluntary on the part of the releasing parties and cannot unfairly discriminate against others. *See In re Hotel Mt. Lassen, Inc.*, 207 B.R. 935, 941 (Bankr. E.D. Cal. 1997); *see also In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 143 (2d Cir. 2005) (to confirm chapter 11 plan containing non-debtor release, bankruptcy court had to find, at minimum, that release itself was important to plan; it was not enough that one of parties benefiting from release was making "material contribution" to estate; non-debtor release

4

in plan of reorganization should not be approved absent a finding that truly unusual circumstances render the release terms important to success of plan).

Also, beyond seeking to force the broad third-party release on all interested parties, irrespective of their consent or participation in the investigation of released claims, none of the proceeds from the DIP, including the Carve-Out, can be used to investigate any claim related to Prepetition First Lien Debt. DIP Motion at 29-30; DIP Note § 8.9, Interim Order ¶¶ 2(d), 14. As the U.S. Trustee aptly noted, this restriction short-circuits the adversarial process contemplated by the Bankruptcy Code. *See In re Tenney Village Co., Inc.*, 104 B.R. at 569 ("It is said that a Chapter 11 lender should not be required to finance the prosecution of claims against it. That is true. If the lender believes that this will occur, it can elect not to make the loan. It cannot expect, however, to change the rules of a Chapter 11 case."). In accordance with its Guidelines for Cash Collateral & Financing Motions & Stipulations (effective 1/1/2006) (the "Guidelines"), the Court should therefore not approve the Releases. (*Id*. at ¶ E.6.)

In the alternative, all parties in interest, including Canyon Bridge, who has been carrying the laboring oar on these claims for months, should be given ample opportunity to investigate claims set forth in the Shareholder Lawsuit in a controlled and organized process in parallel with the proposal, confirmation, and confirmation of any plan. Further, the terms of the DIP financing should not limit participation in review of the released claims to the creditors' committee – other parties in interest, like Canyon Bridge, indisputably already have a head start in investigating the claims. Further, a creditors' committee alone may not always adequately represent the interests of shareholders and other interested parties. In fairness, other interested parties, like Canyon Bridge, should be able participate, particularly where there is a real chance that creditors could be paid in full and that equity may see a recovery, and other parties' efforts would not place an additional financial burden on the estate. *See, e.g.*, *In re Adelphia Commc'ns Corp.*, 330 B.R. 364 (Bankr. S.D.N.Y. 2005) (Equity holders' committee would be authorized to join with creditors' committee, which had itself been allowed to prosecute certain claims against lenders on behalf of chapter 11 estates, in order to assert racketeering, fraudulent concealment and other claims that

5

creditors' committee had not elected to pursue; bulk of claims that equity holders' committee sought to assert were at least colorable and, given that creditors' committee had already been authorized to prosecute causes of action against lenders, would result in only relatively modest incremental expense to estate); *see also In re Pilgrim's Pride Corp.*, 407 B.R. 211, 216 (Bankr. N.D. Tex. 2009) (Appointing official committee of equity holders in corporate debtors' jointly administered Chapter 11 cases, where debtors were not clearly insolvent and there was possibility of return to equity holders, where neither debtors' current officers and directors, with duties to all constituents, nor ad hoc committee of equity holders could adequately represent shareholders' interests).

## IV. CONCLUSION

Based on the foregoing, the Court should not approve the broad third-party releases proposed in the DIP Motion. In the alternative, should the Court find that the Debtors have established irreparable harm sufficient to approve the proposed financing, Canyon Bridge and other parties in interest should be able to fully participate in the investigation and prosecution of any third-party claims to be released, as a part of a process that, given the magnitude of the claims at issue, should be in conjunction with, and expire no earlier than, the plan confirmation process.

DATED: April 30, 2020

**Respectfully Submitted,**

NASSIRI & JUNG LLP

By:   */s/ Jose Raul Alcantar Villagran*

Jose Raul Alcantar Villagran
Attorneys for Plaintiff
CANYON BRIDGE FUND I, LP