1  Kassra P. Nassiri (SBN 215405)
   kass@njfirm.com
2  Jose Raul Alcantar Villagran (SBN 304981)
   raul@njfirm.com
3  NASSIRI & JUNG LLP
   1700 Montgomery Street, Suite 207
4  San Francisco, California 94111
   Telephone: (415) 762-3100
5  Facsimile: (415) 534-3200

6  Attorneys for Interested Party
   CANYON BRIDGE FUND I, LP
7

8
                **UNITED STATES BANKRUPTCY COURT**
9               **NORTHERN DISTRICT OF CALIFORNIA**
                      **SAN JOSE DIVISION**
10

11
   In re:                              Bankruptcy Case No. 20-50682 (MEH)
12                                      Chapter 11 (Lead Case)
   WAVE COMPUTING, INC., et al.,
13                                      Assigned to the Hon. Elaine M. Hammond

14              Debtors.                **DECLARATION OF JOSE RAUL**
                                        **ALCANTAR VILLAGRAN IN SUPPORT**
15                                      **OF LIMITED OPPOSITION TO DIP**
                                        **FINANCING MOTION**
16

17
                                        Date:     May 1, 2020
18
                                        Time:     11:15 a.m. (Pacific Time)
19
                                        Place:    United States Bankruptcy Court
20                                                 280 South First St.
                                                   San Jose, CA 95113-3099
21

22

23

24

25

26

27

28

I, Jose Raul Alcantar Villagran, declare:

1.      I am an attorney with the law firm of Nassiri & Jung LLP, counsel for interested party Canyon Bridge Fund I, LP ("Canyon Bridge") in the above-captioned chapter 11 cases.

2.      Attached hereto as Exhibit A is a true and correct copy of a complaint filed by Canyon Bridge on April 20, 2020 in the Superior Court of California for the County of Santa Clara, under Temporary Case Number T20-880.

3.      Upon information and belief, the complaint received a temporary case number pending delayed processing times by the Clerk, as a result of the Covid-19 pandemic.

Except for statements made on information and belief in this declaration, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 30th day of April 2020 at Alameda, California.


                                        */s/ Jose Raul Alcantar Villagran*
                                        JOSE RAUL ALCANTAR VILLAGRAN

1

1

2                                 **Exhibit A**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        2

1  Kassra P. Nassiri (215405)
   kass@njfirm.com
2  Andrew R. Kislik (118772)
   andy@njfirm.com
3  Jose Raul Alcantar (304981)
   raul@njfirm.com
4  NASSIRI & JUNG LLP
   1700 Montgomery Street, Suite 207
5  San Francisco, California 94111
   Telephone: (415) 762-3100
6  Facsimile: (415) 534-3200

7  Attorneys for Plaintiff
   CANYON BRIDGE FUND I, LP
8

9

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10

**FOR THE COUNTY OF SANTA CLARA**

11

| | |
|---|---|
| 12  CANYON BRIDGE FUND I, LP, individually and derivatively on behalf of | Case No. |
| 13  WAVE COMPUTING, INC., | |
| 14                                   Plaintiff, | **COMPLAINT FOR:** |
| 15                 v. | |
| 16  WAVE COMPUTING, INC., TALLWOOD VENTURE CAPITAL, TALLWOOD | **(1) SECURITIES FRAUD (CAL. CORP. CODE §§ 25401, 25501, 25504, 25504.1)** |
| 17  INVESTMENT PARTNERS LLP, TALLWOOD III, L.P., TALLWOOD III | **(2) FRAUD AND DECEIT (CAL. CIV. CODE §§ 1709, 1710)** |
| 18  ASSOCIATES, L.P., TALLWOOD III PARTNERS, L.P., ENTROPY RESEARCH | **(3) BREACH OF FIDUCIARY DUTY** **(4) UNFAIR COMPETITION (CAL. BUS. &** |
| 19  LABS, LLC, DIOSDADO BANATAO, DESI BANATAO, REY BANATAO, GREGORY | **PROF. CODE §§ 17200, ET SEQ.)** **(5) UNJUST ENRICHMENT** |
| 20  CORONA, ARTHUR SWIFT, ROBERT CHRISTIANSEN, JOHN SCULL, DEREK | |
| 21  MEYER, JUAN IGNACIO ABOITIZ, DENNIS BENCALA, and DOES 1 through | **JURY TRIAL DEMANDED** |
| 22  50, inclusive, | |
| 23                        Defendants, | **[PUBLIC-REDACTS MATERIALS FROM CONDITIONALLY SEALED RECORD.]** |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

COMPLAINT

Plaintiff Canyon Bridge Fund I, LP ("Canyon Bridge" or "Plaintiff") directly, and as to certain breach of fiduciary duty claims, derivatively on behalf of Wave Computing, Inc. ("Wave"), alleges upon personal knowledge with respect to itself, and upon information and belief as to all other allegations based upon, *inter alia*, the investigation of counsel, as follows:

## I. PARTIES

1.     Plaintiff Canyon Bridge is a Delaware limited partnership which has held stock in Wave continuously since about August 2017.

2.     Defendant and nominal plaintiff Wave is a company incorporated under the laws of Delaware and with its principal place of business in Santa Clara County, California. Wave is a semi-conductor and computer learning company.

3.     Defendant Diosdado Banatao ("Banatao" or "Dado Banatao") is Chairman Emeritus and a Director of Wave and was, prior to Wave's acquisition of MIPS Tech, Inc. ("MIPS"), the sole director of MIPS. Banatao is a well-known entrepreneur, venture capitalist and reputed billionaire who owned approximately ███ of Wave through Tallwood Venture Capital and its affiliates at the time of the initial Series E financing in June 2018 and owned more than ███ of Wave as a result of the initial Series E financing.

4.     Defendants Tallwood Venture Capital and its affiliated entities Tallwood III Associates, L.P., Tallwood III Partners, L.P., Tallwood III, L.P., Tallwood Investment Partners LLP are a group of venture capital funds owned by Banatao and his family (collectively, "Tallwood" or "Tallwood Entities"). Tallwood is headquartered in Palo Alto, California and has held preferred stock in Wave since Wave's inception in 2009. Tallwood is and has always been, ███████ ███████████ and, at all times relevant herein, was and is a controlling shareholder of Wave.

5.     Defendant Entropy Research Labs, LLC ("Entropy Research Labs") was, upon information and belief, the sole stockholder of MIPS prior to its acquisition by Wave and is wholly owned by the Banatao family, including Dado Banatao. Entropy Research Labs first became a stockholder in Wave around June 2018 when it sold MIPS to Wave in exchange for

Case: 20-50682     Doc# 47-1     Filed: 04/30/20     Entered: 04/30/20 23:04:56     Page 5 of 34

1    ████████ shares of Series E Preferred Stock. At the time of the MIPS transaction, Entropy

2    Research Labs was managed by Dado and Desi Banatao. Upon information and belief, Entropy

3    Research Labs was dissolved on December 31, 2018, and is named as a defendant pursuant to

4    California Corporations Code section 17707.07.

5        6.    Defendant Desi Banatao is the son of Dado Banatao and a Director and Treasurer of

6    Wave. Desi Banatao was the President of MIPS when it was acquired by Wave and has at all

7    relevant times possessed a financial interest in Entropy Research Labs. Upon information and

8    belief, Desi Banatao also possesses a financial interest in Tallwood. Desi Banatao was appointed

9    as a Wave Director by Tallwood around October 2019.

