SIDLEY AUSTIN LLP
Samuel A. Newman (SBN 217042)
(sam.newman@sidley.com)
Julia Philips Roth (SBN 324987)
(julia.roth@sidley.com)
555 West Fifth Street
Los Angeles, CA 90013
Telephone: 213.896.6000
Facsimile: 213.896.6600

SIDLEY AUSTIN LLP
Charles M. Persons (admitted *pro hac vice*)
(cpersons@sidley.com)
Juliana Hoffman (admitted *pro hac vice*)
(jhoffman@sidley.com)
Jeri Leigh Miller (admitted *pro hac vice*)
(jeri.miller@sidley.com)
2021 McKinney Avenue
Suite 2000
Dallas, TX 75201
Telephone: 214.981.3300
Facsimile: 214.981.3400

*Proposed Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| In re:<br><br>WAVE COMPUTING, INC., *et al.*,<br><br>Debtors.[1] | Case No. 20-50682 (MEH)<br>Chapter 11 (Jointly Administered)<br><br>**APPLICATION OF DEBTORS PURSUANT TO 11 U.S.C. § 363 FOR AN ORDER AUTHORIZING EMPLOYMENT OF LAWRENCE R. PERKINS AS CHIEF RESTRUCTURING OFFICER AND SIERRACONSTELLATION PARTNERS, LLC**<br><br>Date: June 3, 2020<br>Time: 10:15 a.m. (Pacific Time)<br>Judge: Honorable M. Elaine Hammond<br>Courtroom 11, 280 South First St.<br>San Jose, CA 95113-3099 |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Wave Computing, Inc. (4264), MIPS Tech, Inc. (8247), Hellosoft, Inc. (8640), Wave Computing (UK) Limited (None), Imagination Technologies, Inc. (6967), Caustic Graphics, Inc. (7272), and MIPS Tech, LLC (2161). The Debtors' mailing address is 3201 Scott Blvd, Santa Clara, CA 95054.

Wave Computing, Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") submit this application (this "Application"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order authorizing (i) the designation of Lawrence R. Perkins as the Debtors' Chief Restructuring Officer ("CRO"); and (ii) the employment of SierraConstellation Partners, LLC ("SCP") to provide CRO support to the Debtors effective as of the Petition Date (as defined below). In support of this Application, the Debtors submit the *Declaration of Lawrence Perkins in Support of the Application of Debtors Pursuant to 11 U.S.C. § 363 for an Order Authorizing Employment of Lawrence Perkins as Chief Restructuring Officer and SierraConstellation Partners, LLC* (the "CRO Declaration") filed contemporaneously herewith.

A proposed form of order granting the relief requested herein (the "Order") is attached hereto as **Exhibit A**.

# TABLE OF CONTENTS

I. JURISDICTION ..................................................................................................................1

II. BACKGROUND ..................................................................................................................1

III. RELIEF REQUESTED..........................................................................................................1

IV. QUALIFICATIONS OF LAWRENCE R. PERKINS.............................................................2

V. QUALIFICATIONS OF SCP ................................................................................................2

VI. SERVICES TO BE RENDERED ..........................................................................................3

VII. COMPENSATION ................................................................................................................4

VIII. MONTHLY STAFFING REPORTS .....................................................................................6

IX. INDEMNIFICATION ............................................................................................................7

X. DISINTERESTEDNESS ........................................................................................................7

XI. *NUNC PRO TUNC* RELIEF RELIEF REQUESTED..........................................................8

XII. BASIS FOR RELIEF REQUESTED .....................................................................................8

XIII. RESERVATION OF RIGHTS ...............................................................................................9

XIV. NOTICE................................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bethel Healthcare, Inc. & Corinthian Sub-Acute & Rehab. Ctr., Inc.*,
 Case No. 13-12220 (Bankr. C.D. Cal. 2013) ...................................................................... 2, 3

*In re CFO Mgmt. Holdings, LLC*,
 Case No. 19-40426 (Bankr. E.D. Tex. 2019) ...................................................................... 2, 3

*Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*,
 722 F.2d 1063 (2d Cir. 1983) .................................................................................................. 8

*In re Cont'l Airlines*,
 203 F.3d 203 (3d Cir. 2000) .................................................................................................... 8