10       7.    Defendant Rey Banatao is the son of Dado Banatao and, upon information and belief, was

11   a Director of Wave in July 2019 when the Windtree Settlement (defined below) was executed.

12       8.    Defendant Derek Meyer ("Meyer") was Chief Executive Officer and a Director of Wave

13   in 2018 who, upon information and belief, approved the Series E Financing.

14       9.    Defendant Robert Christiansen ("Christiansen") is a founding managing director of Series

15   A-1 investor (and every subsequent preferred series) Southern Cross Venture Partners, and was a

16   Director of Wave in 2018 and 2019 who, upon information and belief, approved the Series E

17   Financing and the Series E extension.

18       10.   Defendant John Scull ("Scull") is a co-founding managing director of Series A-1 investor

19   (and every subsequent preferred series) Southern Cross Venture Partners, and was a Director of

20   Wave in 2019 who, upon information and belief, approved the Windtree Settlement.

21       11.   Defendant Juan Ignacio Aboitiz ("Aboitiz") was a Director of Wave in 2018 and 2019

22   who, upon information and belief, approved the Series E Financing and the Windtree Settlement.

23       12.   Defendant Gregory Corona ("Corona") was a Director of Wave in 2019 when the

24   Windtree Settlement was executed. He is the Chairman and founder of Lakewood & Company,

25   LLC, which, upon information and belief, is a private investment firm and the sole owner of

26   Series E investor Windtree Drive, LLC, ("Windtree"). Upon information and belief, Windtree

27

28

1    appointed Corona to the Wave Board of Directors in 2018 in connection with Windtree's Series E
2    investment.

3    13.    Defendant Arthur Swift ("Swift") led the MIPS business for Wave, was a Chief Executive
4    Officer and Director of Wave in 2019 and signed the Windtree Settlement on behalf of Wave.
5    Swift was terminated as Wave CEO in 2019.

6    14.    Defendant Dennis Bencala ("Bencala") is and was Chief Financial Officer at all relevant
7    times.

8    15.    Non-party MIPS Tech, Inc. was a Delaware corporation that designed computer processor
9    architectures and chips. MIPS was indirectly wholly owned by Tallwood (through, upon
10   information and belief, Entropy Research Labs) and sold to Wave in June 2018 for approximately
11   ████████        consisting of ██████ shares of the newly created Series E Preferred stock,
12   valued at approximately ████████  and assumption of ████████ in promissory notes.

13   16.    Non-party Windtree Drive, LLC was a California company that, upon information and
14   belief, was created specifically to invest approximately ████████ in the extension of Wave's
15   Series E financing in September 2018. Windtree was managed by Oakmont Corporation and
16   wholly owned by Lakewood & Company, LLC.

17   17.    The names and capacities, whether individual, corporate, associate or otherwise of Doe
18   Defendants 1 through 50 ("Doe Defendants"), inclusive, and each of their roles in this case, are
19   unknown to Plaintiffs who therefore sue said Doe Defendants by such fictitious names. Plaintiff
20   further alleges that each of said fictitious Doe Defendants is in some manner responsible for the
21   acts and occurrences herein set forth. Plaintiff will amend this complaint to show their true names
22   and capacities, and the manner in which each fictitious Doe Defendant is responsible, when
23   ascertained.

24       A.    **Agency, Unity of Interest, Aiding and Abetting, and Conspiracy**

25   18.    At the times herein mentioned, each Defendant was an agent, servant, employee, *alter
26   ego*, predecessor, successor and/ or joint venturer of another Defendant, and was at all times
27   acting within the course and scope of such agency, service, employment and/ or joint venture, and
28

3
COMPLAINT

each Defendant has ratified, approved, and authorized the acts of another Defendant or other Defendants with full knowledge of said acts. Each of the Defendants is responsible in some manner for the conduct alleged herein and for the injuries suffered by Plaintiff.

19. In committing the wrongful acts alleged herein, Defendants have pursued, or joined in the pursuit of, a common course of conduct, and acted in concert with and conspired with one another, in furtherance of their common plan or design.

20. In addition to the wrongful conduct herein alleged as giving rise to primary liability, Defendants further aided and abetted and/or substantially assisted each other in breach of their respective duties as herein alleged. In taking such actions, as particularized herein, to substantially assist the commission of the wrongdoing complained of, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to, and furtherance of, the wrongdoing. Defendants' acts of aiding and abetting included, *inter alia*, the acts each of them are alleged to have committed in furtherance of the conspiracy, common enterprise, and common course of conduct complained of herein.

## II.       JURISDICTION AND VENUE

21. Personal jurisdiction is proper in this Court as to Defendants Diosdado Banatao, Desi Banatao, Rey Banatao, Derek Meyer, Robert Christiansen, John Scull, Juan Ignacio Aboitiz, Gregory Corona, Arthur Swift, and Dennis Bencala because: (1) each is a resident of the State of California; (2) each purposely availed himself of the benefits of the State of California; (3) the controversy is related to and arises out of each Defendant's contacts with the State of California; and (4) the assertion of personal jurisdiction comports with fair play and substantial justice.

22. Personal jurisdiction is proper in this Court as to Defendants Wave, the Tallwood Entities and Entropy Research Labs because: (1) each has its principal place of business in the State of California; (2) each availed itself of the benefits of the State of California; (3) the controversy is related to and arises out of each's contacts with the State of California; and (4) the assertion of personal jurisdiction comports with fair play and substantial justice.

23.     Venue is proper in this judicial district pursuant to California Code of Civil Procedure section 395(a) because a substantial part of the events giving rise to the claims herein occurred in this County and because Defendants or some of them are located in this County.

## III.     FACTUAL ALLEGATIONS

### A.     Banatao, Through Tallwood, Controls Wave

24.     Upon information and belief Wave was founded in 2009 by Banatao, a well-known entrepreneur (and reputed billionaire). Banatao's co-founder was Robert Christiansen of Southern Cross Venture Partners ("Southern Cross"), who along with Tallwood, participated in every Wave preferred stock offering from the Series A-1 in 2009 through the Series E in 2018.

25.     From Wave's inception to the present, Banatao has held his shares through his personal investment vehicles, Tallwood, and upon information and belief has, with one brief exception in late 2019, served on Wave's Board of Directors as its Chairman.

26.     Upon information and belief, by early 2017 and at all relevant times since then, Banatao, through his control of Tallwood, held a near or actual majority of Wave's voting shares, and never less than ███████

27.     Upon information and belief, at all times since 2017, Banatao (both individually and through Tallwood) has controlled Wave, its Board of Directors and its Officers. Additionally, in the event of any deadlock on the Board of Directors, Tallwood is entitled to the tie breaking vote.

28.     In August 2017, Canyon Bridge invested approximately ███████ in Wave's Series D financing. Canyon Bridge has continuously held approximately ███████ Series D Preferred shares from 2017 to the present.

### B.     A Conflicted Wave Board Approves Wave's Acquisition of MIPS from Banatao

29.     In June 2018, Wave acquired MIPS from Entropy Research Labs for consideration valued at ███████ Upon information and belief, Entropy Research Labs, an investment fund wholly owned by Banatao and two of his children, Desi and Tala Maria Banatao, had previously acquired MIPS from Tallwood (also wholly owned by the Banatao family) in anticipation of the Wave acquisition of MIPS. Upon information and belief, Dado Banatao controlled and had a majority

5
COMPLAINT

financial interest in Entropy Research Labs. Accordingly, the MIPS acquisition was a transaction between Wave and its controlling stockholder, Banatao.