*In re Del. & Hudson Ry. Co.*,
 124 B.R. 169 (D. Del. 1991) ................................................................................................... 8

*In re Fairfield Residential LLC*,
 Case No. 09-14378 (Bankr. D. Del. 2010) ............................................................................. 8

*In re Fatburger Restaurants of California, Inc.*,
 Case No. 09-13965 (Bankr. C.D. Cal. 2011) .......................................................................... 8

*In re J&M Sales Inc.*,
 Case No. 18-11801 (Bankr. D. Del. 2018) ............................................................................. 3

*In re Katy Indus., Inc.*,
 Case No. 17-11101 (Bankr. D. Del. 2017) ......................................................................... 2, 3

*In re Liberty Asset Mgmt. Corp.*,
 Case No. 16- 13575 (Bankr. C.D. Cal. 2016) ......................................................................... 3

*In re Liberty Asset Mgmt. Corp.*,
 Case No. 16-13575 (Bankr. C.D. Cal. 2016) .......................................................................... 2

*In re Montgomery Ward Holding Corp.*,
 242 B.R. 147 (Bankr. D. Del. 1999) ....................................................................................... 8

*Myers v. Martin (In re Martin)*,
 91 F.3d 389 (3d Cir. 1996) ...................................................................................................... 8

*In re NORPAC Foods, Inc.*,
 Case No. 19-62584 (Bankr. D. Or. 2019) ............................................................................... 3

*In re S.B. Restaurant Co.*,
 Case No. 14-13778 (Bankr. C.D. Cal. 2014) .......................................................................... 8

*In re Schipper*,
    933 F.2d 513 (7th Cir. 1990) ..................................................................................................8

*In re Scoobeez*,
    Case No. 19-14989 (Bankr. C.D. Cal. 2019) ..........................................................................8

*Stephens Indusl, Inc. v. McClung*,
    789 F.2d 386 (6th Cir. 1986) ..................................................................................................8

*In re The Fuller Brush Co., Inc.*,
    Case No. 12-10714 (Bankr. S.D.N.Y. 2012) ..........................................................................2

*In re The Holliston Mill, Inc.*,
    Case No. 07-10687 (Bankr. D. Del. 2007) .............................................................................8

*In re Westcliff Medical Laboratories, Inc.*,
    Case No. 10-16743 (Bankr. C.D. Cal. 2010) ..........................................................................8

*In re Woodbridge Grp. of Cos. LLC*,
    Case No. 17-12560 (Bankr. D. Del. 2017) .........................................................................2, 3

**Statutes**

28 U.S.C. §§ 157(b) ..........................................................................................................................1

28 U.S.C. § 1334 ..............................................................................................................................1

28 U.S.C. § 1408 ..............................................................................................................................1

28 U.S.C. §§ 1409 ............................................................................................................................1

11 U.S.C. § 105(a) ...........................................................................................................................8

11 U.S.C. § 363 ................................................................................................................................8

**Other Authorities**

Fed. R. Bankr. P. 2002 ...................................................................................................................10

Bankr. Local R. 5011-1(a) ...............................................................................................................1

iii

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. JURISDICTION

The United States Bankruptcy Court for the Northern District of California (this "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the Northern District of California (the "Bankruptcy Local Rules"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

On April 27, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under the Bankruptcy Code in this Court. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b). The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in these Chapter 11 Cases, and no statutory committee has been appointed.

Additional information regarding the Debtors' business, capital structure, and the circumstances preceding the Petition Date may be found in the *Declaration of Lawrence R. Perkins in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration").[2]

## III. RELIEF REQUESTED

By this Application, the Debtors seek entry of an Order, substantially in the form attached hereto as **Exhibit A**, authorizing (i) the designation of Lawrence R. Perkins as the Debtors' CRO; and (ii) the employment of SCP to provide CRO support to the Debtors effective as of the Petition Date, all according to the terms of that certain engagement letter executed April 3, 2020 (the "Engagement Letter"), which is attached hereto as **Exhibit 1** to the Order.

---

[2] Capitalized terms used herein but not defined shall have the definition ascribed to such terms in the First Day Declaration.