30. In connection with the MIPS acquisition, Wave created the Series E Preferred stock. Initially, the Series E stock was not sold to any investors, but instead was used solely as consideration for the MIPS acquisition, whereby Entropy Research Labs received ███████ of the Series E Preferred stock, valued at ███████ and Wave assumed of ███████ in promissory notes.

31. Banatao and Tallwood controlled Wave generally and the MIPS transaction specifically. The Board approved the MIPS acquisition on June 5, 2018, and consisted of Directors Banatao, Robert Christiansen, Derek Meyer and Juan Ignacio Aboitiz. Each of these Directors, along with Defendant Bencala, was not disinterested and independent with respect to the MIPS acquisition, and each breached his fiduciary duties to Plaintiff.

32. Tallwood and its designated Director on the Wave Board of Directors, Banatao, had a clear conflict of interest with respect to this transaction through Banatao's interest in Entropy Research Labs.

33. At the time of the MIPS acquisition, Tallwood held over ████ of the Series A-1, B and C, which entitled Tallwood (and Banatao) to directly name at least two Wave directors. Upon information and belief, Tallwood appointed Banatao and Robert Christiansen of Southern Cross Venture Partners to the Board. Upon information and belief, Tallwood and Southern Cross not only co-invested in Wave through every round of funding, they also had a history of co-investment in other companies, including a company called Redfern Integrated Optics. Because of this personal and business relationship, and because Banatao had the ability to remove Southern Cross representatives from Wave's Board, Christiansen (and Southern Cross) was beholden to and controlled by Banatao.

34. Derek Meyer, who was hired by Banatao to serve as Wave's CEO, and Defendant Bencala, Wave's CFO, both were beholden to Banatao because Banatao exercised substantial control over each's salary and continued employment. Upon information and belief, the fourth

Case: 20-50682    Doc# 47-1    Filed: 04/30/20    Entered: 04/30/20 23:04:56    Page 10 of 34

1   Director Juan Ignacio Aboitiz, was a longtime friend of Banatao's from the Philippines and
2   beholden to Banatao.

3       35.    Upon information and belief, Wave neither created a properly functioning special
4   committee to evaluate the MIPS acquisition, nor did it obtain a fully informed approval from a
5   majority of the minority stockholders. Thus, Defendants have the burden of proof to show that the
6   MIPS acquisition was entirely fair.

7       36.    Upon information and belief, MIPS was worth substantially less than the ████████
8   Wave paid for it. Rather than exercise reasonable diligence or due care and negotiate at arms-
9   length, each of the Directors, who were personally interested and beholden to and controlled by
10  Banatao, breached their fiduciary duties to Plaintiff and other Wave shareholders by summarily
11  approving the MIPS acquisition on unfair terms dictated by Banatao.

12      37.    Upon information and belief, Wave failed to obtain an independent financial or legal
13  analysis of MIPS, and instead merely accepted what Banatao (through Tallwood) and his agents
14  presented to it. Upon information and belief, Defendants Meyer and Bencala "rubber stamped"
15  Banatao's false and misleading representations about MIPS's financial condition and business
16  prospects and, in a presentation they assembled in June 2018 (the "June 18 Management
17  Presentation"), proposed that the Board and Wave shareholders approve the ████████ MIPS
18  acquisition. Plaintiff was unaware, and could not have determined by using due diligence, that the
19  June 18 Management Presentation grossly overstated the value to Wave of the MIPS acquisition
20  and that not only would the acquisition not improve Wave's bottom line, cash flow and prospects,
21  but also was likely to substantially damage Wave.

22      38.    On information and belief, had the Wave Directors retained an independent financial
23  advisor to evaluate MIPS, as they should have, they would have known that MIPS's financial
24  prospects could not support the ████████ transaction price. Instead, the Directors relied on
25  Greenhill & Co., a firm that had been previously retained by Wave (and not an independent
26  committee) to provide financial advisory services. Greenhill & Co. was conflicted and not
27  independent because, among other reasons, it received a fee of ████████ contingent on the

28
                                    7
                                COMPLAINT

completion of the MIPS acquisition, and an additional fee of ███████ contingent on Wave

raising at least $50 million in the Series E extension.

39. Upon completion of the transaction in June 2018, Wave issued a press release which claimed that this acquisition would add to the Company's bottom line and be cash positive. Wave knew or should have known, however, that MIPS would not be cash positive or accretive. This transaction was not fair to Wave and its shareholders, as Wave paid substantially more for MIPS than MIPS was reasonably worth, whether standing alone or in conjunction with Wave. Plaintiff would rely on this press release, as well as other representations made by Defendants and described below, in deciding to purchase shares of Wave's Series E Preferred stock.

40. As a result of the Series E issuance to Entropy Research Labs, the value and voting power of Wave stock held by Canyon Bridge were diminished.

C. **Wave Authorizes and Sells $50 Million in Additional Series E Shares to Windtree, Canyon Bridge and Others**

41. In September 2018, just after completion of the MIPS acquisition and creation of the Series E Preferred stock, Wave authorized an additional issuance of $50 million of Series E stock at ████ per share. The Wave Board in September 2018 consisted of Banatao, Robert Christiansen, Derek Meyer and Juan Ignacio Aboitiz.

42. Unlike the initial Series E issuance in June 2018, the extension was intended to raise capital for Wave. The Series E extension in September 2018 was led by Windtree, who invested ████████ in the round. Canyon Bridge also participated, buying ████████ shares of Series E Preferred stock for ████████

43. Utilizing financial statements, the June 2018 Management Presentation, and a valuation prepared by Carta Valuations LLC ("Carta") that Defendants knew grossly understated Wave's liabilities and overstated Wave's net worth and prospects after the MIPS acquisition (the "Valuation"), Wave, Banatao, Christiansen, Meyer, Aboitiz and Bencala deliberately misrepresented Wave's financial condition and prospects to induce Canyon Bridge to purchase the Series E Preferred stock. Canyon Bridge is informed and believes that this stock is now

essentially worthless. Canyon Bridge is further informed and believes that Banatao and Tallwood caused, enabled, aided and abetted the fraud perpetrated by Wave and the other Defendants.

44. In deciding to participate in the Series E extension, Plaintiff justifiably relied on the June 2018 Management Presentation that valued MIPS at ███████ grossly overstating Wave's financial condition and prospects, and which falsely indicated that the MIPS transaction would improve Wave's business prospects and bottom line, "adding a projected ████ in revenue and ████ in margin through 2022," and set the "basis for [a] new investment round" at a valuation greater than ██████ Defendants knew that none of these assertions was true, but were instead made in an attempt to deceive potential investors, including Canyon Bridge, and to induce prospective investors, including Canyon Bridge, to assent to Wave's acquisition of MIPS and later, to purchase shares of Wave stock as part of the Series E financing.

45. Indeed, in large part because of the MIPS acquisition, Wave and Banatao represented to Canyon Bridge and others that the pre-money valuation for the Series E offering was ████ ████ Within months of closing the Series E extension, however, Defendants' scheme began to unravel. Wave would pay more than █████ to Windtree, the lead Series E investor, to settle claims related to the Series E offering, sparking a financial freefall that has left Wave worth less than █████ today.

46. The representations of Wave's financial condition and prospects and that the acquisition of MIPS would improve Wave's bottom line and cash flow and prospects (and hence would not damage them) were material to Canyon Bridge's decision to invest in Wave's Series E round of financing. At the time of the Series E round of financing, Canyon Bridge was unaware, and could not have determined by using due diligence, that the acquisition of MIPS not only would not improve Wave's bottom line, cash flow and prospects, but also was likely to substantially damage Wave, or that MIPS' financial records grossly overstated MIPS' net worth and value. Canyon Bridge, like Windtree and other purchasers of the Series E Preferred stock, reasonably relied to its detriment on Wave's and Banatao's statements to conclude that the Series E Preferred stock was worth the ███ per share that Canyon Bridge paid for it.