## IV. QUALIFICATIONS OF LAWRENCE R. PERKINS

Mr. Perkins is the Chief Executive Officer and Founder of SCP, with eighteen years of management consulting and advisory experience in restructuring matters. Mr. Perkins has extensive experience representing debtors in bankruptcy and out-of-court restructurings, providing due diligence on behalf of parties in interest, implementing operational changes, managing businesses, negotiating new and existing financing agreements, and performing estate wind-down and trustee-related services. In connection with his experience, Mr. Perkins has held such positions as Chief Restructuring Officer, Principal Investor, Turnaround Advisor, Strategic Consultant, Investment Banker, Financial Executive, and Crisis Manager to numerous middle market companies, and is particularly skilled in assisting companies by providing crisis management services.

Prior to founding SCP in January 2013, Mr. Perkins was a Senior Managing Director and Regional Leader of a national turnaround consulting firm where he was responsible for business development, marketing, staffing, and general management of the firm's presence in the region west of the Mississippi River. Through his career, Mr. Perkins has served as Chief Restructuring Officer in numerous out-of-court restructurings as well as various chapter 11 cases, including but not limited to the following: *In re CFO Mgmt. Holdings, LLC*, Case No. 19-40426 (Bankr. E.D. Tex. 2019); *In re Woodbridge Grp. of Cos. LLC*, Case No. 17-12560 (Bankr. D. Del. 2017); *In re Katy Indus., Inc.*, Case No. 17-11101 (Bankr. D. Del. 2017); *In re Liberty Asset Mgmt. Corp.*, Case No. 16-13575 (Bankr. C.D. Cal. 2016); *In re Bethel Healthcare, Inc. & Corinthian Sub-Acute & Rehab. Ctr., Inc.*, Case No. 13-12220 (Bankr. C.D. Cal. 2013); and *In re The Fuller Brush Co., Inc.*, Case No. 12-10714 (Bankr. S.D.N.Y. 2012). In addition, Mr. Perkins has been involved in dozens of in-court and out-of-court restructurings in other roles, including serving as a Deputy Chief Restructuring Officer, Interim Chief Executive Officer, Interim Chief Financial Officer, and financial advisor.

## V. QUALIFICATIONS OF SCP

SCP is an interim management, consulting and advisory firm that specializes in corporate restructurings, operations improvement, litigation analytics, valuations and bankruptcy case management services with headquarters in Los Angeles and offices in New York, Boston, Houston, Dallas, and Seattle. SCP has extensive experience working with and for distressed companies in

complex financial and operational restructurings, both out-of-court and in Chapter 11 proceedings throughout the United States. SCP professionals have advised debtors, creditors and equity constituents in numerous reorganizations, which advisory services have included financial analysis and budgeting, forecasting, cash management, operational assessments and improvements, and the provision of interim management. SCP has advised companies with annual sales ranging from $20 million to over $800 million in a broad range of industries. SCP is nationally recognized as one of the preeminent turnaround firms and is well respected in the turnaround industry. The Debtors expect that Managing Director Bill Partridge, Director Miles Staglik, and Senior Associate Isabella Montani will be the professionals at SCP primarily responsible for providing CRO support to the Debtors in these Chapter 11 Case.

The Debtors have selected SCP because of SCP's diverse experience, knowledge, and reputation in restructuring of businesses in a variety of industries, including technology companies, its understanding of the issues involved in chapter 11 cases, and the Debtors' belief that SCP possesses the resources and qualifications to provide the services required. SCP is especially familiar with the Debtors' business and current challenges, having been employed since April 3, 2020.

SCP is equipped to handle the CRO support services involved in these Chapter 11 Cases. SCP has provided identical or substantially similar services in other chapter 11 cases filed in this State and elsewhere, including, among others: *In re Liberty Asset Mgmt. Corp.*, Case No. 16- 13575 (Bankr. C.D. Cal. 2016); *In re Bethel Healthcare, Inc. & Corinthian Sub-Acute & Rehab. Ctr., Inc.*, Case No. 13-12220 (Bankr. C.D. Cal. 2013); *see also In re NORPAC Foods, Inc.*, Case No. 19-62584 (Bankr. D. Or. 2019); *In re CFO Mgmt. Holdings, LLC*, Case No. 19-40426 (Bankr. E.D. Tex. 2019); *In re J&M Sales Inc.*, Case No. 18-11801 (Bankr. D. Del. 2018); *In re Woodbridge Grp. of Cos. LLC*, Case No. 17-12560 (Bankr. D. Del. 2017); *In re Katy Indus., Inc.*, Case No. 17-11101 (Bankr. D. Del. 2017);