Case: 20-50682    Doc# 47-1    Filed: 04/30/20    Entered: 04/30/20 23:04:56    Page 13 of 34

47.    On information and belief, Wave, Banatao and Tallwood each was aware that the information provided to Plaintiff in connection with the MIPS acquisition and Series E offering misrepresented the total liabilities and value of Wave and that the acquisition of MIPS was unlikely to improve Wave's bottom line or cash flow or prospects and instead was likely to damage them, but did not attempt to correct the information provided to prospective investors including Canyon Bridge (which it knew was a potential investor) or otherwise to prevent the misrepresentations.

**D.    Wave Enters Into a ███████ Plus Settlement with Windtree, the Lead Series E Investor**

48.    In conjunction with its Series E investment, Windtree appointed Gregory Corona to Wave's Board of Directors in or around September 2018.

49.    Upon information and belief, shortly after the close of the Series E in September 2018, Windtree discovered that Wave, Tallwood and Banatao had made material misstatements or omissions related to the Series E offering. Upon information and belief, Desi Banatao and/or Rey Banatao informed Windtree and/or Defendant Corona that MIPS had "cooked the books" to inflate or overstate its business and financial prospects as well as to understate its liabilities, which were far in excess of what was disclosed to prospective Series E investors.

50.    Rather than disclose to all Wave shareholders the possibility of malfeasance in connection with the MIPS acquisition and Series E offering, upon information and belief, Defendant Corona kept this information to himself, sharing it only with Windtree (and its manager, Oakmont). Upon information and belief, Corona did not disclose any of this to Wave shareholders because by keeping it secret, he increased the chances that Wave would pay the ███████ back to Windtree. (Indeed, Wave did so agree, in exchange for Windtree's commitment to destroy and keep confidential all information related to Windtree's allegations, in effect ensuring the Wave shareholders would never learn the substance of Windtree's allegations.) Corona thus breached his duty of loyalty by placing the interests of Windtree ahead of those of Wave stockholders generally.

Case: 20-50682    Doc# 47-1    Filed: 04/30/20    Entered: 04/30/20 23:04:56    Page 14 of 34

51. Upon information and belief, in the first half of 2019, Windtree asserted claims sounding in fraud against Wave, its Directors and Officers, Tallwood and Banatao and threatened that if it did not receive back its entire ███████ Series E investment, plus $350,000 in attorneys' fees, Windtree would sue each of them.

52. Upon information and belief, Wave failed to assemble a properly functioning special committee of disinterested and independent directors to evaluate Windtree's claims and the settlement. Instead, Wave's Board of Directors, upon information and belief consisting of Banatao, his son Rey Banatao, Scull (of Southern Cross), Aboitiz, and Wave's new CEO Arthur Swift selfishly approved a settlement agreement with Windtree which would extinguish their personal liabilities and the liabilities of Banatao and Tallwood. The settlement required Wave to pay Windtree ███████ plus $350,000 in attorneys' fees, in exchange for Windtree's shares of stock purchased in the Series E round of financing ("Windtree Settlement").

53. On June 30, 2019, one day before the Windtree Settlement was executed, a Wave shareholder, through his attorney, sent a letter to Banatao and Swift demanding that the Company not enter in to the settlement with Windtree because of the devastating financial impact it would have on the Company. Wave nonetheless executed the Windtree Settlement on July 1, 2019.

54. Upon information and belief, the Board understood that as a result of the Windtree Settlement, the Company and its business operations would be crippled, including shutting down Wave's AI operations. In fact, the Windtree Settlement did cause Wave to enter a "death spiral" that has drastically reduced its value and possibly caused it to become insolvent.

55. The Wave Directors approved the Windtree Settlement under disabling conflicts of interest, and a majority of the Board of Directors that approved the Windtree Settlement was not disinterested and independent.

56. Gregory Corona had a conflict of interest because he was the Chairman of the Board of Lakewood & Company, LLC, the owner of Windtree and recipient of over ███████ from the settlement. Arthur Swift, Wave's CEO, had a conflict of interest and was controlled by and

beholden to Banatao and Tallwood, because Banatao controlled Swift's salary and continued employment.

57.    Banatao, Christiansen (of Southern Cross) and Aboitiz were each Directors when the MIPS acquisition and the $50 million Series E extension were approved, and upon information and belief, it was these Board decisions and acts that formed the basis for Windtree's claims. Accordingly, Banatao and Tallwood, Scull (a Southern Cross partner) and Aboitiz each faced personal liability to Windtree, liability which was released in the Windtree Settlement. Because their personal liabilities were released, Banatao, Scull (on behalf of Christiansen and Southern Cross) and Aboitiz were each conflicted and unable to fairly consider whether the Windtree Settlement was in the best interests of Wave and its shareholders.

58.    The Windtree Settlement indicates that Windtree's claims were valid. The decision to settle could not possibly have been made in good faith or lawfully, or consistent with fiduciary duties to shareholders.

59.    The Windtree Settlement included the extremely unusual and suspicious requirement that Windtree and its counsel destroy all documents, including work product prepared in the course of investigating the disputes underlying the settlement, they possessed relating to the dispute leading up to the settlement and the negotiation of the settlement. The Windtree Settlement also provided for Wave to destroy or return to Windtree all documents provided by Windtree related to the dispute. These two unusual provisions ensured that little or no written evidence of Windtree's claims would be preserved, and that any shareholder other than Windtree would not obtain evidence of the breaches of fiduciary duties related to the Windtree Settlement. This is strong evidence that Windtree's claims were valid. No other inference is reasonable.

60.    Despite repeated requests from Canyon Bridge and at least one other Wave shareholder for information about the dispute that led up to this settlement, Wave never disclosed to Canyon Bridge what Windtree's allegations were, any aspect of who or how the Board investigated those allegations, what materials were relied on in the investigation, and any of the findings of fact or law. Wave has steadfastly refused to provide information to Canyon Bridge and other minority

shareholders about the dispute leading up to the settlement. This also indicates that Windtree's claims likely were valid.

61. Because Wave would not voluntarily disclose any information about the Windtree Settlement, on March 20, 2020, Canyon Bridge made a shareholder's demand for inspection of records relating to the Windtree settlement (and other matters) pursuant to 8 Delaware Code section 220. As of the filing of this Complaint, Canyon Bridge has not received a single document or a commitment as to when documents will be produced. This further indicates that Windtree's claims likely were valid.

62. Moreover, on information and belief, Wave did not have enough money to fund the Windtree Settlement and depended on Tallwood to loan at least ██████ to Wave to enable Wave to consummate the Windtree Settlement. Tallwood, and its controller Banatao, agreed to finance the Windtree Settlement because the settlement would extinguish claims against Tallwood and Banatao. This also is strong evidence that Windtree's claims were valid.

63. It also is highly unusual, and engenders suspicion, that immediately after this transaction was consummated, upon information and belief, all of Wave's then-Directors who approved the Windtree Settlement, but for Banatao, resigned their positions as Directors. For all of these reasons, Wave's subsequent contention that it investigated Windtree's claim and found no liability lacks credibility.