## VI. SERVICES TO BE RENDERED

Pursuant to the terms of the Engagement Letter, the professional services that SCP will render to the Debtors are anticipated to include the following:

- provide support to the CRO in the exercise of his duties;

- preparation of debtor in possession ("DIP") cash flow forecast and resultant financing requirements;

- assistance and support in identifying, negotiating, and closing DIP financing;

- preparation of information required for bankruptcy petitions (including schedules and statements) and other bankruptcy court filings, as needed;

- preparation for and provision of witness services related to and in support of various relief requested in bankruptcy court, including written declarations and related depositions and testimony, as needed;

- providing interim management support related to Debtors' operations and cash flow management during the bankruptcy process;

- providing management support in evaluating and responding to parties during negotiation, including landlords, vendors, potential buyers, and other key constituents;

- providing analysis and services related to lease assumptions, rejections, modifications, or terminations;

- interacting with the unsecured creditors committee, if any, and assisting in the preparation of management reports; and

- assisting in drafting and confirming a plan of reorganization, if any.[3]

**VII. COMPENSATION**

SCP's retention and compensation is consistent with the Jay Alix Protocol implemented by the U.S. Trustee for CROs in this district. If the Court approves the relief requested herein, SCP will submit compensation and staffing reports in accordance with the protocols for the retention of CROs in this district and as provided in the Order.

The Debtors will compensate SCP professionals for the services described above in accordance with the terms and conditions set forth in the Order. The CRO will be supported by managing directors, directors, senior associates, analysts, independent contractors, employees, and administrative staff employed by SCP as necessary. The billing rates of the CRO and SCP professionals who may be working on this matter are set forth below:

---

[3] Summaries and other descriptions of the terms of the Engagement Letter set forth in this Application are not intended to replace the terms of the Engagement Letter, and the terms of the Engagement Letter shall govern to the extent there is any inconsistency.

SCP's hourly rates are adjusted periodically and may be increased by SCP in accordance with its normal billing practices.

| | |
|---|---|
| Lawrence Perkins as CRO/Engagement Principal: | $750/hr. |
| Senior Managing Directors: | $600/hr. to $800/hr. |
| Managing Directors: | $525/hr. to $700/hr. |
| Senior Directors: | $500/hr. to $600/hr. |
| Directors: | $350/hr. to $500/hr. |
| Senior Associates: | $200/hr. to $300/hr. |
| Associates: | $100/hr. to $200/hr. |

The Debtors and SCP have also agreed that SCP will be compensated for reasonable expenses incurred on Debtors' behalf, including but not limited to, reasonable and customary out-of-pocket expenses that are billed directly to the engagement such as airfare, hotel, car rental, photocopying charges, telephone charges, postage, and shipping, subject to the guidelines set forth by the Office of the United States Trustee ("U.S. Trustee").

Contemporaneous with the execution of the Engagement Letter, the Debtors provided SCP with an evergreen retainer in the amount of $75,000 to cover the fees and expenses (the "Retainer"). The Retainer was increased to $350,000 on April 17, 2020 and again increased to $475,000 on April 24, 2020. All fees and expenses incurred by SCP prior to the Petition Date have been paid. As of the Petition Date, SCP was holding approximately $348,358.50 as a retainer.

The Debtors believe the fees and expenses described herein are comparable to compensation generally charged by restructuring advisory firms of similar stature as SCP for similar engagements. SCP also believes the fees and expenses are both straightforward and economical.

Notwithstanding any provisions of the Engagement Letter to the contrary, and consistent with the Jay Alix Protocol, SCP and Mr. Perkins have agreed that the terms of the Engagement Letter shall be amended in the Proposed Order as follows:

- SCP and its affiliates shall not act as a financial advisor, claims agent/claims administrator, or investor/acquirer in connection with the above-captioned cases.