64. The Windtree Settlement was not fair to Wave and its minority shareholders. It benefited only Banatao, Tallwood, the Wave Directors and Windtree and sent Wave into a "death spiral" that has caused Wave's net worth to decrease from a ██████ pre-Series E valuation to, upon information and belief, a less than ██████ valuation today.

65. This was an extraordinary action that must have resulted from Wave's Board's concerns about liability for Wave Board members and Tallwood related to the Series E offering to Windtree, and upon information and belief, related to the indefensible MIPS acquisition and subsequent Series E offering.

13
COMPLAINT

66.    Upon information and belief, whatever liabilities Defendants had to Windtree were a direct result of Wave's purchase of Series E shares, and thus are necessarily liabilities to all purchasers of Series E shares, including Canyon Bridge.

67.    As a result of the weakened financial condition of Wave resulting from the MIPS acquisition and the Windtree Settlement, Tallwood has become the ███████████████ Wave.

**E.    Wave Fraudulently Offers to "Redeem" Canyon Bridge's Series E Shares**

68.    Rather than provide Plaintiff and other minority shareholders with information about Windtree's claims and the Windtree Settlement, Wave, Banatao and Tallwood attempted to pacify Plaintiff and other minority shareholders by having Wave offer Series E investors, including Plaintiff, the opportunity to redeem their Series E shares at a price of ████ per share. Upon information and belief, because Wave did not have sufficient cash, it could only redeem Series E shares if Tallwood financed the redemptions (as, upon information and belief, it had done for at least ████████ of the Windtree Settlement). Plaintiff suspects that Wave, Banatao and Tallwood never intended to actually purchase Plaintiff's Series E shares, and instead made the offer only to induce Plaintiff to refrain from asking for information about the Windtree Settlement and to prevent Plaintiff from instituting legal action related to the MIPS acquisition, Series E offering, and Windtree Settlement.

69.    In order to dissuade Plaintiff from redeeming its Series E shares, Wave, Banatao and Tallwood, acting through Wave, made further material misstatements and omissions regarding Wave's financial condition. Through Wave's corporate counsel, Plaintiff was provided with falsified financials that put Wave's liabilities as of the second quarter of 2019 at ████████ In truth, however, Wave, Banatao and Tallwood deliberately understated Wave's liabilities by ████████ in order to convince Plaintiff that instead of redeeming its Series E shares, it should take a convertible note and allow Wave additional time to recover from the consequences of the Windtree Settlement. Upon information and belief, Wave, Banatao and Tallwood knew or had reason to know that Wave's total liabilities actually were approximately ████████

70.     Plaintiff had no means by which to discover that the financials it received understated Wave's liabilities by ███████. In reliance on those falsified financials, Plaintiff elected not to immediately redeem its Series E shares, and not to press on its legal claims related to the breaches of fiduciary duty related to the MIPS acquisition, Series E offering and Windtree Settlement.

71.     When around November 2019 Plaintiff informed Wave that it would redeem its Series E shares, Wave's corporate counsel disclosed to Plaintiff, for the first time, that Wave's liabilities were actually ███████ higher than had been presented to Plaintiff just months earlier, and that as a result, Wave would not redeem Plaintiff's shares.

72.     Upon information and belief, Wave's financial condition has deteriorated to the point where it will likely seek bankruptcy protection, leaving Plaintiff with little chance of recovering or maintaining any of its investments or equity interest in the Company. Conversely, because of Banatao's control over Wave and ████████████████████████████ Tallwood (and Banatao) is likely to recover or maintain most if not all of its financial interest in Wave.

**IV.     DEFENDANTS BEAR THE BURDEN OF SHOWING THE ENTIRE FAIRNESS OF THE MIPS ACQUISITION AND THE WINDTREE SETTLEMENT**

73.     The duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally.

74.     With respect to the MIPS acquisition and the Windtree Settlement, Defendants here were "interested" because they stood on both sides of a transaction or expected to derive a material personal financial benefit from the transaction that did not devolve on all stockholders generally.

75.     Plaintiff alleges herein that Defendants, separately and together, violated fiduciary duties owed to Plaintiff and the other shareholders of Wave, including their duties of loyalty, good faith, candor, due care, and independence, insofar as they (i) disregarded conflicts of interest and engaged in self-dealing; (ii) obtained for themselves or those they were beholden to personal benefits, including personal financial benefits, not shared equally by Plaintiff or other shareholders; and (iii) chose not to provide Plaintiff and other shareholders with all the

15
COMPLAINT

information necessary to make an informed decision or to take corrective action in connection with the Company's actions.

76. Under Delaware law, because the Directors confronted actual conflicts of interest, such that the Directors making the challenged decisions did not comprise a disinterested and independent majority of the Board, the "entire fairness" standard of review applies.

77. With respect to the MIPS acquisition, there was no fair price and no fair process. Banatao controlled the Board and the transaction, and he (through Tallwood and Entropy Research Labs) stood on both sides of the transaction. Because it was controlled by Banatao, Wave failed to establish a special committee to evaluate, negotiate and approve the transaction, failed to conduct any independent diligence, and failed to obtain an uncoerced and fully informed approval from a majority of the minority stockholders.

78. With respect to the Windtree Settlement, there was no fair price and no fair process. Upon information and belief, there was no properly functioning special committee to evaluate the proposed settlement, and Wave did not secure an uncoerced and fully informed approval from a majority of the minority stockholders. Banatao, Scull and Aboitiz, who approved the Windtree Settlement, received personal benefits not shared with other shareholders because the Windtree Settlement released their personal liabilities (or those of their funds) related to Windtree's claims against them and Wave. Gregory Corona received a personal benefit not shared with other shareholders because he was, upon information and belief, a significant owner and the chairman of Windtree, which received more than ███████████ as a result of the Windtree Settlement.

79. Tallwood, ████████████████████████ at the time of the challenged transactions, which had a controlling equity interest and two appointed Board members, chose to disregard its highest fiduciary duties owed to stockholders and brazenly act in its own self-interest.

## V.    DEMAND IS EXCUSED AS FUTILE

80. Canyon Bridge brings claims for breach of fiduciary duty directly and also derivatively in the right of and for the benefit of Wave to redress the injuries suffered by Wave as a result of the

16
COMPLAINT

Defendants' breaches of fiduciary duties. Plaintiff Canyon Bridge and its counsel will adequately and fairly represent the interest of Wave in enforcing and prosecuting its rights.

81.     Plaintiff Canyon Bridge was a shareholder of Wave at the times of the wrongdoings complained of, has continuously been a shareholder, and is a current shareholder.

82.     Despite having detailed knowledge of the facts or wrongdoing by Defendants, Wave's Board has, at all times, failed and refused to seek recovery for Wave for any of the misconduct alleged herein. Defendants, through their attorneys, have steadfastly denied all wrongdoing.

83.     Based on Defendants' acts and omissions in direct violation of their fiduciary duties of care, good faith, honesty and loyalty, a pre-suit demand on the Wave Board is excused as a futile and useless act. Upon information and belief, Wave's current Board consists of Dado Banatao, Desi Banatao, and Ker Zhang. Both Dado Banatao and Desi Banatao have been named as Defendants in this suit and, on information and belief, personally profited from the wrongdoing alleged herein. They are not able to conduct an independent objective investigation of the alleged wrongdoing, because they were appointed by Tallwood and have a personal interest in protecting Tallwood from liability. Dado Banatao is likely to face personal liability for breach of the duty of loyalty because he stood on both sides of the MIPS transaction and because he secured a personal benefit from the releases in the Windtree Settlement. Dado's son, Desi Banatao, is beholden to Dado and cannot be expected to fairly consider any demand to name his father in a suit for self-dealing and breach of the fiduciary duty of loyalty. Desi Banatao also has a direct financial interest in Defendants Tallwood and Entropy Research Labs, faces a substantial risk of personal liability for the MIPS transaction, and cannot be expected to fairly consider a demand to sue himself, Tallwood and Entropy Research Labs. Thus, a majority of Wave's Board cannot be relied upon to reach a truly independent decision whether to commence, maintain and prosecute the demanded action against themselves and the other Defendants responsible for the misconduct alleged in this complaint.