5

- In the event Debtors seek to have SCP personnel assume executive officer positions that are different than the positions disclosed in this Application, or to materially change the terms of the engagement by either (i) modifying the functions of personnel; (ii) adding new personnel; or (iii) altering or expanding the scope of the engagement, a motion to modify the retention shall be filed.

- SCP shall file with the Court, and provide notice to the U.S. Trustee and all official committees appointed in the Chapter 11 Cases, reports of compensation earned and expenses incurred on a monthly basis. Such reports shall contain summaries that describe the services provided, identify the compensation earned by the CRO and by SCP personnel, and itemize the expenses incurred. Time records shall (i) be appended to the reports; (ii) contain detailed time entries describing the task(s) performed; and (iii) be organized by project category. Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in 1/10th hour increments and the corresponding charge (time multiplied by hourly rate) for each task. Where personnel are providing services at a "flat" rate, the time entries shall be kept in hourly increments. All compensation shall be subject to review by the Court in the event an objection is filed.

- Debtors are permitted to indemnify the CRO and those persons serving as executive officers and temporary employees on the same terms as provided to Debtors' other officers and directors under the corporate bylaws or operating agreement, as applicable, and applicable state law, along with insurance coverage under Debtors' applicable policies.

- For a period of three years after the conclusion of the engagement, neither SCP nor any of its affiliates shall make any investments in Debtors.

- SCP shall disclose any and all facts that may have a bearing on whether the firm, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to Debtors, their creditors, or other parties in interest. The obligation to disclose identified in this subparagraph is a continuing obligation

## VIII. MONTHLY STAFFING REPORTS

The Debtors intend that the fees and expenses incurred by SCP will be treated and paid as administrative expenses of the Debtors' chapter 11 estates in the ordinary course.

SCP will be entitled to be paid in full immediately upon invoicing the Debtors and thereafter will file with the Court and provide notice to the U.S. Trustee and counsel for the official committee of unsecured creditors, if any, detailed, written reports of compensation and expenses as provided in the Order (the "Reports"). The Reports will detail staffing on the engagement for the previous month and include detailed time entries describing the task(s) performed by the CRO and the additional SCP personnel, recorded in six-minute increments, and organized by project category. Such Reports will

provide a fourteen day time period for addressing any questions or objections from the U.S. Trustee or counsel to any officially appointed committee.

All compensation and reimbursements previously paid and Reports will be subject to review and approval by the Court only if a timely objection is filed. The Debtors believe that SCP's fees and compensation as set forth herein and the process and protocol for payment of such fees and compensation are reasonable and justified under the circumstances.

## IX.   INDEMNIFICATION

Subject to any limitations imposed by the Court, including any limitations on indemnification set forth in the Order, the Debtors have agreed to indemnify the CRO as set forth in paragraphs 20 and 21 of the Standard Terms and Conditions attached to and incorporated in the Engagement Letter.

The Debtors request they be permitted to continue to indemnify the CRO for any claims, liabilities, or expenses relating to this engagement as part of the engagement and as an administrative obligation. In no event shall the Debtors be obligated to indemnify the CRO for its bad faith, gross negligence, willful misconduct, or any violation of law.

## X.   DISINTERESTEDNESS

Although the Debtors submit that the employment of SCP is not governed by section 327 of the Bankruptcy Code, the CRO Declaration discloses, among other things, any relationship that SCP or Mr. Perkins has with the Debtors, their largest creditors, and other significant parties in interest known to SCP. If any new material facts or relationships are discovered or arise, Mr. Perkins will provide the Court with a supplemental declaration.

To the best of SCP's knowledge, information, and belief, and except to the extent disclosed in the CRO Declaration, neither SCP nor any employee of SCP (i) holds or represents an interest adverse to the Debtors' estate or (ii) has any connection to the Debtors, their creditors, or any other parties in interests in these Chapter 11 Cases. Based upon their review of the CRO Declaration, the Debtors believe that SCP is eligible for retention in these Chapter 11 Cases.

For the reasons set forth herein, the Debtors believe that the employment of SCP to render the CRO and CRO support services requested herein is necessary, appropriate, and in the best interests of the Debtors' estates. By this Application, the Debtors therefore request authority to employ and retain SCP on the terms and conditions set forth herein and in the Engagement Letter attached hereto.