17
COMPLAINT

84. As established herein, because there is at least a reasonable doubt that the challenged transactions were the product of a valid exercise of business judgment by the Defendants, demand is excused.

## CAUSES OF ACTION

## COUNT I

### (SECURITIES FRAUD: CAL. CORP. CODE §§ 25400, 25401, 25500, 25501 & 22504.1)

**(By Plaintiff Directly Against Wave, Diosdado Banatao, Desi Banatao, Robert Christiansen, Derek Meyer, Juan Ignacio Aboitiz, Dennis Bencala, Entropy Research Labs, LLC, Tallwood Venture Capital, Tallwood Investment Partners LLP, Tallwood III, L.P., Tallwood Associates, L.P., and Tallwood Partners, L.P.)**

85. Plaintiff incorporates herein the allegations set forth above as if they had been set forth in full herein.

86. In 2018, Defendants communicated with Plaintiff about whether Plaintiff would want to purchase Series E Preferred stock at █████ per share. Each Defendant willfully participated and provided material assistance to the other in assembling and providing to Plaintiff false and misleading analyses and financial materials related to Wave's recent acquisition of MIPS and Wave's financial condition and prospects generally.

87. Reasonably and justifiably relying on these representations, Plaintiff agreed to purchase $3 million of Series E Preferred stock.

88. Plaintiff is informed and believe, and thereon alleges, that Defendants knew the representations concerning the MIPS acquisition and Wave's financial condition and prospects were false and/or misleading at the time the statements were made, or that Defendants intentionally failed to disclose material information to Plaintiff that rendered these representations false and/or misleading, and made these material representations in an effort to fraudulently induce Plaintiff to agree to purchase Series E Preferred stock.

89. Had Plaintiff known the foregoing facts, it would not have agreed to purchase Series E Preferred stock.

90. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered substantial damages in connection with its fraudulently induced purchase of Series E Preferred

shares in Wave. Plaintiff has been damaged in an amount to be proven at trial, including, but not limited to, (1) monies that Plaintiff would have earned had Plaintiff invested its money elsewhere, and/or (2) the difference between the actual value of the securities acquired by Plaintiff and the consideration paid by Plaintiff. Alternatively, Plaintiff is entitled to rescission of its ████ purchase of Wave Series E Preferred shares.

## COUNT II

### (SECURITIES FRAUD: CAL. CORP. CODE § 25504)

**(By Plaintiff Directly Against Diosdado Banatao, Tallwood Venture Capital, Tallwood Investment Partners LLP, Tallwood III, L.P., Tallwood Associates, L.P., and Tallwood Partners, L.P.)**

91.    Plaintiff incorporates herein the allegations set forth above as if they had been set forth in full herein.

92.    At all times relevant herein, and in connection with the statements made to Plaintiff related to the Series E offering, Defendants Banatao, Tallwood Venture Capital, Tallwood Investment Partners LLP, Tallwood III, L.P., Tallwood Associates, L.P., and Tallwood Partners, L.P. exercised direct and/or indirect control over Wave and its Directors and Officers, and had actual knowledge or reasonable grounds to believe in the existence of facts by reason of which the liability of Wave and its Directors and Officers to Plaintiff exist.

93.    Accordingly, Defendants Banatao, Tallwood Venture Capital, Tallwood Investment Partners LLP, Tallwood III, L.P., Tallwood Associates, L.P., and Tallwood Partners, L.P. are jointly and severally liable to Plaintiff for damages sustained as a result of Plaintiff's purchase of Series E Preferred shares.

## COUNT III

### (FRAUD AND DECEIT: CAL. CIV. CODE §§ 1709 & 1710; AIDING AND ABETTING)

**(By Plaintiff Directly Against Wave, Diosdado Banatao, Desi Banatao, Robert Christiansen, Derek Meyer, Juan Ignacio Aboitiz, Dennis Bencala, Entropy Research Labs, LLC, Tallwood Venture Capital, Tallwood Investment Partners LLP, Tallwood III, L.P., Tallwood Associates, L.P., and Tallwood Partners, L.P.)**

94.    Plaintiff incorporates herein the allegations set forth above as if they had been set forth in full herein.

Case: 20-50682    Doc# 47-1    Filed: 04/30/20    Entered: 04/30/20 23:04:56    Page 23 of 34

95.    In 2018, Defendants communicated with Plaintiff about whether Plaintiff would want to purchase Series E Preferred stock at ██ per share. Each Defendant willfully and intentionally provided to Plaintiff, and materially aided and abetted each other Defendant in so providing to Plaintiff, false and misleading analyses and financial materials related to Wave's recent acquisition of MIPS and Wave's financial condition and prospects generally.

96.    Reasonably and justifiably relying on these representations, Plaintiff agreed to purchase $3 million of Series E Preferred stock.

97.    Plaintiff is informed and believe, and thereon alleges, that Defendants knew the representations concerning the MIPS acquisition were false at the time the statements were made, or that Defendants intentionally failed to disclose material information to Plaintiff that rendered these representations false, and made these material representations in an effort to fraudulently induce Plaintiff to agree to purchase Series E Preferred stock.

98.    Had Plaintiff known the foregoing facts, it would not have agreed to purchase Series E Preferred stock.

99.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered substantial damages in connection with its fraudulently induced purchase of Series E Preferred shares in Wave. Plaintiff has been damaged in an amount to be proven at trial, including, but not limited to, (1) monies that Plaintiff would have earned had Plaintiff invested its money elsewhere, and/or (2) the difference between the actual value of the securities acquired by Plaintiff and the consideration paid by Plaintiff.

100.    Defendants acted with fraud, malice, and oppression, as a result of which Plaintiff is entitled to punitive damages to punish Defendants, and to set an example for others considering similar misconduct.

## COUNT IV

**(FRAUD AND DECEIT: CAL. CIV. CODE §§ 1709 & 1710; AIDING AND ABETTING)**

**(By Plaintiff Directly Against Wave, Diosdado Banatao, Desi Banatao, Rey Banatao, Dennis Bencala, Tallwood Venture Capital, Tallwood Investment Partners LLP, Tallwood III, L.P., Tallwood Associates, L.P., and Tallwood Partners, L.P.)**

101. Plaintiff incorporates herein the allegations set forth above as if they had been set forth in full herein.

102. In 2019, after the Windtree Settlement, each Defendant communicated to Plaintiff, and materially aided and abetted each other Defendant in communicating to Plaintiff, an offer to redeem Plaintiff's Series E shares for ███ per share. Defendants also provided Plaintiff with misleading financial statements and analyses in order to induce Plaintiff to forego exercising the offer to redeem Plaintiff's Series E shares.

103. Reasonably and justifiably relying on these representations, Plaintiff did not immediately accept Defendants' offer to redeem the Series E shares.