## XI. *NUNC PRO TUNC* RELIEF REQUESTED

Pursuant to the Debtors' request and due to exigent circumstances, SCP commenced this engagement immediately upon the Petition Date and with assurances from the Debtors that they would seek approval of its employment effective as of the Petition Date.

Based on the foregoing, the Debtors submit that cause exists to authorize the retention of SCP effective as of the Petition Date.

## XII. BASIS FOR RELIEF REQUESTED

Section 363(b) of the Bankruptcy Code provides, in part, that a debtor-in-possession "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estates."[4] Under applicable case, in determining whether to authorize a debtor's proposed use of their assets pursuant to Section 363(b) of the Bankruptcy Code, "courts require the debtor to show that a sound business purpose justifies such actions."[5]

The retention of corporate officers is proper under section 363 of the Bankruptcy Code as an appropriate exercise of a debtor's business judgment. Indeed, numerous courts in this state and others have approved the retention of professionals to perform management services under section 363 of the Bankruptcy Code.[6] Additionally, the Court's general equitable powers codified in section 105(a) of the Bankruptcy Code provide ample authority for the relief requested in the Motion, as it empowers

---

[4] 11 U.S.C. § 363(b).

[5] *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1990); *Stephens Indusl, Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *see also In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 53 (Bankr. D. Del. 1999); *see also In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

[6] *See, e.g.*, *In re Scoobeez*, Case No. 19-14989 (Bankr. C.D. Cal. 2019); *In re S.B. Restaurant Co.*, Case No. 14-13778 (Bankr. C.D. Cal. 2014); *In re Westcliff Medical Laboratories, Inc.*, Case No. 10-16743 (Bankr. C.D. Cal. 2010); *In re Fatburger Restaurants of California, Inc.*, Case No. 09-13965 (Bankr. C.D. Cal. 2011); *see also In re Fairfield Residential LLC*, Case No. 09-14378 (Bankr. D. Del. 2010); *In re The Holliston Mill, Inc.*, Case No. 07-10687 (Bankr. D. Del. 2007).

8

the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title."[7]

The Debtors submit that the employment of SCP, including Mr. Perkins, under the terms of the Engagement Letter, as modified by the Order, would greatly benefit Debtors' estates and creditors. SCP is already familiar with Debtors' operation and goals and is well-qualified to serve in this role during these Chapter 11 Cases.

In addition, the Debtors acknowledge that the Jay Alix Protocol imposed by the U.S. Trustee and the Court, which bar a financial advisory firm from serving in multiple roles on behalf of a debtor in possession in a chapter 11 restructuring, is applicable to this engagement. Thus, the Debtors further submit that the engagement of SCP and the appointment of the CRO pursuant to the terms of the Engagement Letter, as modified by the Order, is in accordance with the Jay Alix Protocol.

Thus, the Court should authorize the appointment of Mr. Perkins as CRO and the employment of SCP for the provision of CRO support services. The Debtors submit that such employment is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

## XIII. RESERVATION OF RIGHTS

Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim of any creditor or interest of any interest holder under applicable bankruptcy or nonbankruptcy law; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (iv) an assumption, adoption, or rejection of any agreement, contract, or lease between the Debtors and any third party under section 365 of the Bankruptcy Code. The Debtors reserve all of their rights under the Bankruptcy Code.

---

[7] *See* 11 U.S.C. § 105(a); *see also In re Cont'l Airlines*, 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code.").

-9-

**XIV. NOTICE**

Notice of this Application has been provided by email, facsimile, or overnight courier to: (i) the Office of the U.S. Trustee Region 17 (Attn: Marta E. Villacorte); (ii) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (iii) counsel for the DIP Agent and DIP Lender; and (iv) and those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice is required.

No prior request for the relief sought in this Application has been made by the Debtors to this or any other court.

/ / /

/ / /

/ / /

**WHEREFORE**, the Debtors respectfully request entry of the Order, substantially in the form attached hereto as **Exhibit A** granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: May 11, 2020

    SIDLEY AUSTIN LLP

    /s/ *Samuel A. Newman*
    Samuel A. Newman
    Charles M. Persons

    *Proposed Attorneys for Debtors and Debtors in Possession*