104. Plaintiff is informed and believe, and thereon alleges, that Defendants knew the offer to redeem Plaintiff's Series E shares, and the representations concerning the financial condition of Wave, including its purported liabilities of ███ were false at the time the statements were made, or that Defendants intentionally failed to disclose material information to Plaintiff that rendered these representations false, and made these material representations and intending by its silence to induce reliance by Plaintiff (which was unaware of the falsity) to forgo legal action related to the Windtree Settlement, and to forgo accepting the offer to redeem Plaintiff's Series E Preferred shares.

105. Had Plaintiff known the foregoing facts, it would have immediately accepted Defendants' offer to redeem its Series E Preferred shares, and/or it would have instituted legal action related to the Windtree Settlement sooner.

106. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered substantial damages in an amount to be proven at trial.

107. Defendants acted with fraud, malice, and oppression, as a result of which Plaintiff is entitled to punitive damages to punish Defendants, and to set an example for others considering similar misconduct.

## COUNT V

### (BREACH OF FIDUCIARY DUTY)

**(By Plaintiff, Directly and Derivatively on behalf of Wave, Against Diosdado Banatao, Desi Banatao, Robert Christiansen, Derek Meyer, Juan Ignacio Aboitiz, Dennis Bencala, Tallwood Venture Capital, Tallwood Investment Partners LLP, Tallwood III, L.P., Tallwood Associates, L.P., and Tallwood Partners, L.P.)**

108.  Plaintiff incorporates herein the allegations set forth above as if they had been set forth in full herein.

109.  Defendants, in their capacities as Directors, Officers and/or controlling shareholders of Wave, owed fiduciary duties of loyalty, due care, independence, candor, good faith and fair dealing to the shareholders of Wave, including Plaintiff. However, Defendants breached their fiduciary duties and acted to put their personal interests (or the interests of those to whom they were beholden) ahead of the interests of Plaintiff and Wave shareholders generally.

110.  With respect to the MIPS acquisition, Defendants breached these duties by:

    a.   ignoring or failing to protect against the numerous conflicts of interest resulting from their dual status as partners, owners or managers of investors in Wave and owners of MIPS, while simultaneously owing fiduciary duties to Plaintiff and other shareholders of Wave;

    b.   failing to adequately disclose to Plaintiff and other Wave shareholders all necessary information in connection with the MIPS acquisition;

    c.   abusing their control over Wave to cause Wave to acquire MIPS for the benefit of certain Directors, Officers and controlling shareholders of Wave, to the detriment of Plaintiff and other Wave minority shareholders.

111.  The Tallwood Entities were a controlling shareholder group because they, either individually or collectively as part of a joint and closely affiliated group, ███████████████ █████████████████████ and/or exercised day-to-day control of Wave, and had effective power to control or veto corporate decisions by virtue of its control of the Board of Directors and Officers of Wave, and further exercised control over the business and affairs of Wave directly and through its designated members on the Board.

112.  Moreover, Defendants were controlled by and beholden to Banatao and the Tallwood entities and, in their roles as executives or Directors of Wave, participated in the acts of

22
COMPLAINT

mismanagement and breaches of fiduciary duties alleged herein, acted in gross disregard of the facts, or failed to exercise due care to prevent the unlawful and improper conduct described herein.

113. Because Banatao and the Tallwood entities dominate and control the business and corporate affairs of Wave, and are in possession of private corporate information concerning Wave's assets, business, and future prospects, there exists an imbalance and disparity of knowledge and economic power between Banatao and Tallwood on the one hand, and minority shareholders including Plaintiff on the other, which makes it inherently unfair for Banatao and Tallwood to pursue any proposed transaction wherein it will reap disproportionate benefits or which will absolve it of its liabilities, to the detriment of Plaintiff and other minority shareholders.

114. Defendants knowingly aided, encouraged, cooperated and/or participated in, and substantially assisted the other Defendants in the breaches of their fiduciary duties. By the acts, transactions, and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, advanced their interests at the expense of Plaintiff and other minority shareholders, and unfairly deprived Plaintiff and other minority shareholders of the true value of their interests and voting power in Wave.

115. Plaintiff's claim related to the MIPS acquisition is brought derivatively on behalf of Wave, and it is also brought directly because Defendants, including those who acted as Wave's controlling shareholders and having majority or effective control, caused Wave to issue excessive shares of its stock in exchange for assets that had lesser value, and the exchange caused an increase in the percentage of the outstanding shares owned by Defendants and a corresponding decrease in the share percentage and voting power owned by Plaintiff.

116. As a direct and proximate result of Defendants' wrongful acts, Wave and Plaintiff have sustained substantial injuries for which they seek appropriate judicial relief, and Defendants' conduct was a substantial factor in causing such injuries.

## COUNT VI

### (BREACH OF FIDUCIARY DUTY)

Case: 20-50682    Doc# 47-1    Filed: 04/30/20    Entered: 04/30/20 23:04:56    Page 27 of 34

**(By Plaintiff, Derivatively on behalf of Wave, Against Diosdado Banatao, Rey Banatao, John Scull, Juan Ignacio Aboitiz, Arthur Swift, Dennis Bencala, Tallwood Venture Capital, Tallwood Investment Partners LLP, Tallwood III, L.P., Tallwood Associates, L.P., and Tallwood Partners, L.P.)**

117. Plaintiff incorporates herein the allegations set forth above as if they had been set forth in full herein.

118. Defendants, in their capacities as Directors, Officers and/or controlling shareholders of Wave, owed fiduciary duties of loyalty, due care, independence, candor, good faith and fair dealing to the shareholders of Wave, including Plaintiff. However, Defendants breached their fiduciary duties and acted to put their personal interests (or the interests of those to whom they were beholden) ahead of the interests of Plaintiff and Wave shareholders generally.

119. With respect to the Windtree Settlement, Defendants breached these duties by:

    a. ignoring or failing to protect against the numerous conflicts of interest resulting from their dual status as partners, owners or managers of investors in Wave, owners of MIPS, or Directors and Officers facing personal liability to Windtree, while simultaneously owing fiduciary duties to Plaintiff and other shareholders of Wave;

    b. wasting Wave's corporate assets by diverting monies intended for operations to pay the Windtree Settlement;

    c. failing to adequately disclose to Plaintiff and other Wave shareholders all necessary information in connection with the Windtree Settlement;

    d. abusing their control over Wave to cause Wave to enter into the Windtree Settlement for the benefit of certain Directors, Officers and controlling shareholders of Wave, to the detriment of Plaintiff and other Wave minority shareholders.

120. The Tallwood Entities were a controlling shareholder group because they, either individually or collectively as part of a joint and closely affiliated group, ▮▮▮▮▮▮ and/or exercised day-to-day control of Wave, and had effective power to control or veto corporate decisions by virtue of its control of the Board of Directors and

24
COMPLAINT

Officers of Wave, and further exercised control over the business and affairs of Wave directly and through its designated members on the Board.

121. Moreover, Defendants were controlled by and beholden to Banatao and the Tallwood entities and, in their roles as executives or Directors of Wave, participated in the acts of mismanagement and breaches of fiduciary duties alleged herein, acted in gross disregard of the facts, or failed to exercise due care to prevent the unlawful and improper conduct described herein.

122. Because Banatao and the Tallwood entities dominate and control the business and corporate affairs of Wave, and is in possession of private corporate information concerning Wave's assets, business, and future prospects, there exists an imbalance and disparity of knowledge and economic power between Banatao and Tallwood on the one hand, and minority shareholders including Plaintiff on the other, which makes it inherently unfair for Banatao and Tallwood to pursue any proposed transaction wherein it will reap disproportionate benefits or which will absolve it of its liabilities, to the detriment of Plaintiff and other minority shareholders.

123. Defendants knowingly aided, encouraged, cooperated and/or participated in, and substantially assisted the other Defendants in the breaches of their fiduciary duties. By the acts, transactions, and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, advanced their interests at the expense of Wave, Plaintiff and other minority shareholders.

124. As a direct and proximate result of Defendants' wrongful acts, Wave and Plaintiff have sustained substantial injuries for which they seek appropriate judicial relief, and Defendants' conduct was a substantial factor in causing such injuries.

## COUNT VII

### (BREACH OF FIDUCIARY DUTY)

**(By Plaintiff, Derivatively on behalf of Wave, Against Gregory Corona)**

125. Plaintiff incorporates herein the allegations set forth above as if they had been set forth in full herein.

Case: 20-50682    Doc# 47-1    Filed: 04/30/20    Entered: 04/30/20 23:04:56    Page 29 of 34

1   126.  Defendant Corona, in his capacity as a Wave Director, owed fiduciary duties of loyalty,

2   due care, independence, candor, good faith and fair dealing to the shareholders of Wave,

3   including Plaintiff. However, Defendant Corona breached his fiduciary duties and acted to put his

4   personal interests and the interests of Windtree, Oakmont and Lakewood & Company, LLC ahead

5   of the interests of Plaintiff and Wave shareholders generally.

6   127.  Defendant Corona breached his duties by failing to protect Wave and its shareholders,

7   including Plaintiff, after he learned of the malfeasance of other Wave Directors, Officers and

8   Tallwood in connection with the MIPS acquisition and Series E offering, and by agreeing to keep

9   that evidence of malfeasance hidden from Plaintiff and other Wave shareholders generally.

10   128.  Defendant Corona knowingly aided, encouraged, cooperated and/or participated in, and

11   substantially assisted the other Defendants in the breaches of their fiduciary duties. By the acts,

12   transactions, and courses of conduct alleged herein, Corona advanced their interests at the

13   expense of Plaintiff and other minority shareholders.

14   129.  As a direct and proximate result of Defendant Corona's wrongful acts, Wave and Plaintiff

15   have sustained substantial injuries for which they seek appropriate judicial relief, and Defendants'

16   conduct was a substantial factor in causing such injuries.

17                                **COUNT VIII**

18                **(AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY)**

19   **(By Plaintiff, Directly and Derivatively on behalf of Wave, Against Entropy Research
     Labs and Desi Banatao; and, in the alternative, against Tallwood Venture Capital,
20   Tallwood Investment Partners LLP, Tallwood III, L.P., Tallwood Associates, L.P., and
                              Tallwood Partners, L.P.)**

21   130.  Plaintiff incorporates herein the allegations set forth above as if they had been set forth in

22   full herein.

23   131.  A claim for aiding and abetting a breach of fiduciary duty requires proof of: (1) the

24   existence of a fiduciary relationship; (2) a breach of a fiduciary duty; (3) knowing participation in

25   the breach by a defendant who is not a fiduciary; and (4) damages proximately caused by the

26   breach.

27

28

                                       26
                                   COMPLAINT

132.  Entropy Research Labs and Desi Banatao, and in the alternative, if the Tallwood Entities did not owe a fiduciary duty to Wave shareholders, each Tallwood Entity, aided and abetted the other Defendants in breaching their fiduciary duties owed to the shareholders of Wave, including Plaintiff, by actively and knowingly participating in the other Defendants' breaches of fiduciary duties owed to Plaintiff in connection with the MIPS acquisition. In so doing, Defendants rendered substantial assistance in order to effectuate the other Defendants' plan to engage in unfair transaction in breach of their fiduciary duties.

133.  By working in concert with the other Defendants to commit a breach of fiduciary duty to injure Plaintiff and other minority shareholders, the Tallwood Entities (in the alternative), Entropy Research Labs and Desi Banatao became members of a combination that sought to achieve an unlawful purpose and/or to achieve a lawful purpose by unlawful means, which has included breach of fiduciary duty and minority shareholder oppression.

134.  As a direct and proximate result of Defendants' aiding and abetting and wrongful conspiracy and their related, underlying wrongful acts, Plaintiff has sustained substantial injuries for which it seeks appropriate judicial relief, and Defendants' conduct was a substantial factor in causing such injuries.

<u>**COUNT IX**</u>

**(UNFAIR COMPETITION: CAL. BUS. & PROF. CODE §§ 17200, ET SEQ.)**
**(By Plaintiff Directly Against All Defendants)**

135.  Plaintiff incorporates herein the allegations set forth above as if they had been set forth in full herein.

136.  Defendants have engaged in unfair business practices in California by engaging in the activities described above.

137.  Plaintiff alleges that at all relevant times, Defendants' actions, including fraud, breach of fiduciary duty, and other conduct set forth in this Complaint, also constituted fraudulent, unfair and/or unlawful activities prohibited by California Business & Professions Code §§ 17200, *et*

*seq.*, and justify restitution to Plaintiff. Plaintiff has sustained injury in fact and has lost money or property as a result of Defendants' unfair business practices.

138.  This Court is authorized to order restitution as a remedy for any violation of California Business & Professions Code §§ 17200, *et seq.* Plaintiff seeks full restitution of said monies and/or property from Defendants as necessary and according to proof, to restore all monies withheld or acquired by means of the unfair business practices complained of herein.

<u>**COUNT X**</u>

**(UNJUST ENRICHMENT)**

**(By Plaintiff, Directly and Derivatively on behalf of Wave, Against All Defendants)**

139.  Plaintiff incorporates herein the allegations set forth above as if they had been set forth in full herein.

140.  Defendants received assets belonging to Plaintiff through investments made by Plaintiff in Wave in the fraudulent Series E offering.

141.  To the extent Defendants received the benefit of Plaintiff's monies without complying with their fiduciary duties or as a result of fraud, Defendants were unjustly enriched.

142.  Plaintiff is entitled to restitution of Defendants' unjust enrichment.

143.  Accordingly, Plaintiff is entitled to disgorgement by Defendants of all monies, assets, and benefits obtained directly or indirectly through Defendants' wrongful conduct as alleged herein.

**VI.      PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Canyon Bridge demands relief against Defendants as follows:

1.    For judgment to be entered for Plaintiff and against Defendants;

2.    For Plaintiff to be awarded damages in an amount to be proven at trial as the law allows;

3.    For a declaration that Plaintiff's purchase of Series E Preferred stock is to be rescinded;

4.    For compensatory damages in an amount to be proven at trial as the law allows;

5.    For exemplary damages to address Defendants' oppression, fraud and malice;

6.    For all actual and special damages as pleaded herein, including all compensatory, consequential, and economic damages, within the jurisdictional limits of the Court;

7.   For restitution and disgorgement of all illicit proceeds generated as a result of the wrongful conduct alleged herein;

8.   For all costs and disbursements of this action, including reasonable attorneys' and experts' fees;

9.   For all statutory damages and penalties;

10.  For an award of interest, including prejudgment interest, at the prevailing legal rate; and

11.  For an award of such other and further equitable and/or injunctive relief as this Court may deem just and proper.


DATED: April 20, 2020                         NASSIRI & JUNG LLP


By: _____

                                              Kassra P. Nassiri
                                              Attorneys for Plaintiff

                                              CANYON BRIDGE FUND I, LP

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.


DATED: April 20, 2020                                    NASSIRI & JUNG LLP




By: _____

                                    Kassra P. Nassiri
                                    Attorneys for Plaintiff

                                    CANYON BRIDGE FUND I, LP