1  SIDLEY AUSTIN LLP
   Samuel A. Newman (SBN 217042)
2  (sam.newman@sidley.com)
   Genevieve G. Weiner (SBN 254272)
3  (gweiner@sidley.com)
   Julia Philips Roth (SBN 324987)
4  (julia.roth@sidley.com)
   555 West Fifth Street
5  Los Angeles, CA 90013
   Telephone: 213.896.6000
6  Facsimile: 213.896.6600

7  SIDLEY AUSTIN LLP
   Charles M. Persons (admitted *pro hac vice*)
8  (cpersons@sidley.com)
   Juliana Hoffman (admitted *pro hac vice*)
9  (jhoffman@sidley.com)
   Jeri Leigh Miller (admitted *pro hac vice*)
10 (jeri.miller@sidley.com)
   2021 McKinney Avenue, Suite 2000
11 Dallas, TX 75201
   Telephone: 214.981.3300
12 Facsimile: 214.981.3400

13 *Attorneys for Debtors and Debtors in Possession*

14

15 **UNITED STATES BANKRUPTCY COURT**

16 **NORTHERN DISTRICT OF CALIFORNIA**

   **SAN JOSE DIVISION**
17

18 In re:                                 ) Case No. 20-50682 (MEH)
                                          )
19 WAVE COMPUTING, INC., *et al.*,        ) Chapter 11 (Jointly Administered)
                                          )
20     Debtors.[1]                        ) **NOTICE OF AMENDED REDLINE OF**
                                          ) **EXHIBIT "E" TO THE DEBTORS' PLAN**
21                                        ) **SUPPLEMENT**
                                          )
22                                        ) Related to Docket Nos.: 846, 1035, 1047, 1067
                                          )
23                                        )
                                          )
24                                        )
   _____  )
25

26

27 _____
   [1] The Debtors in these chapter 11 cases are Wave Computing, Inc., MIPS Tech, Inc., Hellosoft, Inc.,
28 Wave Computing (UK) Limited, Imagination Technologies, Inc., Caustic Graphics, Inc., and MIPS
   Tech, LLC. The Debtors' mailing address is 3201 Scott Blvd, Santa Clara, CA 95054.

**TO THE HONORABLE M. ELAINE HAMMOND, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTORS AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on December 1, 2020, Wave Computing, Inc. ("Wave") and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors") filed its *Fourth Amended Joint Chapter 11 Plan of Reorganization for Wave Computing, Inc. and its Debtor Affiliates* (as may be further amended, modified, or supplemented from time to time, the "Plan") [Docket No. 846].

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the terms of the Plan, the Debtors filed the original Plan Supplement on January 11, 2021 [Docket No. 1035], and on January 12, 2021, the Debtors filed a second Plan Supplement [Docket No. 1047] (the "Second Plan Supplement"), which included, *inter alia*, an initial form of Liquidating Trust Agreement (as may be further amended, supplement or modified from time to time, the "Liquidating Trust Agreement").

**PLEASE TAKE FURTHER NOTICE** that on January 15, 2021, the Debtors filed a revised Liquidating Trust Agreement with a notice of redline (the "Notice of Redline"), which inadvertently attached the incorrect redline of the Liquidating Trust Agreement [Docket No. 1067].

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit 1** is a redline reflecting changes between the Liquidating Trust Agreement filed as part of the Second Plan Supplement [Docket No. 1045] and the revised Liquidating Trust Agreement filed on January 15, 2021 [Docket No. 1067].

**PLEASE TAKE FURTHER NOTICE** that the Liquidating Trust Agreement remains subject to further review, negotiations, clarifications, and modifications in a manner consistent with the Plan and Plan Bid.

**PLEASE TAKE FURTHER NOTICE** that the Debtors accordingly reserve the right to further amend the Plan Supplement in a manner consistent with the Plan and Plan Bid.

2

**PLEASE TAKE FURTHER NOTICE** that copies of the pleadings and other documents referenced herein can be viewed and/or obtained (i) by accessing the Bankruptcy Court's website at https://www.canb.uscourts.gov/; or (ii) free of charge from the Debtors' notice and claims agent Donlin Recano, & Company at https://www.donlinrecano.com/Clients/wave/Dockets.

//

//

3

Dated: January 16, 2021

Respectfully submitted,

SIDLEY AUSTIN LLP

*/s/ Juliana L. Hoffman*
Samuel A. Newman
Charles M. Persons
Juliana L. Hoffman

*Attorneys for Debtors and
Debtors in Possession*

4

Case: 20-50682    Doc# 1068    Filed: 01/16/21    Entered: 01/16/21 14:27:57    Page 5 of
64

1

**<u>EXHIBIT 1</u>**

2
AMENDED REDLINE OF THE LIQUIDATING TRUST AGREEMENT

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

**THE WAVE COMPUTING LIQUIDATING TRUST AGREEMENT**

**BY AND AMONG**

**THE TRUST MANAGER,**

**THE LIQUIDATING TRUST ADVISORY BOARD,**

**THE DELAWARE TRUSTEE**

**WAVE COMPUTING, INC.**

**MIPS TECH, INC.**

**HELLOSOFT, INC.**

**WAVE COMPUTING (UK) LIMITED**

**IMAGINATION TECHNOLOGIES, INC.**

**CAUSTIC GRAPHICS, INC.**

**AND**

**MIPS TECH, LLC**

As of January [   ], 2021

\\LA - 767747/000001 - 2078728 v13
263969008v.10

# TABLE OF CONTENTS

**Page**

Article I DEFINITIONS ........................................................................................... 2

    1.1    Definitions Incorporated from the Plan .................................................. 2
    1.2    Other Definitions ................................................................................... 2
    1.3    Meanings of Other Terms ...................................................................... ~~7~~9

Article II CREATION OF WAVE COMPUTING LIQUIDATING TRUST ................ ~~8~~9

    2.1    Creation of Trust ................................................................................... ~~8~~9
    2.2    Purpose of Wave Computing Liquidating Trust .................................... ~~8~~9
    2.3    Status of Wave Computing Liquidating Trust ....................................... ~~8~~10
    2.4    Retention of Professionals .................................................................... ~~10~~11
    2.5    Transfer of Liquidating Trust Assets and Rights to the Wave Computing
            Liquidating Trust .................................................................................. ~~10~~11
    2.6    Title to Liquidating Trust Assets .......................................................... ~~12~~14
    2.7    Valuation .............................................................................................. ~~12~~14
    2.8    No Reversion to Debtors; Distribution of Remaining Assets ................. ~~13~~14
    2.9    Fiscal Year ........................................................................................... ~~13~~14
    2.10  Insurance .............................................................................................. ~~13~~15
    2.11  Wave Computing Liquidating Trust Books and Records ........................ ~~13~~15
    2.12  No Interest or Accruals ......................................................................... ~~14~~15

Article III INTERESTS IN THE TRUST .................................................................... ~~14~~16

    3.1    Interests ................................................................................................ ~~14~~16
    3.2    Interests in Satisfaction of Claims ........................................................ ~~15~~16
    3.3    Evidence of Interests ............................................................................ ~~15~~17
    3.4    Rights of Beneficiaries ......................................................................... ~~15~~17
    3.5    Interest Beneficial Only ....................................................................... ~~16~~18
    3.6    Conflicting Claims ............................................................................... ~~16~~18
    3.7    Beneficiary Liability to Third Persons .................................................. ~~16~~18
    3.8    Actions in the Right of the Wave Computing Liquidating Trust ............ ~~17~~18

Article IV DISTRIBUTIONS TO BENEFICIARIES .................................................. ~~17~~18

    4.1    Distributions ......................................................................................... ~~17~~18
    4.2    Distribution Record Date; Distributions ............................................... ~~18~~20
    4.3    Withholding and Reporting Requirements ............................................. ~~19~~21
    4.4    Disbursing Agent ................................................................................. ~~20~~22
    4.5    Incurrence of Debt ............................................................................... ~~20~~22
    4.6    Distributions in Respect of Disputed General Unsecured Claims ........... ~~20~~22

Article V DUTIES AND POWERS OF THE TRUST MANAGER ............................ ~~21~~22

    5.1    Trust Manager ...................................................................................... ~~21~~22
    5.2    Powers of Trust Manager ..................................................................... ~~21~~23
    5.3    General Authority of the Trust Manager ............................................... ~~23~~25
    5.4    Limitation of Trust Manager's Authority; No On-Going Business ......... ~~23~~26
    5.5    Investment and Safekeeping of Liquidating Trust Assets ....................... ~~24~~26

i

| | | |
|---|---|---|
| 5.6 | Compensation | 2427 |
| 5.7 | Termination | 2527 |
| 5.8 | No Bond | 2527 |
| 5.9 | Removal | 2527 |
| 5.10 | Resignation | 2527 |
| 5.11 | Appointment of Successor Trust Manager | 2527 |
| 5.12 | Continuity | 2528 |
| 5.13 | Interests of Holders of Class A Interests Paramount | 2528 |

Article VI LIQUIDATING TRUST ADVISORY BOARD ... 2628

| | | |
|---|---|---|
| 6.1 | General | 2628 |
| 6.2 | Liquidating Trust Advisory Board Membership | 2628 |
| 6.3 | Compensation | 2729 |
| 6.4 | Authority | 2730 |
| 6.5 | Rights and Powers of the Liquidating Trust Advisory Board | 2730 |
| 6.6 | Duties; Standard of Care | 2830 |

Article VII OPERATION OF THE WAVE COMPUTING LIQUIDATING TRUST ... 2831

| | | |
|---|---|---|
| 7.1 | Prohibited Activities | 2831 |
| 7.2 | Trust Administration Reserve | 2931 |
| 7.3 | Reporting and Access to Information | 2932 |
| 7.4 | Liquidating Trust Agents | 3033 |
| 7.5 | Disputed General Unsecured Claims Reserve | 3033 |

Article VIII DELAWARE TRUSTEE ... 3033

| | | |
|---|---|---|
| 8.1 | Appointment | 3133 |
| 8.2 | Powers | 3133 |
| 8.3 | Compensation | 3336 |
| 8.4 | Duration and Replacement | 3336 |

Article IX TAX MATTERS ... 3436

| | | |
|---|---|---|
| 9.1 | Tax Treatment | 3436 |
| 9.2 | Tax Reporting | 3437 |
| 9.3 | Tax Payment | 3538 |

Article X LIMITATION OF LIABILITY AND INDEMNIFICATION ... 3638

| | | |
|---|---|---|
| 10.1 | Limitation of Liability | 3638 |
| 10.2 | Indemnification | 3740 |

Article XI DURATION OF THE WAVE COMPUTING LIQUIDATING TRUST ... 3841

| | | |
|---|---|---|
| 11.1 | Duration | 3841 |
| 11.2 | Post-Termination | 3942 |
| 11.3 | Destruction of Books and Records | 3942 |
| 11.4 | Discharge | 3942 |

Article XII MISCELLANEOUS PROVISIONS ... 3942

ii

| | | |
|---|---|---|
| 12.1 | Governing Law | 4043 |
| 12.2 | Jurisdiction | 4043 |
| 12.3 | Severability | 4043 |
| 12.4 | Notices | 4043 |
| 12.5 | Headings | 4144 |
| 12.6 | Plan Documents | 4144 |
| 12.7 | Confidentiality | 4144 |
| 12.8 | Entire Agreement | 4245 |
| 12.9 | Named Party | 4245 |
| 12.10 | Amendment | 4245 |
| 12.11 | Counterparts | 4346 |

iii

# THE WAVE COMPUTING LIQUIDATING TRUST AGREEMENT

This Wave Computing Liquidating Trust Agreement (this "Agreement"), executed as of [  ] and effective as of February [  ], 2021, is entered into by and among Wave Computing, Inc. ("Wave"), MIPS Tech, Inc., Hellosoft, Inc., Wave Computing (UK) Limited, Imagination Technologies, Inc., Caustic Graphics, Inc. and MIPS Tech, LLC (each as a Reorganized Debtor, and collectively, the "Debtors"), [  ], as Delaware Trustee, [  ] as Trust Manager, and the Liquidating Trust Advisory Board Members whose names appear as such on the signature page to this Agreement, to establish a liquidating trust (the "Liquidating Trust") pursuant to the *Fifth Amended Joint Chapter 11 Plan of Reorganization for Wave Computing, Inc. and its Debtor Affiliates* [Docket No. [  ]] (as amended, supplemented, or modified from time to time, the "Plan").

## RECITALS

A.      WHEREAS, on April 27, 2020, each of the Debtors filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court").

B.      WHEREAS, on May 18, 2020, the United States Trustee appointed the Official Committee of Unsecured Creditors of Wave. (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code.

C.      WHEREAS, on December 1, 2020, the Debtors, the Committee and Tallwood Technology Partners LLC filed the Plan.

D.      WHEREAS, on February [  ], 2021, the Bankruptcy Court entered an order [Docket No.   ] (the "Confirmation Order") confirming the Plan, which became effective on February [  ] 2021 (the "Effective Date"). The Plan provides for the establishment of this liquidating trust (the "Wave Computing Liquidating Trust") as of the Effective Date.

E.      WHEREAS, the Confirmation Order provides for the appointment of the Trustees as trustees of the Wave Computing Liquidating Trust, and the Plan and this Agreement provide for the appointment as necessary of any successor Trustees of the Wave Computing Liquidating Trust.

F.      WHEREAS, the Wave Computing Liquidating Trust is established for the benefit of the Holders of Class 5 Claims (General Unsecured Claims) ~~(other than Holders of General Unsecured Claims that are Tax Claims not entitled to priority)~~ and Class 3 Claims (Tallwood Claims) that are entitled to receive the payment or distribution under the Plan of property or interests in property of the Debtors from the Wave Computing Liquidating Trust in accordance with the terms of the Plan, the Confirmation Order and this Agreement (collectively, the "Beneficiaries").

G.      WHEREAS, the Wave Computing Liquidating Trust is established for the purpose of collecting, holding, administering, distributing, and liquidating the Liquidating Trust Assets for the benefit of the Beneficiaries in accordance with the terms and conditions of this

1

2158763v3798/0001 - 2078728.v13

Agreement, the Plan and the Confirmation Order and with no objective to continue or engage in the conduct of a trade or business, except to the extent necessary to, and consistent with, the Plan and the Confirmation Order and liquidating purpose of the Wave Computing Liquidating Trust.

H.      WHEREAS, pursuant to the Plan, the Debtors, the Wave Computing Liquidating Trust, Trustees, and Beneficiaries are required to treat, for all United States federal income tax purposes, the transfer of the Liquidating Trust Assets to the Wave Computing Liquidating Trust as a transfer of the Liquidating Trust Assets (other than the Liquidating Trust Assets allocable to the Disputed General Unsecured Claims Reserve) by the Debtors to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Liquidating Trust Assets (other than the Liquidating Trust Assets allocable to the Disputed General Unsecured Claims Reserve) by the Beneficiaries to the Wave Computing Liquidating Trust in exchange for the beneficial interest herein, and to treat the Beneficiaries as the grantors and owners of the Liquidating Trust Assets (other than the Liquidating Trust Assets allocable to the Disputed General Unsecured Claims Reserve) for United States federal income tax purposes.

I.      WHEREAS, pursuant to the Plan, the Wave Computing Liquidating Trust is intended to qualify as a "liquidating trust" within the meaning of section 301.7701-4(d) of the Treasury Regulations and as a "grantor trust" pursuant to sections 671-677 of the Internal Revenue Code (the "Tax Code") for United States federal income tax purposes, with the Beneficiaries treated as the grantors and owners of the Liquidating Trust Assets (other than the Liquidating Trust Assets allocable to the Disputed General Unsecured Claims Reserve).

J.      WHEREAS, in accordance with the Plan, and pursuant to section 1145 of the Bankruptcy Code, the Wave Computing Liquidating Trust is further intended to be exempt from the requirements of (i) the Securities Act of 1933, as amended (the "Securities Act"), and any applicable state and local laws requiring registration of securities, and (ii) the Investment Company Act of 1940, as amended, (the "Investment Company Act"), pursuant to sections 7(a) and 7(b) of the Investment Company Act.

NOW, THEREFORE, in accordance with the Plan and the Confirmation Order, and in consideration of the premises, and the mutual covenants and agreements of the Parties contained in the Plan and herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

## ARTICLE I
## DEFINITIONS

1.1      Definitions Incorporated from the Plan. Other than the terms defined below or elsewhere in this Agreement, capitalized terms shall have the meaning assigned to them in the. Plan, or the Confirmation Order, as applicable.

1.2      Other Definitions.

2

(a)    "Agreement" has the meaning assigned in the Preamble.

(b)    "Beneficiaries" has the meaning assigned in the Recitals.

(c)    "Cause" means, with respect to any Liquidating Trust Advisory Board member or the Trust Manager:

(i)    such person's conviction of a felony or any other crime involving moral turpitude; or

(ii)    any act or failure to act by such person involving actual dishonesty, fraud, misrepresentation, theft or embezzlement; or

(iii)    such person's willful and repeated failure to substantially perform his/her duties under this Agreement and the Trust Act, following such person having received written notice from the Trust Manager or the majority of the Liquidating Trust Advisory Board setting out the events giving rise to such Cause and a 10-day period to commence curing such Cause provided such person continues to diligently pursue such cure; or

(iv)    such person's incapacity, such that s/he is unable to substantially perform his/her duties under this Agreement and the Trust Act for more than ninety (90) consecutive days.

(d)    "Cause(s) of Action" means any Claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise.  Causes of Action also include: (i) all rights of setoff, counterclaim, or recoupment; (ii) claims under contracts or for breaches of duties imposed by law; (iii) the right to object to or otherwise contest Claims or Interests; (iv) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; (v) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (vi) any claim under any state or foreign law, including, without limitation, any fraudulent transfer or similar claim.

(de)    "Certificate of Trust" means the certificate of trust of the Wave Computing Liquidating Trust as required by sections 3810 of the Trust Act, substantially in the form set forth in Exhibit A to this Agreement, and filed in connection with the formation of the Wave Computing Liquidating Trust.

(f)    "CIP Settlement Proceeds" means the Cash proceeds of any royalty prepayment that the Debtors or Reorganized Debtors may receive pursuant to a potential agreement between the Debtors or Reorganized Debtors, as applicable, and CIP United Co., Ltd. and Prestige Century Investments Limited pursuant to which (i) the Reorganized Debtors

3

assume certain Executory Contracts with and CIP United Co., Ltd. and/or Prestige Century Investments Limited with a Cure in the amount of $0.00; and (ii) the Debtors or Reorganized Debtors, as applicable, become entitled to a prepayment from and CIP United Co., Ltd. and Prestige Century Investments Limited of the royalties or license fees arising under such assumed Executory Contracts.

(eg)     "Class A Interest" means an Interest, the holder of which is entitled to receive distributions pursuant to Sections 4.1(b), 4.1(c), 4.1(d)(i) and 4.1(d)(ii).

(fh)     "Class A Percentage Interest" means with respect to Class A Interests, as of any date, the percentage interest of each holder of a Class A Interest, which percentage interest shall be calculated as a fraction, expressed as a percentage, the numerator of which is the amount of the Allowed General Unsecured Claim in respect of which such Class A Interest is held and the denominator of which is the aggregate amount of Allowed General Unsecured Claims in respect of which Class A Interests are held (including those deemed held by the Disputed General Unsecured Claims Reserve).

(gi)     "Class B Interest" means an Interest, the holder of which is entitled to receive distributions pursuant to Section 4.1(d)(iiii).

(hj)     "Class B Percentage Interest" means with respect to Class B Interests, the percentage interest of each holder of a Class B Interest, determined as the portion of the Class B Interest held by such holder divided by the aggregate Class B Interest.

(ik)     "Confidentiality Parties" has the meaning assigned in Section 12.7.

(jl)     "Confirmation Order" has the meaning assigned in the preamble.

(km)     "Covered Parties" has the meaning assigned in Section 10.2.

(ln)     "D&O Claim" means all Claims and Causes of Action, if any, held by the Debtors and their respective estates against any current and former directors or officers of any of the Debtors, in their respective capacities as such.

(mo)     "D&O Liability Insurance Policy" means any directors' and officers' liability insurance policy purchased by the Debtors for its directors and officers, including, without limitation, liability insurance policy number 8255-6526 issued by Federal Insurance Company to Wave.

(np)     "Debtors" has the meaning assigned in the Preamble.

(oq)     "Delaware Trustee" means [ ], not in its individual capacity, but solely as trustee, or its successor in such capacity, which is appointed in accordance with this Agreement to comply with the requirement of section 3807 of the Trust Act.

4

(p̶r) "Disbursing Agent" means any agent appointed or engaged by the Trust Manager or the Wave Computing Liquidating Trust on behalf of the Wave Computing Liquidating Trust.

(q̶s) "Disputed General Unsecured Claim" means a General Unsecured Claim (or portion thereof) (i) that is neither an Allowed Claim nor a Disallowed Claim; (ii) that is listed on the Schedules as "disputed"; or (iii) for which a timely objection to such Claim has been Filed, which objection has not been withdrawn or determined pursuant to a Final Order.

(r̶t) "Disputed General Unsecured Claims Reserve" means the reserve established and maintained by the Wave Computing Liquidating Trust for holders of Disputed General Unsecured Claims against the Debtors that are subsequently Allowed and entitled to distributions.

(s̶u) "Distributable Trust Assets" means Cash constituting Liquidating Trust Assets, other than Cash in an amount (x̶i) as of the date hereof equal to $1 million or (y̶ii) after the date hereof determined by the Trust Manager, in each case allocated to the Trust Administration Reserve.

(t̶v) "Distribution Record Date" means a date selected by the Trust Manager preceding each Trust Distribution Date, as the record date for determining Beneficiaries entitled to participate in the distribution on such Trust Distribution Date of Other Distributable Trust Assets.

(w) "Excess General Unsecured Claim Amount" means the amount of the Allowed General Unsecured Claims that, on the Effective Date, exceeds the balance of the GUC Loan, which amount shall accrue interest at the Federal Judgment Rate.

(u̶x) "Federal Judgment Rate" means 0.17% (the federal judgment rate in effect on April 27, 2020).

(v̶y) "Fiscal Year" means any fiscal year of the Wave Computing Liquidating Trust, as provided in Section 2.9.

(w̶z) "General Unsecured C̶l̶a̶i̶m̶Claim(s)" means any Claim other than an Administrative Expense Claim, a *De Minimis* Unsecured Claim, a Priority Claim, a Tallwood Claim, a Secured Tax Claim, an Other Secured Claim, a Series E Section 510(b) Claim, a Series D Section 510(b) Claim, or an Intercompany Claim. For p̶u̶r̶p̶o̶s̶e̶s̶ ̶o̶f̶ ̶t̶h̶i̶s̶ ̶A̶g̶r̶e̶e̶m̶e̶n̶t̶the avoidance of doubt, Tax Claims not entitled to priority are n̶o̶t̶ "General Unsecured Claims" entitled to receive Class A Interests.

(x̶aa) "̶GUC Accounts Receivable Proceeds" means, in the f̶i̶r̶s̶t̶ ̶$̶7̶.̶2̶ ̶m̶i̶l̶l̶i̶o̶n̶event of a Restructuring, $7,200,000 of Cash collected by the Debtors (̶or Reorganized Debtors, as applicable, on o̶r̶ ̶a̶f̶t̶e̶r̶ ̶[̶account of accounts receivable comprised of (i) the first

5

$4,100,000 collected on or after January 1]15, 2021,† which shall be transferred to the ~~Wave Computing~~ Liquidating Trust ~~in accordance with the terms of the Plan~~on the Effective Date; *plus* (ii) an additional $3,100,000 collected on or before December 31, 2021, which shall be transferred to the Liquidating Trust any time on or before December 31, 2021.

(~~y~~bb)    "~~"~~GUC Accounts Receivable Proceeds Distributable Trust Assets" means Cash comprising payments of ~~"~~GUC Accounts Receivable Proceeds other than Cash retained by the Trust Manager in the Trust Administration Reserve.

(cc)    "GUC Loan" means a new secured loan and security agreement among the Liquidating Trust Manager as the lender, Reorganized Wave as the borrower, and each of the other Reorganized Debtors as guarantors in the aggregate principal amount of $36,000,000.00 subject to the terms and conditions set forth in the Plan.

(~~z~~dd)    "GUC ~~Note~~Loan Distributable Trust Assets" means Cash comprising payments of principal and interest made by the Reorganized Debtors under the GUC ~~Note~~Loan, including CIP Settlement Proceeds, if applicable, other than Cash retained by the Trust Manager as the Liquidating Trust Expense Advance.

(~~aa~~ee)    "GUC ~~Note~~Loan Distribution Record Date" means the later of (i) the date in each quarter upon which payment of principal and interest is due from the Reorganized Debtors in accordance with the terms of the GUC ~~Note~~Loan or (ii) the date upon which the payment of principal and interest referenced in sub-section (i) is actually received by the Wave Computing Liquidating Trust.

(~~bb~~ff)    "Initial Liquidating Trust Advisory Board Members" means the persons named on the signature page hereof: [ ], [ ], and [ ].

(~~cc~~gg)    "Interest" has the meaning assigned in Section 3.1(a) and shall include Class A Interests and Class B Interests.

(~~dd~~hh)    "Liquidating Trust Advisory Board" means the 3-member committee appointed to consult with the Trust Manager regarding the affairs of the Wave Computing Liquidating Trust and to perform such other duties as are provided in this Agreement.

(~~ee~~ii)    "Liquidating Trust Advisory Board Member" means each initial Liquidating Trust Advisory Board Member whose name appears as such on the signature page to this Agreement and any member of the Liquidating Trust Advisory Board subsequently appointed pursuant to Section 6.2(f).

(~~ff~~jj)    "Liquidating Trust Agents" means the advisors, professionals and other agents, of the Wave Computing Liquidating Trust appointed or engaged by the Wave

---

† ~~[NTD. Date to be discussed.] Must include the Nautech receivables.~~

6

Computing Liquidating Trust or the Trust Manager in accordance with the provisions of this Agreement.

(ggkk) "Liquidating Trust Assets" means (i) the GUC NoteLoan, (ii) the Transferred Causes of Action, (iii) all Cash and non-Cash assets held in the Trust Administration Reserve or otherwise, (iv) if transferred to the Liquidating Trust, any D&O Liability Insurance Policies or proceeds thereof, (v) the proceeds in Cash of the 'GUC Accounts Receivable Proceeds, and (vi) any other assets to which the Liquidating Trust may from time to time become entitled.

(hhll) "Liquidating Trust Bailee" has the meaning assigned in Section 2.5(b)(i).

(iimm) "Liquidating Trust Expenses" means all actual and necessary costs and expenses incurred by the Wave Computing Liquidating Trust and the Trust Manager in connection with the administration of the Liquidating Trust, including in connection with the matters set forth in Section 7.2(a), pursuant to the terms of the Plan and this Agreement.

(iinn) "Liquidating Trust Expense Advance" means, collectively, (i) any amount of the 'GUC Accounts Receivable Proceeds retained as an advance against Liquidating Trust Expenses and (ii) an amount, not to exceed $3 million in aggregate of payments received under the GUC NoteLoan, in each case which the Trust Manager may use as an advance against Liquidating Trust Expenses with Majority Consent of the Liquidating Trust Advisory Board.

(jjoo) "Majority Consent" means the affirmative consent of a majority of the members constituting the whole Liquidating Trust Advisory Board whether by a meeting in person or by written consent in lieu of a meeting (either of which may be done electronically), or if at the time there shall be only one member of the Liquidating Trust Advisory Board, the consent of such member. Any action that requires the consent of the Liquidating Trust Advisory Board shall be by Majority Consent unless otherwise provided herein.

(kkpp) "Material Action" means each of the following:

(i) the filing of any complaint or arbitration demand in respect of any Claim or Cause of Action held by the Wave Computing Liquidating Trust;

(ii) the settlement, dismissal, abandonment, sale, transfer or assignment of any Claim or Cause of Action held by the Wave Computing Liquidating Trust;

(iii) the selection and engagement of any material legal, financial, accounting, investment, auditing, experts, and other advisors and professionals as the Wave Computing Liquidating Trust requires;

(iv) entry into any contingency fee agreement or litigation funding agreement in connection with any Cause of Action in respect of any Transferred Cause of Action;

7

(v)     any borrowing pursuant to <u>Section 4.5</u>;

(vi)     whether any principal payments on the GUC ~~Note~~<u>Loan</u>, in an aggregate amount not to exceed $3 million, may be used as a Liquidating Trust Expense Advance;

(vii)     whether to make any distribution to Beneficiaries of Other Trust Distributable Assets or retain such Other Trust Distributable Assets in the Trust Administration Reserve;

(viii)     whether to sell, transfer or assign the GUC ~~Note~~<u>Loan</u>;

(ix)     whether to accept prepayment of the GUC ~~Note~~<u>Loan</u> for a discounted amount; and

(x)     entry into an amendment, supplement or modification of the GUC ~~Note~~<u>Loan</u> or the Effective Date Intercreditor Agreement, other than any amendment, supplement or modification that cures any ambiguity, omission, mistake, defect or inconsistency.

(~~ll~~<u>qq</u>)     "<u>Other Distributable Trust Assets</u>" means Distributable Trust Assets other than (i) GUC ~~Note~~<u>Loan</u> Distributable Trust Assets and (ii) ~~Initial~~<u>GUC Accounts</u> Receivable <u>Proceeds</u> Distributable <u>Trust</u> Assets.

(~~mm~~<u>rr</u>) "<u>Permissible Investments</u>" has the meaning assigned in <u>Section 5.5</u>.

(~~nn~~<u>ss</u>)     "<u>Plan Documents</u>" means, collectively, the Plan, the Confirmation Order, and those material documents executed or to be executed in order to consummate the transactions under the Plan, including this Agreement and the other documents listed in the Plan Supplement.

(~~oo~~<u>tt</u>)     "<u>Privileges</u>" has the meaning assigned in <u>Section 2.5(d)</u>.

<u>(uu)     "Reorganized Debtors" means, at the discretion of the Plan Co-Proponents, either (i) Wave, as reorganized pursuant to and under the Plan, or (ii) a newly-created holding company, which shall own each of the other Reorganized Debtors.</u>

(~~pp~~<u>vv</u>)     "<u>Tax Authority</u>" means a federal, state, local, or foreign government, or agency, instrumentality, or employee thereof, court or other body (if any) charged with the administration of any law relating to Taxes.

(~~qq~~<u>ww</u>)     "<u>Tax Code</u>" has the meaning assigned in the Recitals.

(~~rr~~<u>xx</u>)     "<u>Tax Return</u>" means a return, declaration, form, election, letter, report, statement, estimate, information return, or other information filed or required to be filed with

8

respect to any Taxes, including any schedule or attachment thereto or amendment thereof, including with respect to any claim for a Tax refund.

(~~ss~~yy) "Taxes" means all (i) federal, state, local, or foreign taxes, including, without limitation, all net income, alternative minimum, net worth or gross receipts, capital, value added, franchise, profits, estimated, property, transfer and sales or use taxes, and (ii) interest, penalties, fines, additions to tax or additional amounts imposed by any Tax Authority or paid in connection with any item described in clause (i) hereof.

(~~tt~~zz) "Transferred Causes of Action" means each Cause of Action (other than the right to object to or otherwise contest Claims or Interests, including those that shall vest in the Reorganized Debtors pursuant to the Plan) of the Debtors and the Estates and Avoidance Actions that are not released or waived pursuant to the Plan.

(~~i~~aaa) "Trust Act" means, the Delaware Statutory Trust Act, 12 Del. C. § 3801 et seq., as the same may from time to time be amended, or any successor statute.

(~~uu~~bbb) "Trust Administration Reserve" has the meaning assigned in Section 7.2(b).

(~~vv~~ccc) "Trust Distribution Date" means any date, as determined by the Trust Manager, on which the Wave Computing Liquidating Trust makes a distribution of Distributable Trust Assets to Beneficiaries.

(~~ww~~ddd) "Trust Manager" means Robert Kors, as the trustee of the Wave Computing Liquidating Trust having primary responsibility for the Wave Computing Liquidating Trust, as provided in Article V, or any successor appointed in accordance with this Agreement.

(~~xx~~eee) "Trustees" means the Trust Manager and the Delaware Trustee.

(~~yy~~fff) "Wave Computing Liquidating Trust" has the meaning assigned in the Recitals.

1.3 Meanings of Other Terms. Except where the context otherwise requires, words importing the masculine gender include the feminine and the neutral, if appropriate; words importing the singular number shall include the plural number and vice versa; and words importing persons shall include firms, associations, corporations and other entities. All references herein to Articles, Sections and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code; the Bankruptcy Rules; the Tax Code; or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement, and the word "herein," "hereof," "hereunder" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section or subdivision of this Agreement. The term "include" and "including," and variations thereof, shall mean "including, without limitation."

9

## ARTICLE II
## CREATION OF WAVE COMPUTING LIQUIDATING TRUST

2.1     Creation of Trust.

(a)     The Wave Computing Liquidating Trust shall be deemed to have been created effective as of the occurrence of both (i) the filing of the Certificate of Trust with the Secretary of State of the State of Delaware (the "Delaware Secretary of State") and (ii) the Effective Date.

(b)     The Wave Computing Liquidating Trust shall bear the name "Wave Computing Liquidating Trust" and the Trust Manager may, in connection with the exercise of its powers and duties hereunder, either use this name or such variation thereof as he or she may deem appropriate.

(c)     The Trustees of the Trust shall be the Delaware Trustee and the Trust Manager.

2.2     Purpose of Wave Computing Liquidating Trust.

(a)     The Wave Computing Liquidating Trust is established for the purpose of liquidating and distributing the Liquidating Trust Assets in accordance with Treas. Reg. § 301.7701-4(d) and Revenue Procedure 94-45, 199402 C.B. 684, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, its liquidating purpose hereunder.

(b)     This Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust. The Wave Computing Liquidating Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall any of the Trustees or the Beneficiaries, for any purpose be, or be deemed to be or be treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the Beneficiaries to the Trustees shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Agreement.

2.3     Status of Wave Computing Liquidating Trust.

(a)     The Wave Computing Liquidating Trust shall be the successor-in-interest to the Debtors (and, if the Committee has obtained standing to pursue any such Cause of Action or Avoidance Action, to the Committee) with respect to any Transferred Causes of Action that were or could have been commenced or asserted by, or on behalf of, any of the Debtors or their estates prior to the Effective Date, shall be deemed substituted for each such Debtor or, if applicable, the Committee as the party in any such litigation and shall have the right to proceed in the name, right and stead of the Debtors with respect to all such Transferred Causes of Action. The Wave Computing Liquidating Trust shall have rights to any proceeds of

10

the D&O Liability Insurance Policies as the result of a settlement or judgment with respect to any D&O Claims in accordance with the D&O Liability Insurance Policies. The primary right to object to or otherwise contest Claims or Interests shall be retained by the Reorganized Debtors, except as otherwise agreed to in writing between the Reorganized Debtors and the Trust Manager. If the Reorganized Debtors do not object to or otherwise contest a Claim, the Wave Computing Liquidating Trust and the Trust Manager shall have standing and the right to object to or otherwise contest such Claim, and, in all circumstances, the Wave Computing Liquidating Trust and the Trust Manager shall have the right to join in any objection to a Claim filed by or pursued by the Reorganized Debtors. Not less than thirty (30) days prior to the Claims Objection Deadline, the Reorganized Debtors shall provide the Trust Manager with a list of all General Unsecured Claims that specifies, for each such Claim, whether the Reorganized Debtors have objected to or otherwise contested such Claim. If the Trust Manager objects to or otherwise contests a General Unsecured Claim that the Reorganized Debtors have not objected to or otherwise contested, the Reorganized Debtors shall promptly provide to the Trust Manager access to such books, records and personnel as the Trust Manager deems necessary or desirable to object to or otherwise contest such General Unsecured Claim.

(b)　　From and after the Effective Date, the Wave Computing Liquidating Trust, acting through the Trust Manager in consultation with the Liquidating Trust Advisory Board, will be the representative of the Estates with respect to the Liquidating Trust Assets, as the term "Estates" is used in section 1123(b)(3)(B) of the Bankruptcy Code, and shall have the rights and powers provided in the Bankruptcy Code in addition to any rights and powers granted in the Plan Documents, in each case for purposes of carrying out the purposes and intents of this Agreement.

(c)　　All Liquidating Trust Assets held by the Debtors, their Estates, and creditors, are preserved and retained and may be enforced by the Wave Computing Liquidating Trust pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

(d)　　No Person or Entity  may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Liquidating Trust or Trust Manager will not pursue any and all available Causes of Action of the Debtors against it. The Liquidating Trust and Trust Manager expressly reserve all rights to prosecute any and all Causes of Action against any Person or Entity, except as otherwise expressly provided in the Plan or a Confirmation Order. Unless any Causes of Action of the Debtors against a Person or Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, the Confirmation Order or a Final Order, the Liquidating Trust and the Trust Manager expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation.

2.4　　Retention of Professionals.

11

(a)     The Trust Manager and the Wave Computing Liquidating Trust shall have the right to retain such experts, professionals and other Liquidating Trust Agents as are necessary and proper to discharge its functions, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court.

(b)     The Trust Manager shall implement reasonable policies regarding the billing practices, hourly rates, discounts and required budget practices of professionals retained to provide services to the Wave Computing Liquidating Trust to ensure the Wave Computing Liquidating Trust receives cost-effective, efficient representation in the best interest of the Beneficiaries.

2.5     Transfer of Liquidating Trust Assets and Rights to the Wave Computing Liquidating Trust.

(a)     As of the Effective Date, the Debtors, the Reorganized Debtors and the creditors of the Debtors, as the case may be, hereby irrevocably transfer, assign, and deliver to the Wave Computing Liquidating Trust all assets constituting the Liquidating Trust Assets in the form existing on the Effective Date, free and clear of any and all Liens, Claims and Interests (legal, beneficial or otherwise) of all other Persons and Entities to the maximum extent contemplated by and permissible under section 1141 of the Bankruptcy Code. The Wave Computing Liquidating Trust shall have such incidents of ownership in the Liquidating Trust Assets as are necessary or desirable to undertake the actions and transactions authorized in the Plan Documents. The transfer of the Liquidating Trust Assets shall be exempt from any stamp, real estate transfer, mortgage recording, sales, use or other similar Tax pursuant to section 1146 of the Bankruptcy Code.

(b)     Notwithstanding the foregoing, if on the Effective Date, the Trust Manager determines that any of the Liquidating Trust Assets cannot be transferred to the Wave Computing Liquidating Trust or deems it impractical to do so, for any reason, for example, because the Wave Computing Liquidating Trust has not yet established accounts for the purpose of holding Cash or because of a restriction on transferability under applicable non-bankruptcy law that is not superseded by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code:

(i)     Subject to clause (ii) of this Section 2.5(b), the Reorganized Debtors (each a "Liquidating Trust Bailee") shall continue to hold such Liquidating Trust Assets, as bailee for the account of the Wave Computing Liquidating Trust, and the Trust Manager shall be deemed to have been designated as a representative of the Debtors pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Liquidating Trust Assets on behalf of the Debtors until such time as the Wave Computing Liquidating Trust informs the Liquidating Trust Bailee that the Wave Computing Liquidating Trust may receive such Liquidating Trust Assets, whereupon such Liquidating Trust Assets shall be promptly transferred to the Wave Computing Liquidating Trust; provided that the proceeds of the sale or other disposition of any such assets retained by a Liquidating Trust Bailee shall nevertheless be deemed to constitute Liquidating Trust Assets, and to likewise be held by Liquidating Trust Bailee, and be turned over as soon as practicable to the Wave Computing Liquidating Trust

Case: 20-50682    Doc# 1068    Filed: 01/16/21    Entered: 01/16/21 14:27:57    Page 22 of 64

pursuant to this Agreement as if such transfer had not been restricted under applicable non-bankruptcy law; and

(ii)     the Trust Manager shall use commercially reasonable efforts to promptly cause the transfer of such Liquidating Trust Assets to the Wave Computing Liquidating Trust.

(c)     The Wave Computing Liquidating Trust may commence an action in the Bankruptcy Court to resolve any dispute regarding the allocation of the proceeds of any Liquidating Trust Assets retained by a Liquidating Trust Bailee (or any successors thereto) pursuant to the Plan Documents.

(d)     On the Effective Date, the Debtors shall be deemed to have transferred and assigned to the Wave Computing Liquidating Trust all of their respective rights, titles, and interests in any privilege or immunity of the Debtors' Estates with respect to the Transferred Causes of Action, including the attorney-client privilege and the work product privilege (collectively, the "Privileges"), which Privileges shall automatically vest in the Wave Computing Liquidating Trust. The Trust Manager shall be vested with the sole power and authority to waive or assert such Privileges for the sole benefit of the Liquidating Trust. In addition, on the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall provide the Wave Computing Liquidating Trust with reasonable access to the books and records, documents, and files of the Debtors or Reorganized Debtors concerning the Transferred Causes of Action. The Reorganized Debtors shall also provide reasonable access to the Debtors' and Reorganized Debtors' financial information, data, systems and employees as the Trust Manager deems necessary or desirable to accomplish the activities of the Wave Computing Liquidating Trust. The Released Parties shall use commercially reasonable efforts to cooperate with the Trust Manager with respect to any litigation brought by or against the Wave Computing Liquidating Trust; provided that the Wave Computing Liquidating Trust will reimburse the Released Parties for reasonable and documented out-of-pocket expenses (which shall not include fees or expenses of counsel) incurred in connection with such cooperation. Without limitation, the Debtors' Professionals shall deliver any books and records of the Debtors or other materials (including any documents or materials of the Debtors that may be subject to any Privileges, including files of the Debtors' Professionals, including work product, analysis and discovery) that may be relevant to the Transferred Causes of Action and that are in the respective possession, custody or control of any such Debtors' Professionals.  If the Reorganized Debtors do not comply with this Section 2.5(d) or Section 2.3(a), the Wave Computing Liquidating Trust and/or the Trust Manager shall be entitled to its reasonable costs and expenses (including reasonable attorney's fees) of compelling such compliance.

(e)     As promptly as practicable after the Effective Date, the Reorganized Debtors agree (i) to take, or cause to be taken, all such further actions, including executing and/or delivering instruments, documents, and books and records (including those maintained in electronic format and original documents as may be needed), as the Trust Manager may reasonably request in order to evidence or effectuate the transfer of the Liquidating Trust Assets to the Trust Manager and the Wave Computing Liquidating Trust, the consummation of the transactions contemplated hereby and by the Plan and to otherwise carry out the intent of

13

the parties hereunder and under the Plan and (ii) to cooperate with the Trust Manager in the prosecution of the Transferred Causes of Action . Notwithstanding anything contained herein, without the express written consent of the Trust Manager, no Person or creditor of the Debtors or the Reorganized Debtors (other than the Wave Computing Liquidating Trust) shall be permitted to assert, bring, institute, or commence any Claim or Cause of Action that is transferred to the Wave Computing Liquidating Trust pursuant to this Agreement or the Plan.

(f)     The Committee and its members and Professionals shall be permitted to share any work product, analysis, discovery obtained, or documents received through voluntary productions, including documents obtained pursuant to the common interest privilege, relating to the Liquidating Trust Assets with the Wave Computing Liquidating Trust, the Trust Manager and the Liquidating Trust Advisory Board, and its and their respective advisors, without waiver of any privileges.

(g)     From time to time at the request of the Trust Manager, and upon the date when all Disputed General Unsecured Claims against the Debtors have been Allowed or otherwise reconciled by the Debtors or Reorganized Debtors, within two (2) weeks of such reconciliation, the Debtors or the Reorganized Debtors shall deliver, or cause to be delivered, to the Wave Computing Liquidating Trust a complete list setting forth the name and address, and tax information number, if known, of the Holders of all Allowed General Unsecured Claims and the Allowed amount of each such Allowed General Unsecured Claim and (ii) any distributions that have been made on account of such Allowed General Unsecured Claims.  The Wave Computing Liquidating Trust shall have no duty or obligation to update or otherwise reconcile the records received from the Debtors or Reorganized Debtors.

(h)     The Wave Computing Liquidating Trust, as successor in interest to the Estates and to the creditors to the extent provided for in the Plan Documents, may (i) execute and deliver any instruments, documents, books, and records (including those maintained in electronic format and original documents as may be needed), and (ii) take, or cause to be taken, all such further action in order to evidence, vest, perfect or effectuate the transfer of all of the Liquidating Trust Assets to the Wave Computing Liquidating Trust and consummate transactions contemplated by and to otherwise carry out the intent of the Plan Documents.

2.6     Title to Liquidating Trust Assets. Subject to Sections 2.5(a) and 2.5(b), on the a Effective Date the Wave Computing Liquidating Trust shall succeed to all of the right, title and interest in the Liquidating Trust Assets, and no other Person or Entity, including the Debtors or Reorganized Debtors or their respective creditors, will have any further rights or interest in or with respect to the Liquidating Trust Assets or the Wave Computing Liquidating Trust.

2.7     Valuation. As soon as reasonably practicable after the Effective Date, but in no event later than one hundred and eighty (180) days thereafter, the Trust Manager shall make a good faith determination of the value of the assets transferred to the Wave Computing Liquidating Trust. Such aggregate valuation shall be delivered to the Beneficiaries in accordance with Section 12.4 (which may be done by posting to any website maintained by the Wave Computing Liquidating Trust) and shall be in such detail and including such supporting information as determined by the Trust Manager, in reliance on its professionals, to be

14

reasonably necessary or appropriate for the use and understanding thereof, and shall be used consistently by all parties (including, without limitation, the Debtors, the Reorganized Debtors, the Wave Computing Liquidating Trust and the Beneficiaries) for all United States federal income tax purposes.

2.8     No Reversion to Debtors; Distribution of Remaining Assets.

(a)     In no event shall any part of the Liquidating Trust Assets revert to or be distributed to or for the benefit of any Debtor or the Reorganized Debtors.

(b)     If after satisfaction in full of all of the costs and expenses of the administration of the Wave Computing Liquidating Trust, after satisfaction of all other obligations or liabilities of the Wave Computing Liquidating Trust incurred or assumed in accordance with the Plan Documents, after the Wave Computing Liquidating Trust has made the maximum distribution of Distributable Trust Assets to the Beneficiaries to the extent reasonably practicable, and after the affairs of the Wave Computing Liquidating Trust have been finally wound up and concluded in accordance with the provisions of Section 11.1 hereof and section 3808 of the Trust Act, there shall remain any Liquidating Trust Assets, the Wave Computing Liquidating Trust shall distribute such remaining Liquidating Trust Assets to one or more organizations, selected by the Trust Manager after consultation with the Liquidating Trust Advisory Board, described in section 501(c)(3) of the Tax Code and exempt from U.S. federal income tax under section 501(a) of the Tax Code.

2.9     Fiscal Year. Except for the first and last years of the Wave Computing Liquidating Trust, the Fiscal Year of the Wave Computing Liquidating Trust shall be the calendar year. For the first year of the Wave Computing Liquidating Trust, the Fiscal Year of the Wave Computing Liquidating Trust shall be from on or after the Effective Date through December 31 of the same calendar year. For the last year of the Wave Computing Liquidating Trust, the Fiscal Year of the Wave Computing Liquidating Trust shall be such portion of the calendar year that the Wave Computing Liquidating Trust is in existence, subject to adjustment as desirable to facilitate timing of final tax returns. The term fiscal quarter, or similar references, as used in this Agreement, shall have a correlative meaning.

2.10     Insurance. The Wave Computing Liquidating Trust shall, to the extent reasonably available, purchase or create and maintain customary insurance coverage, including any appropriate tail coverage, and pay all insurance premiums and costs, for the protection, and to insure the acts and omissions, of the Delaware Trustee (including in its individual capacity), the Liquidating Trust Advisory Board Members and the Trust Manager (which coverage shall be primary to any other coverage potentially available to such persons) and may procure insurance coverage for such employees as the Trust Manager may determine in its discretion after consultation with the Liquidating Trust Advisory Board.

2.11     Wave Computing Liquidating Trust Books and Records.

(a)     The Trust Manager shall cause to be stored and maintained books and records for the period commencing on the date hereof through the termination of the Wave

15

Computing Liquidating Trust, containing such information concerning the Liquidating Trust Assets, the conduct of the affairs of the Wave Computing Liquidating Trust and rights and treatment of the Beneficiaries, in such detail and for such periods of time as may be necessary to enable the Wave Computing Liquidating Trust to make full and proper accounting in respect thereof and to comply with applicable provisions of law. Such books and records shall be maintained on a modified cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting requirements of the Wave Computing Liquidating Trust.

(b)     The Wave Computing Liquidating Trust shall be authorized without further application to the Bankruptcy Court or notice to any party, to abandon or otherwise destroy books and records (whether in electronic or paper format) in accordance with and subject to Section 11.3; provided that the Trust Manager, after consultation with the Liquidating Trust Advisory Board, may at any time petition the Bankruptcy Court for permission to destroy such books and records as the Trust Manager determines are not necessary or useful for the conduct of the affairs of the Wave Computing Liquidating Trust or the protection of its interests of the interests of the Beneficiaries.

(c)     Anything in the Trust Act to the contrary notwithstanding, and without limiting the provisions of Section 7.3(c), no Beneficiary shall have the right to obtain from the Wave Computing Liquidating Trust or review any of its books or records except as expressly provided in this Agreement or by order of the Bankruptcy Court, or as may otherwise be expressly permitted by the Trust Manager.

2.12     No Interest or Accruals.

(a)     Except as otherwise may be expressly provided in the Plan Documents and in Sections 2.12(b) and 2.12(c), Beneficiaries shall not be entitled to interest on their respective Allowed Claims or distributions provided for in this Agreement, regardless of whether distributions are made on or at any specified time after the Effective Date.

(b)     The GUC ~~Note~~Loan shall bear interest at the GUC ~~Note~~Loan Interest Rate.

(c)     The Excess General Unsecured Claim Amount shall accrue interest at the Federal Judgment Rate.

## ARTICLE III
## INTERESTS IN THE TRUST

3.1     Interests.Each holder of an Allowed General Unsecured Claim and an Allowed Tallwood Claim shall be deemed the holder of an interest or interests in the Wave Computing Liquidating Trust (each an "Interest") as shall be necessary, in accordance and consistent with the Plan Documents.

16

(b)     Each holder of an Allowed General Unsecured Claim against any of the Debtors shall be deemed the holder or beneficiary of a Class A Interest equal to such holder's Class A Percentage Interest as of such date, and each holder of an Allowed Tallwood Claim as of any applicable date of measurement shall be deemed the holder or beneficiary of a Class B Interest equal to such holder's Class B Percentage Interest as of such date. In addition, as of any applicable date of measurement, the Disputed General Unsecured Claims Reserve shall be deemed the holder of Class A Interests in respect of Disputed General Unsecured Claims pending the resolution of such claims, in an amount calculated based on the Debtors' reserve for Disputed General Unsecured Claims.

(c)     In no event shall any holder of a Class B Interest have any right to receive any distributions of GUC ~~Note~~Loan Distributable Trust Assets or ~~'~~GUC Accounts Receivable Proceeds Distributable Trust Assets, which shall be held by the Wave Computing Liquidating Trust solely for the benefit of holders of Class A Interests.

(d)     No holder of an Interest may sell, transfer, encumber, pledge or assign all or any part of its Interest except (i) to the spouse of such holder, (ii) by devise or bequest, or (iii) by operation of law. Any purported sale, transfer, encumbrance, pledge or assignment by a Holder of all or any part of its Interest in violation of this Section 3.1(d) shall be null and void. Notwithstanding the foregoing, the right to receive payment on account of any Interest may be sold, transferred, encumbered, pledged, or assigned to Tallwood, the Reorganized Debtors or any of their respective Affiliates.

3.2     Interests in Satisfaction of Claims.  The Interests deemed to be held by each Beneficiary shall be in full and final satisfaction from the Wave Computing Liquidating Trust of such Beneficiary's Allowed Claims (other than for income tax purposes to the extent set forth in Treas. Reg. § 1.468B-9), or Disputed General Unsecured Claims in the Disputed General Unsecured Claims Reserve, as applicable.Evidence of Interests. ~~(a)~~     As of (i) any GUC ~~Note~~Loan Distribution Record Date or (ii) any Distribution Record Date on which the Wave Computing Liquidating Trust intends to distribute Distributable Trust Assets to certain Classes of Interests, the Wave Computing Liquidating Trust shall obtain from the applicable Debtors or Reorganized Debtors, as applicable, a then-current register of (x) all Allowed General Unsecured Claims, in each case together with the amount of the applicable Allowed General Unsecured Claims, (y) all Allowed Tallwood Claims, and (z) Disputed General Unsecured Claims subject to the Disputed General Unsecured Claims Reserve, in each case together with any information requested by the Wave Computing Liquidating Trust to make any distribution of the Distributable Trust Assets. Such holders of Allowed General Unsecured Claims and Allowed Tallwood Claims shall be deemed the holders of the applicable Class of Interests as of any such date and shall be treated as the holders of the applicable Interests and Percentage Interests for all purposes hereunder as of such date. The Wave Computing Liquidating Trust may rely without inquiry on the information and records received from the Debtors or Reorganized Debtors to make distributions and send communications to the holders (and deemed holders) of Interests and, in so doing, any persons participating in the management of the Wave Computing Liquidating Trust, including the Trust Manager and the

17

Liquidating Trust Advisory Board, shall be fully protected and incur no liability to any holder (or deemed holder) of Interests or any other person or entity.

(b)     Following the reconciliation of all General Unsecured Claims, the Debtors or Reorganized Debtors shall provide a final then-current register of all Allowed General Unsecured Claims together with all information necessary for distributions, and the Wave Computing Liquidating Trust shall establish or cause to be established customary procedures for evidencing and recording Interests.

3.4     Rights of Beneficiaries. Each Beneficiary shall be entitled to participate in the rights and benefits due to it hereunder on account of its Allowed Claim or Interest. Each Beneficiary shall take and hold the same, subject to all the terms and conditions of the Plan Documents. The interest of a Beneficiary is hereby declared and shall be, in all respects, personal property. The Parties hereto intend that the rights of the Beneficiaries arising under this Agreement shall not be "securities" under applicable laws. If such rights are deemed to constitute securities, the issuance thereof to the Beneficiaries shall be exempt from registration under the Securities Act, as amended, as provided by section 1145 of the Bankruptcy Code and under applicable securities laws requiring registration. If the Trust Manager determines, with the advice of counsel, that the Wave Computing Liquidating Trust is required to comply with registration and reporting requirements of the Securities Act or the Investment Company Act of 1940, then the Trust Manager shall at the Wave Computing Liquidating Trust's expense take any and all actions to comply with such registration and reporting requirements, if any, and file periodic reports with the Securities and Exchange Commission. Notwithstanding the foregoing procedure, nothing herein shall be deemed to preclude the Trust Manager from amending this Agreement to make such changes as are deemed necessary or appropriate by the Trust Manager, with the advice of counsel and in consultation with the Liquidating Trust Advisory Board, to ensure that the Wave Computing Liquidating Trust is not subject to registration or reporting requirements of the Securities Act, or the Investment Company Act.

3.5     Interest Beneficial Only. Except as expressly provided hereunder, a Beneficiary shall have no title to, right to, possession of, management of or control of the Wave Computing Liquidating Trust or the Liquidating Trust Assets. The ownership of Claims or Interests shall not entitle any Beneficiary to any title in or to the Liquidating Trust Assets or to any right to call for a partition or division of such assets or to require an accounting, except as may be specifically provided herein.

3.6     Conflicting Claims. If any conflicting claims or demands are made or asserted with respect to one or more Claims or Interests, or a beneficial interest therein, the Wave Computing Liquidating Trust (as determined by the Trust Manager) shall be entitled to refuse to comply with any such conflicting claims or demands. In so refusing, the Wave Computing Liquidating Trust may elect to make partial or no payments or distributions with respect to the Interests at issue pending the resolution of such conflict, and the Wave Computing Liquidating Trust shall be entitled to refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive and continuing jurisdiction over resolution of such conflicting claims or demands. Neither the Wave Computing Liquidating Trust, the Liquidating Trust Advisory Board, the Trust Manager nor the Liquidating Trust Agents shall be or become liable

18

to any party for either (i) a determination to continue making distributions pursuant to its books and records or the books and records of the applicable Debtors, without regard to the conflicting claims or demands; or (ii) a determination to partially or completely cease payments or distributions with respect to the subject Interest or Interests. In the event that the Wave Computing Liquidating Trust determines to cease payments, it shall be entitled to refuse to act until either (x) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court (or such other court of proper jurisdiction) or (y) all differences have been resolved by a written agreement among all of such parties and the Wave Computing Liquidating Trust, which agreement shall include a complete release of the Wave Computing Liquidating Trust, the Liquidating Trust Advisory Board, the Trust Manager and the Liquidating Trust Agents from liability resulting from any actions taken or not taken, which release shall be in form and substance reasonably satisfactory to the Trust Manager.

3.7    Beneficiary Liability to Third Persons. No Beneficiary shall be subject to any personal liability whatsoever, in tort, contract or otherwise, to any person in connection with the Liquidating Trust Assets or the affairs of the Wave Computing Liquidating Trust, to the fullest extent provided by Section 3803(a) of the Trust Act.

3.8    Actions in the Right of the Wave Computing Liquidating Trust. To the maximum extent permitted by law, no Beneficiary or Beneficiaries shall have the right to bring an action in the right of the Wave Computing Liquidating Trust to recover a judgment pursuant to section 3816 of the Trust Act.

### ARTICLE IV
### DISTRIBUTIONS TO BENEFICIARIES

4.1    Distributions.

(a)    General. The holders of Allowed Claims shall be entitled to receive distributions of the Distributable Trust Assets by the Wave Computing Liquidating Trust, when and as such distributions are made in the Trust Manager's discretion (except with respect to Distributions of GUC NoteLoan Distributable Trust Assets, which shall be governed by Section 4.1(b)) pursuant to this Agreement in accordance with this Section 4.1.

(b)    Distributions of GUC NoteLoan Distributable Trust Assets. Within thirty (30) days following each GUC NoteLoan Distribution Record Date, the Trust Manager shall distribute an amount in Cash equal to the amount of GUC NoteLoan Distributable Trust Assets (if any) held by the Wave Computing Liquidating Trust to each holder of a Class A Interest (including Class A Interests deemed to be held by the Disputed General Unsecured Claims Reserve) in accordance with its Class A Percentage Interest.

(c)    Distribution of ʰGUC Accounts Receivable Proceeds Distributable Trust Assets. If ʰGUC Accounts Receivable Proceeds Distributable Trust Assets become available for distribution to Class A Interests, the Trust Manager may distribute all or a portion of such assets in his (or her) discretion to each holder of a Class A Interest (and a corresponding distribution to any Disputed General Unsecured Claims Reserve established by the Wave

19

Computing Liquidating Trust) as of the Distribution Record Date on the Trust Distribution Date. Any such distribution shall be paid to each holder of a Class A Interest (including Class A Interests deemed to be held by the Disputed General Unsecured Claims Reserve) in accordance with its Class A Percentage Interest.. Each distribution made pursuant to this Section 4.1(c) shall be deemed to have been received (i) *first*, in dollar-for-dollar satisfaction of the Excess General Unsecured Claim Amount until the Excess General Unsecured Claim Amount has been repaid in full and (ii) *second*, after the Excess General Unsecured Claim Amount has been repaid in full, in dollar-for-dollar satisfaction of obligations due under the GUC ~~Note~~Loan.

(d)     Distributions of Other Distributable Trust Assets to Class A Interests and Class B Interests. If Other Distributable Trust Assets become available for distribution to Class A Interests and Class B Interests, the Trust Manager may distribute all or a portion of such assets in his (or her) discretion to such Beneficiaries (and a corresponding distribution to any Disputed General Unsecured Claims Reserve established by the Wave Computing Liquidating Trust) as of the Distribution Record Date on the Trust Distribution Date, in the following order:

(i)     first, until the Liquidating Trust Expense Advance has been repaid in full, to each holder of a Class A Interest (including Class A Interests deemed to be held by the Disputed General Unsecured Claims Reserve), in Cash, such holder's pro rata share of the Cash to be distributed on account of such Liquidating Trust Expense Advance (calculated in accordance with such holder's Class A Percentage Interest);

(ii)     second, until all Allowed General Unsecured Claims have been paid in full in Cash, to each holder of a Class A Interest (including Class A Interests deemed to be held by the Disputed General Unsecured Claims Reserve), such holder's pro rata share of the Cash to be distributed (calculated in accordance with such holder's Class A Percentage Interest). Each distribution made pursuant to this sub-clause 4.1(d)(ii) shall be deemed (x) fifty percent (50%) to have been received in dollar-for-dollar satisfaction of the Excess General Unsecured Claim Amount and (y) fifty percent (50%) to have been received in dollar-for-dollar satisfaction of obligations due under the GUC ~~Note~~Loan. If on any Trust Distribution Date the Excess General Unsecured Claim amount has been paid in full in Cash, but the GUC ~~Note~~Loan has not been repaid in full in Cash (or vice versa), one hundred percent (100%) of the distribution to each holder of a Class A Interest shall be deemed to have been received in dollar-for-dollar satisfaction of the Excess General Unsecured Claim Amount or the obligations under GUC ~~Note~~Loan, as applicable, until all Allowed General Unsecured Claims have been repaid in full in Cash; and

(iii)     third, after all Allowed General Unsecured Claims have been paid in full in Cash, to each holder of a Class B Interest, such holder's pro rata share of the Cash to be distributed.

4.2     Distribution Record Date; Distributions.

20

(a)     The provisions of this Section 4.2 shall apply to all distributions made pursuant to Section 4.1 (other than distributions of GUC ~~Note~~Loan Distributable Assets made pursuant to Section 4.1(b)).

(b)     The Distribution Record Date for purposes of determining the Beneficiaries entitled to receive a distribution of Other Distributable Trust Assets on any Trust Distribution Date shall be no less than fifteen (15) and no more than sixty (60) days prior to the corresponding Trust Distribution Date.

(c)     The Trust Manager shall make a determination in his/her discretion of the Other Distributable Trust Assets distributable on any Trust Distribution Date, giving due regard for the Cash anticipated to be held by the Wave Computing Liquidating Trust as of such Trust Distribution Date and the sufficiency of the Cash held in or that may be required to be added to the Trust Administration Reserve.

(d)     Following its determination of the Other Distributable Trust Assets to be distributed on any Trust Distribution Date pursuant to Section 4.2(c), but no later than five (5) Business Days in advance of the corresponding Distribution Record Date, unless otherwise determined by the Trust Manager for good reason, the Wave Computing Liquidating Trust shall deliver a notice to each Beneficiary entitled to receive a distribution setting forth the Distribution Record Date, the Trust Distribution Date and the Other Distributable Trust Assets to be distributed, in the aggregate and on a Class A Percentage Interest and/or Class B Percentage Interest, as applicable. Such notice may be given as provided in Section 12.4 or by press release of general circulation (including through posting on any website maintained by the Wave Computing Liquidating Trust).

(e)     For purposes of making any distribution of GUC ~~Note~~Loan Distributable Trust Assets or Other Distributable Trust Assets, the term "of record" or any similar term means the Beneficiaries on the applicable date as determined in accordance with Section 3.3.

(f)     If any Beneficiary has failed to deposit or cash any check with respect to any prior distribution as of any Distribution Record Date, (i) the Wave Computing Liquidating Trust shall not make any further distributions to such Beneficiary until such time as the outstanding check has been deposited or cashed, and (ii) the Wave Computing Liquidating Trust shall mail to such Beneficiary written notice advising that all pending and future distributions to such Beneficiary shall be withheld pending the deposit or cashing of the outstanding distribution check. If the outstanding check is deposited or cashed within twelve (12) months after the date of issuance of such check, the Wave Computing Liquidating Trust will provide any withheld distributions to the Beneficiary. If a Beneficiary fails to deposit or cash the check with respect to any distribution within twelve (12) months after the date of issuance of such check, then (i) any pending or withheld distribution(s) allocated to such Beneficiary shall be deemed forfeited, and the unclaimed distribution(s) shall be cancelled by stop payment order or otherwise, and (ii) the Beneficiary will forfeit its Interest and rights to any future distributions, and such forfeited amounts shall revest in the Wave Computing Liquidating Trust. In determining whether any distribution check has been deposited, the Wave Computing Liquidating Trust may rely on its own bank records showing whether or not such

Case: 20-50682   Doc# 1068   Filed: 01/16/21   Entered: 01/16/21 14:27:57   Page 31 of 64

distribution check has cleared the Wave Computing Liquidating Trust's bank account. The Wave Computing Liquidating Trust shall have the right, but not the obligation, to make any effort to determine the correct address of any Beneficiary, and all distributions shall be made to the Beneficiaries at the addresses provided by the Debtors or the Reorganized Debtors (or, if not provided by the Debtors or the Reorganized Debtors, as set forth on the official claims register in the Debtors' bankruptcy cases), or at such updated address as may have been properly noticed to the Wave Computing Liquidating Trust pursuant to this Agreement prior to any applicable Distribution Record Date.

### 4.3 Withholding and Reporting Requirements.

(a) The Wave Computing Liquidating Trust may withhold and pay to the appropriate Tax Authority all amounts required to be withheld pursuant to the Tax Code or any provision of any foreign, state or local tax law with respect to any payment or distribution to the Beneficiaries, provided, however, that the Wave Computing Liquidating Trust shall reasonably cooperate with the Beneficiaries to prevent or minimize any withholding. All such amounts withheld and paid to the appropriate Tax Authority shall be treated as amounts distributed to such holders for all purposes of the Plan and this Agreement. To the extent an amount has been placed in escrow pending resolution of the need to withhold, and the Wave Computing Liquidating Trust determines that no withholding is required, such amounts shall be distributed to the Beneficiaries with respect to whom such amounts were previously withheld. If the Wave Computing Liquidating Trust fails to withhold and pay to the appropriate Tax Authority any amounts required to be withheld pursuant to the Tax Code or any provision of any foreign, state or local tax law and the Wave Computing Liquidating Trust is later held liable for the amount of such withholding, the Beneficiary shall promptly reimburse the Wave Computing Liquidating Trust for such liability including interest, penalties, fines and other additional amounts with respect thereto. Notwithstanding the foregoing, each Beneficiary that receives or is deemed to receive a distribution under the Plan shall have the sole and exclusive responsibility for the payment of any Taxes imposed by any governmental unit on account of such distribution or deemed distribution.

(b) The Debtors or Reorganized Debtors, as applicable, shall provide available information regarding the Beneficiaries, including mailing address, e-mail address, telephone number and tax identification information, to the Wave Computing Liquidating Trust to the extent necessary or desirable for the Wave Computing Liquidating Trust to allocate income and/or expense and make distributions to such Beneficiaries in accordance with this Agreement. If the Debtors or Reorganized Debtors do not provide tax identification and mailing address information to the Wave Computing Liquidating Trust within thirty (30) days following the Effective Date, the Wave Computing Liquidating Trust shall send each Beneficiary a single notice that states that, if tax identification information and mailing address information is not provided within twelve (12) months following the Effective Date, the Beneficiary shall forfeit its Interest and rights to any distribution and such forfeited amounts shall revest in the Wave Computing Liquidating Trust. If a Trust Distribution Date occurs within such twelve (12) month period, any Beneficiary for whom the Wave Computing Liquidating Trust lacks tax identification and mailing address information shall not be entitled

22

to receive a distribution on such Trust Distribution Date; provided, however that, upon the delivery of such information by such Beneficiary within such twelve (12) month period, the Wave Computing Liquidating Trust shall make such distribution(s) to which the Beneficiary would otherwise have been entitled on the prior Trust Distribution Date(s), without interest.

4.4     Disbursing Agent. The Trust Manager may engage one or more Disbursing Agents to make distributions. References in this Agreement to distributions by the Wave Computing Liquidating Trust shall include distributions made by a Disbursing Agent.

4.5     Incurrence of Debt. If the Trust Manager determines that there are, or there are likely to be, insufficient funds in the Trust Administration Reserve to satisfy the costs and expenses described in Section 7.2(a) and other obligations and liabilities incurred, assumed or reasonably anticipated by the Wave Computing Liquidating Trust (or to which the Liquidating Trust Assets are otherwise subject), the Wave Computing Liquidating Trust, with Majority Consent of the Liquidating Trust Advisory Board, may borrow sufficient funds, on terms approved by the Liquidating Trust Advisory Board, to satisfy such cost and expenses or pay such costs, fees and expenses, as applicable.

4.6     Distributions in Respect of Disputed General Unsecured Claims. Distributions of any Liquidating Trust Assets will be made by the Disbursing Agent to the Disputed General Unsecured Claims Reserve, if any, established by the Wave Computing Liquidating Trust. Distributions on account of Disputed General Unsecured Claims that subsequently become Allowed, in whole or in part, shall be made by the Disbursing Agent from the Disputed General Unsecured Claims Reserve on the next Trust Distribution Date or on another date as may be established for such purpose by the Trust Manager. Any distribution on account of a Disputed General Unsecured Claim that subsequently becomes Allowed, in whole or in part, shall be reduced, dollar-for-dollar, by the amount of any Taxes that the Wave Computing Liquidating Trust was required to pay with respect to any distribution made to the Disputed General Unsecured Claims Reserve in respect of such Disputed General Unsecured Claim.

## ARTICLE V
## DUTIES AND POWERS OF THE TRUST MANAGER

5.1     Trust Manager. The initial Trust Manager shall be [   ] of [   ]. In the event of the death, resignation or removal from office for Cause of the initial Trust Manager or any successor Trust Manager, a successor shall be appointed by Majority Consent of the Liquidating Trust Advisory Board.

5.2     Powers of Trust Manager. Except as otherwise set forth in this Agreement, the Plan or the Confirmation Order, the Trust Manager is hereby authorized to perform those acts necessary or desirable to accomplish the purposes of the Wave Computing Liquidating Trust, conduct the affairs of the Wave Computing Liquidating Trust, perform the functions and take the actions provided for or permitted under this Agreement, the Plan or any agreement executed by the Wave Computing Liquidating Trust, and have such other functions, authority and duties as customarily appertain to the trustee of a liquidating trust, including but not limited to:

23

(a)     having general responsibility for the administration of the Wave Computing Liquidating Trust;

(b)     calculating and effecting the distribution of Distributable Trust Assets to Beneficiaries consistent with the terms of the Plan and this Agreement and withhold from the amounts distributable the maximum amount needed to pay any tax or other charge that the Trust Manager has determined, based upon the advice of its agents and/or other professionals, may be required to be withheld from such distribution under the Tax Code, other laws of the United States, or the laws of any state, local or foreign jurisdiction with taxing authority;

(c)     hiring, supervising, compensating and terminating employees of the Wave Computing Liquidating Trust, and retaining, overseeing, compensating and terminating any service professionals and other Liquidating Trust Agents engaged with respect to the administration of the Wave Computing Liquidating Trust;

(d)     carrying out any filings required to be made by the Wave Computing Liquidating Trust, and providing the statements to Beneficiaries required to be furnished to them in accordance with Section 9.2(a);

(e)     executing contracts, agreements, leases, undertakings and other documents (including the GUC ~~Note~~Loan) in the name and on behalf of the Wave Computing Liquidating Trust;

(f)     communicating with Beneficiaries and other interested persons on behalf of the Wave Computing Liquidating Trust;

(g)     protecting and enforcing the rights to the Liquidating Trust Assets vested in the Wave Computing Liquidating Trust by this Agreement and the Plan by any method deemed appropriate in his/her discretion, including by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(h)     investing funds (in the manner set forth in this Agreement), making distributions and paying any other obligations owed by the Wave Computing Liquidating Trust from the Liquidating Trust Assets as provided herein and in the Plan;

(i)     subject to Section 5.3 and Section 6.5(a), prosecuting, defending, compromising, adjusting, arbitrating, abandoning, estimating, or otherwise dealing with and settling Causes of Action comprising Transferred Causes of Action, including retaining and overseeing experts, counsel and other professionals engaged for the purposes thereof, in any court or other tribunal without any further order of the Bankruptcy Court;

(j)     selling, transferring or assigning Causes of Action comprising Transferred Causes of Action on such terms as the Trust Manager deems appropriate;

(k)     selling, transferring or assigning the GUC ~~Note~~Loan or accepting prepayment of the GUC ~~Note~~Loan for a discounted amount;

24

(l)     without limiting the generality of the rights and powers set forth in this Agreement and subject to all applicable rules, regulations, procedures, defenses and objections, taking discovery in connection with the investigation and prosecution of the Transferred Causes of Action, whether through depositions, oral examinations, document requests, interrogatories and/or other discovery devices provided for under applicable law, and exercising any and all investigatory powers provided for under Rule 2004 of the Bankruptcy Rules to the extent authorized to do so by order of the Bankruptcy Court or other court of competent jurisdiction;

(m)     paying expenses and making disbursements necessary to administer the Wave Computing Liquidating Trust and to preserve, liquidate, and enhance the Liquidating Trust Assets, including any Disputed General Unsecured Claims Reserve;

(n)     purchasing such insurance coverage (in the form of an errors and omissions policy, fiduciary policy or otherwise) in such amount as the Trust Manager deems necessary and appropriate with respect to the liabilities and obligations of the Trust Manager which such amount shall be determined in his or her sole discretion, or the Liquidating Trust Advisory Board which such amount shall be determined by the Trust Manager after consulting with the Liquidating Trust Advisory Board;

(o)     retaining and paying, as applicable, the Liquidating Trust Agents in each case without any supervision of, or approval by, the Bankruptcy Court;

(p)     incurring any reasonable and necessary expenses in liquidating and converting the Liquidating Trust Assets to Cash, pursuing Causes of Action and Avoidance Actions, or otherwise administering the Wave Computing Liquidating Trust, as set forth in the Plan or this Agreement;

(q)     establishing and administering any reserve deemed necessary, appropriate or useful for carrying out the purposes of the Wave Computing Liquidating Trust, including any reserve to fund the self-insured retention under insurance coverage for the potential liabilities of the Trust Manager and Liquidating Trust Advisory Board Members;

(r)     being responsible for monitoring the D&O Liability Insurance Policies and ability to collect proceeds therefrom;

(s)     establishing and maintaining one or more depository, escrow or other accounts to hold Cash or Cash equivalents constituting Liquidating Trust Assets, including, without limitation, one or more accounts with counsel for the Trust Manager; and re-evaluate and adjust such accounts as necessary or appropriate;

(t)     preparing and filing the Tax Returns on behalf of the Wave Computing Liquidating Trust, and to make such filings and deliver such reports and/or instruments related to tax matters, as the Trust Manager deems reasonably necessary or desirable, and withhold and pay Taxes, if any, that are required to be withheld by or that are properly payable by the Wave Computing Liquidating Trust in accordance with this Agreement;

25

(u)     if the Trust Manager determines that the Wave Computing Liquidating Trust or the Beneficiaries may, will, has, or have (as applicable) become subject to material adverse tax consequences, taking such actions, in consultation with the Liquidating Trust Advisory Board, that will, or are reasonably intended to, alleviate such adverse tax consequences;

(v)     in reliance upon the official claims register maintained in the Debtors' bankruptcy cases (which the Trust Manager and Liquidating Trust Agents shall have the absolute right to rely on, without inquiry, as accurate, except, with respect to the address and contact information of a Beneficiary, if such Beneficiary has properly noticed its updated address to the Wave Computing Liquidating Trust, the Trust Manager and Liquidating Trust Agents shall contact such Beneficiary at such updated address), maintaining appropriate books and records, evidencing the beneficial Interests;

(w)     exercising such other powers as may be vested in or assumed by the Wave Computing Liquidating Trust pursuant to the Plan or Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan or this Agreement; and

(x)     administering the duties of the Trustee under the GUC ~~Note~~Loan and performance of its obligations thereunder, including (i) entering into any amendment, supplement or modification that cures any ambiguity, omission, mistake, defect or inconsistency subject to any applicable approval rights of the Liquidating Trust Advisory Board set forth herein and (ii) the release of Liens granted to the Lender (as defined in the GUC ~~Note~~Loan) on the Collateral (as defined in the GUC ~~Note~~Loan) and the release of any Loan Party (as defined in the GUC ~~Note~~Loan) from its guaranty obligations thereunder, in each case, in accordance with and to the extent permitted by, the terms of the GUC ~~Note~~Loan.

5.3     <u>General Authority of the Trust Manager</u>. Unless specifically stated otherwise herein, the Trust Manager shall not be required to obtain Bankruptcy Court approval with respect to any proposed action or inaction: (a) authorized in or contemplated by this Agreement, (b) specifically contemplated in the Plan or (c) reasonably necessary or desirable to effectuate the purposes of the Wave Computing Liquidating Trust. The Trust Manager shall obtain approval of the Liquidating Trust Advisory Board by Majority Consent before taking any Material Action. If the Trust Manager desires to take any Material Action and the Liquidating Trust Advisory Board does not approve the taking of such Material Action, the Trust Manager may petition the Bankruptcy Court for approval of such Material Action, and upon receipt of an order of the Bankruptcy Court approving the taking of such Material Action, the Trust Manager may take such Material Action. The Liquidating Trust Advisory Board shall have the right to respond to any filing with the Bankruptcy Court made by the Trust Manager pursuant to this Section 5.3. Nothing in this Agreement shall limit the ability of the Trust Manager to seek approval of the Bankruptcy Court for any action or decision or to condition the taking of any action or decision upon obtaining approval of the Bankruptcy Court for such action or decision.

5.4     <u>Limitation of Trust Manager's Authority; No On-Going Business</u>

26

(a)     For United States federal income tax purposes, the Trust Manager shall not be authorized to engage in any trade or business with respect to the Liquidating Trust Assets or any proceeds therefrom except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Wave Computing Liquidating Trust. The Trust Manager shall take such actions consistent with the prompt orderly liquidation of the Liquidating Trust Assets as required by applicable law and consistent with the treatment of the Wave Computing Liquidating Trust as a liquidating trust under Treas. Reg. § 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684, to the extent such actions are permitted by this Agreement.

(b)     Notwithstanding anything in this Agreement to the contrary, in determining whether to provide or decline their consent and in connection with any actions to be taken by the Liquidating Trust Advisory Board hereunder, the Liquidating Trust Advisory Board shall always act in furtherance of the purposes of the Wave Computing Liquidating Trust and the treatment of the Wave Computing Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684

5.5     Investment and Safekeeping of Liquidating Trust Assets. All monies and other assets received by the Wave Computing Liquidating Trust shall, until distributed or paid over as herein provided, be segregated from all other monies and assets of the Trust Manager, and further, shall be held in trust for the benefit of the Beneficiaries, but need not be segregated from other Liquidating Trust Assets, unless and to the extent required by the Plan. The Trust Manager shall promptly invest or deposit any such monies in the manner set forth in this Section 5.5, but shall otherwise be under no liability for interest or income on any monies received by the Wave Computing Liquidating Trust hereunder and held for distribution or payment to the Beneficiaries, except as such interest or income shall actually be received. Investment of any monies held by the Wave Computing Liquidating Trust shall be administered in accordance with the general duties and obligations hereunder. The right and power of the Trust Manager to invest the Liquidating Trust Assets, the proceeds thereof, or any income earned by the Wave Computing Liquidating Trust, shall be limited to the right and power to (i) invest such Liquidating Trust Assets (pending distributions or anticipated expenditures in accordance with the Plan or this Agreement) in (a) short-term direct obligations of, or obligations guaranteed by, the United States of America or (b) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof; or (ii) deposit such assets in demand deposits at any bank or trust company, which has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000 (collectively, the "Permissible Investments") *provided, however*, that the scope of any such Permissible Investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.

5.6     Compensation.

(a)     The Trust Manager shall be entitled to receive compensation for services rendered on behalf of the Wave Computing Liquidating Trust and reimbursement of expenses

27

as provided on <u>Schedule A</u> hereto (which <u>Schedule A</u> shall be confidential), or such other compensation as may be agreed upon by the Trust Manager and the Liquidating Trust Advisory Board by Majority Consent or ordered by the Bankruptcy Court.

(b)     All compensation and other amounts payable to the Trust Manager shall be paid out of the Trust Administration Reserve or from any proceeds of Transferred Causes of Action.

5.7     <u>Termination</u>. Subject to <u>Section 11.2</u>, the duties, responsibilities and powers of the Trust Manager will terminate on the date the Wave Computing Liquidating Trust is dissolved under applicable law in accordance with the Plan, or by an order of the Bankruptcy Court.

5.8     <u>No Bond</u>. The Trust Manager shall serve without bond.

5.9     <u>Removal</u>. The Trust Manager may be removed for Cause by members of the Liquidating Trust Advisory Board acting unanimously, upon application to and order of the Bankruptcy Court, with the reasonable costs of such application (and any objection or response thereto by the Trust Manager) to be paid for by the Wave Computing Liquidating Trust; *provided however*, that the Trust Manager may not be removed until a successor Trust Manager has been named or is capable of being named immediately upon such removal. Any fees and unreimbursed expenses that have been properly incurred by the Trust Manager in accordance with the terms of this Agreement that are owing to the Trust Manager as of the date of the Trust Manager's removal shall be paid to the Trust Manager within five (5) days of the removal date.

5.10     <u>Resignation</u>. The Trust Manager may resign by giving not less than sixty (60) days' prior written notice thereof to the Liquidating Trust Advisory Board.

5.11     <u>Appointment of Successor Trust Manager</u>. In the event of the death (in the case of a Trust Manager that is a natural person), dissolution (in the case of a Trust Manager that is not a natural person), resignation pursuant to Section 5.10 hereof or termination or removal of the Trust Manager for Cause pursuant to Section 5.9 hereof, the Liquidating Trust Advisory Board may appoint a successor Trust Manager without the approval of the Bankruptcy Court, which the parties acknowledge shall nevertheless retain jurisdiction to resolve any disputes in connection with the service of the Trust Manager or his/her successor. Such appointment shall specify the date on which such appointment shall be effective. If the Liquidating Trust Advisory Board fails to appoint a successor Trust Manager within 30 days of the occurrence of a vacancy, counsel for the Wave Computing Liquidating Trust, the Liquidating Trust Advisory Board or the outgoing Trust Manager may petition the Bankruptcy Court for such appointment, with the reasonable costs of such application to be paid for by the Wave Computing Liquidating Trust. Every successor Trust Manager appointed hereunder shall execute, acknowledge and deliver to the Bankruptcy Court and to the predecessor Trust Manager (if practicable) an instrument accepting such appointment and the terms and provisions of this Agreement, and thereupon such successor Trust Manager, without any further act, deed or

28

conveyance, shall become vested with all the rights, powers, authority, privileges and duties of the retiring Trust Manager.

5.12    Continuity. Unless otherwise ordered by the Bankruptcy Court, the death, resignation, or removal for Cause of the Trust Manager shall not operate to terminate or to remove any existing agency created pursuant to the terms of this Agreement or invalidate any action theretofore taken by the Trust Manager.

5.13    Interests of Holders of Class A Interests Paramount. Until all Allowed General Unsecured Claims have been repaid in full in Cash, in considering whether to take any action or omit to take any action in carrying out his or her duties and exercising his or her powers under the Plan and this Agreement, including when determining whether to file, prosecute, waive, settle or compromise any Transferred Cause of Action, the Trust Manager shall consider only the interests of the holders of Class A Interests. The Trust Manager shall have no liability to holders of Class B Interests for any action taken or not taken prior to the date upon which all Allowed General Unsecured Claims have been indefeasibly repaid in full in Cash.

## ARTICLE VI
## LIQUIDATING TRUST ADVISORY BOARD

6.1    General. The affairs of the Wave Computing Liquidating Trust shall be monitored by the Liquidating Trust Advisory Board, which, except as expressly set forth herein, shall have only consultation rights in the administration of the Wave Computing Liquidating Trust.

6.2    Liquidating Trust Advisory Board Membership.

(a)    The Liquidating Trust Advisory Board shall consist of three (3) Liquidating Trust Advisory Board Members, and shall initially consist of the Initial Liquidating Trust Advisory Board Members named on the signature page hereof. Each Liquidating Trust Advisory Board Member that is a natural person shall be at least 18 years of age. The initial Liquidating Trust Advisory Board Members are set forth on the signature page to this Agreement. By execution hereof, each Liquidating Trust Advisory Board Member agrees to the terms set forth herein.

(b)    Until all Allowed General Unsecured Claims have been indefeasibly paid in full in Cash, all Liquidating Trust Advisory Board Members shall be Holders of Allowed General Unsecured Claims (or the designees of such Holders). After all Allowed General Unsecured Claims have been indefeasibly paid in full in Cash, if the Wave Computing Liquidating Trust (i) has not terminated and (ii) still holds any Liquidating Trust Assets the Liquidating Trust Advisory Board Members appointed by holders of Class A Interests shall resign and be replaced by (x) two Liquidating Trust Advisory Board Members appointed by a majority in value of holders of Class B Interests and (y) one Liquidating Trust Advisory Board Member appointed by a majority of the Holders of interests in Reorganized Wave. For purposes of this Section6.2(b), "majority in value" means a majority in value of the applicable class that actually votes to appoint the applicable Liquidating Trust Advisory Board Member. If a change

29

to the composition of the Liquidating Trust Advisory Board is required pursuant to this Section 6.2(b), the Trust Manager shall give notice to the Beneficiaries in accordance with Section 12.4.

(c) Each Liquidating Trust Advisory Board Member shall hold office until the earlier of (i) termination of the Wave Computing Liquidating Trust, (ii) the resignation, death or disability of such Liquidating Trust Advisory Board Member or (iii) the removal of such Liquidating Trust Advisory Board Member in accordance with this Agreement.

(d) Any Liquidating Trust Advisory Board Member may resign upon thirty (30) days' prior written notice to the other members of the Liquidating Trust Advisory Board and the Trust Manager.

(e) A Liquidating Trust Advisory Board Member may be removed only for Cause by order of the Bankruptcy Court upon application of the Trust Manager or the other members of the Liquidating Trust Advisory Board acting unanimously, with the reasonable costs of such application (and any objection or response thereto) to be paid for by the Wave Computing Liquidating Trust.

(f) In the event of a vacancy on the Liquidating Trust Advisory Board, whether as a result of the resignation, death, disability or removal of an Liquidating Trust Advisory Board Member, (i) if, prior to the termination of service of such Liquidating Trust Advisory Board Member other than as a result of removal, such Liquidating Trust Advisory Board Member has designated in writing an individual to succeed him or her, such individual shall be his or her successor, subject to the consent of the Trust Manager and each of the remaining Liquidating Trust Advisory Board Members, with such consent not to be unreasonably withheld, or (ii) if such Liquidating Trust Advisory Board Member did not designate a successor prior to the termination of his or her service in accordance with clause (i) of this Section 6.2(f), the remaining Liquidating Trust Advisory Board Members, acting by unanimous vote, shall select a replacement Liquidating Trust Advisory Board Member, subject to the consent of the Trust Manager, with such consent not to be unreasonably withheld. If, thirty days after the occurrence of such vacancy, the remaining Liquidating Trust Advisory Board Members cannot agree on a replacement Liquidating Trust Advisory Board Member, the remaining Liquidating Trust Advisory Board Members and the Trust Manager, acting by majority vote, shall select a replacement Liquidating Trust Advisory Board Member. In all cases, any individual selected to fill a vacancy on the Liquidating Trust Advisory Board must satisfy the requirements of Section 6.2(b).

6.3     Compensation. The Liquidating Trust Advisory Board Members shall not be entitled to compensation for serving on the Liquidating Advisory Trust Board, but shall be entitled to reimbursement of actual, reasonable and necessary out-of-pocket expenses incurred by such Liquidating Trust Advisory Board Members in the course of fulfilling his, or her or its duties as a Liquidating Trust Advisory Board Member, which such expenses shall not include the fees and expenses of any professional advisors engaged by such Liquidating Trust Advisory Board Member.

30

6.4 <u>Authority</u>. Except as otherwise expressly provided herein, the Liquidating Trust Advisory Board shall have no authority to act on behalf of the Wave Computing Liquidating Trust.

6.5 <u>Rights and Powers of the Liquidating Trust Advisory Board</u>. In addition to such other rights as are set forth in this Agreement, the Liquidating Trust Advisory Board shall have the right to:

(a) consent to the taking of any Material Action by the Trust Manager subject to the provision of <u>Section 5.3</u>;

(b) receive and review the reports of the Trust Manager and consult with the Trust Manager on any matters related to the Wave Computing Liquidating Trust or the Liquidating Trust Assets;

(c) appoint a successor Trust Manager as provided in <u>Section 5.9</u>;

;

(d) apply to the Bankruptcy Court for the removal of a Liquidating Trust Advisory Board Member as provided in <u>Section 6.2(e)</u>;

(e) have access, upon reasonable notice and during normal business hours, to all reports, documents, memoranda and other work product of the Trust Manager; and

(f) monitor the actions of the Trust Manager and receive, upon request, periodic status reports from the Trust Manager as to the status of (i) the litigation, settlement, administration and pursuit of the Transferred Causes of Action and (ii) the administration of the Liquidating Trust Assets.

(g) For the avoidance of doubt, the failure to specifically identify rights in this <u>Section 6.5</u> shall not limit or otherwise impair the right of the Trust Manager or the members of the Liquidating Trust Advisory Board to consult with the Trust Manager or members of the Liquidating Trust Advisory Board individually or collectively on any or all issues that he or they may determine to be relevant or appropriate.

6.6 <u>Duties; Standard of Care</u>

(a) Each Liquidating Trust Advisory Board Member's rights and powers hereunder are exercisable solely on behalf of the Wave Computing Liquidating Trust and the Beneficiaries consistent with, and in furtherance of, the purpose of the Wave Computing Liquidating Trust and not otherwise, and in accordance with applicable law, including the Trust Act. Each Liquidating Trust Advisory Board Member in the exercise of his or her rights and powers hereunder shall act in accordance with principles of good faith and fair dealing. Until all Allowed General Unsecured Claims have been indefeasibly repaid in full in Cash, in exercising their rights and powers hereunder, the Liquidating Trust Advisory Board Members shall solely consider the interests of the holders of Class A Interests.

31

(b)     No Liquidating Trust Advisory Board Member shall have the authority to bind the Wave Computing Liquidating Trust.

### ARTICLE VII
### OPERATION OF THE WAVE COMPUTING LIQUIDATING TRUST

7.1     Prohibited Activities.

(a)     The Delaware Trustee, the Trust Manager, the Liquidating Trust Advisory Board, and the Liquidating Trust Agents shall hold the Wave Computing Liquidating Trust out as a trust in the process of liquidation, whose activities are limited to the liquidation of the Liquidating Trust Assets on behalf, and for the benefit, of the Beneficiaries and the other purposes set forth in this Agreement. Without limiting the foregoing, the Wave Computing Liquidating Trust shall not hold itself out as an investment company, and no part of the Liquidating Trust Assets shall be caused by the Trust Manager to be used or disposed of in furtherance of any trade or business.

(b)     The Wave Computing Liquidating Trust shall not engage in any investments or activities inconsistent with the treatment of the Wave Computing Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) or under applicable Internal Revenue Service guidelines, rulings or other controlling authorities, including Revenue Procedure 94-45, 1994-2 C.B. 684.

7.2     Trust Administration Reserve.

(a)     As soon as reasonably practicable following the Effective Date, there shall be established a reserve (the "Trust Administration Reserve") for the purpose of maintaining Cash allocated and retained by the Wave Computing Liquidating Trust from time to time in an amount necessary to cover the costs of administration of the Wave Computing Liquidating Trust, including to (i) fund the reasonable fees and expenses of the Trust Manager, the Delaware Trustee (including in its individual capacity), the Liquidating Trust Advisory Board and the Liquidating Trust Agents, incurred at any time, that the Trust Manager may engage to assist him, her or it in the discharge of the Trust Manager's duties under the Plan and this Agreement, including, without limitation, fees and expenses related to prosecuting and resolving any Transferred Causes of Action, (ii) fund premium payments (and reserve funds to cover any deductibles or self-insured retentions, as applicable) for insurance coverage as contemplated by Section 2.10 for the benefit of the Wave Computing Liquidating Trust, the Trust Manager, the Delaware Trustee (including in its individual capacity), the Liquidating Trust Advisory Board, employees of the Wave Computing Liquidating Trust, and the Liquidating Trust Agents, (iii) meet contingent liabilities and maintain the value of the Liquidating Trust Assets, (iv) pay other reasonably incurred or anticipated expenses (including, without limitation, any Taxes imposed on or payable by the Wave Computing Liquidating Trust or in respect of the Liquidating Trust Assets), and (v) satisfy other liabilities incurred or anticipated by the Wave Computing Liquidating Trust in accordance with the Plan or this

32

Agreement. The fees set forth herein or approved hereunder and incurred in the pursuit of the duties and objectives of the Wave Computing Liquidating Trust are deemed to be reasonable.

(b)    The Trust Administration Reserve shall be funded from the Liquidating Trust Expense Advance with Majority Consent of the Liquidating Trust Advisory Board.  The Liquidating Trust Advisory Board, by executing this Agreement, hereby consents to and directs the Trust Manager to fund the Trust Administration Reserve in Cash on the Effective Date in the amount of $1 million, which amount may be funded, in whole or in part, from the $1 million prepayment of the GUC ~~Note~~Loan or, in whole or in part, from the ~~'~~GUC Accounts Receivable Proceeds (which amount shall constitute part of the Liquidating Trust Expense Advance). Additional amounts may be added to the Trust Administration Reserve in such amounts and at such times as determined by the Trust Manager after consultation with the Liquidating Trust Advisory Board, from (i) the proceeds of any indebtedness incurred by the Wave Computing Liquidating Trust in accordance with Section 4.5, (ii) from recoveries on Transferred Causes of Action and (iii) other Liquidating Trust Assets from time to time held by the Wave Computing Liquidating Trust.

(c)    If the Trust Manager determines that any funds in the Trust Administration Reserve are not required for purposes set forth in Section 7.2(a), such funds may be distributed to Beneficiaries in accordance with Sections 4.1(c) and 4.1(d).

(d)    Except as determined by the Trust Manager, the Trust Administration Reserve shall not be required to be held separately and may be commingled with unrestricted funds of the Wave Computing Liquidating Trust; provided that funds in the Trust Administration Reserve shall be separately accounted for.

7.3    Reporting and Access to Information.

(a)    The Trust Manager shall cause to be prepared financial and other reports as, in the determination of the Trust Manager, are necessary or desirable for administering the Wave Computing Liquidating Trust, and as are otherwise in furtherance of the intents and purposes of this Agreement. Without limitation, the Trust Manager shall also cause to be timely prepared and distributed such additional statements, reports and submissions (x) as may be necessary to cause the Wave Computing Liquidating Trust to be in compliance with applicable law, or (y) as may be otherwise required from time to time by the Bankruptcy Court.

(b)    The Trust Manager may provide to the Beneficiaries a semi-annual statement in narrative form briefly describing the activities of the Wave Computing Liquidating Trust during the preceding six months, in such detail and covering such matters as the Trust Manager determines is appropriate in its discretion (in consultation with the Liquidating Trust Advisory Board).

(c)    Section 3819(a) of the Trust Act notwithstanding, Beneficiaries shall have the right to obtain from the Wave Computing Liquidating Trust only a copy of the governing instrument and the Certificate of Trust and all amendments thereto, together with

33

copies of any written powers attorney pursuant to which the governing instrument and any certificate and any amendments thereto have been executed.

7.4     Liquidating Trust Agents. The Wave Computing Liquidating Trust may employ such Liquidating Trust Agents, including counsel, advisors, administrators and other professionals, as deemed reasonably necessary or desirable by the Trust Manager to carry out the intents and purposes of the Wave Computing Liquidating Trust, without further order from the Bankruptcy Court. Liquidating Trust Agents shall be appointed, and their appointment may be terminated, by the Trust Manager. Liquidating Trust Agents shall be compensated on such basis as approved by the Trust Manager and shall be paid without further motion, application, notice or other order of the Bankruptcy Court. The fees and expenses of Liquidating Trust Agents shall be satisfied out of the Trust Administration Reserve or the proceeds of Liquidating Trust Assets.

7.5     Disputed General Unsecured Claims Reserve.

(a)     On or as soon as practicable following the Effective Date, the Wave Computing Liquidating Trust is authorized, without further Bankruptcy Court approval, to establish the Disputed General Unsecured Claims Reserve, for the applicable disputed claims established and maintained by the applicable Debtors or Reorganized Debtors. All assets in the Disputed General Unsecured Claims Reserve shall be the property of the Wave Computing Liquidating Trust and not of the holder of any Claim or any other person.

(b)     All Cash held in the Disputed General Unsecured Claims Reserve shall be maintained with a United States FDIC insured financial institution, and may be maintained in an interest-bearing account, as the Trust Manager may from time to time determine. The Cash in the Disputed General Unsecured Claims Reserve may be held separately from any other Cash constituting Liquidating Trust Assets.

## ARTICLE VIII
## DELAWARE TRUSTEE

8.1     Appointment. The Delaware Trustee shall act solely for the purpose of complying with the requirement of section 3807 of the Trust Act, and its powers and obligations hereunder shall become effective upon its execution of this Agreement.

8.2     Powers.

(a)     Notwithstanding any provision hereof to the contrary, the power, authority, duties and responsibilities of the Delaware Trustee shall be limited solely to (i) accepting legal process served on the Wave Computing Liquidating Trust in the State of Delaware and (ii) the execution, delivery and filing of any certificates required to be filed with the office of the Delaware Secretary of State that the Delaware Trustee is required to execute under the Trust Act (including without limitation the Certificate of Trust). Except as provided in the foregoing sentence, the Delaware Trustee shall have no management responsibilities or owe any fiduciary duties to the Wave Computing Liquidating Trust, the Trust Manager, the

34

Liquidating Trust Advisory Board, the Beneficiaries or any other distributee of the Wave Computing Liquidating Trust hereunder. The Delaware Trustee shall have the power and authority, and is hereby authorized and empowered, to execute and to file the Certificate of Trust under the Trust Act, and any other certificate expressly required to be executed and filed by it under the Trust Act, and the execution, delivery and filing of the Certificate of Trust with the Delaware Secretary of State as provided under the Trust Act is hereby authorized, approved, ratified and confirmed.

(b)     By its execution hereof, the Delaware Trustee accepts the trusteeship of the Wave Computing Liquidating Trust on the terms set forth herein. Except as otherwise expressly set forth in Section 8.2(a), the Delaware Trustee shall not have any duty or liability with respect to the administration of the Wave Computing Liquidating Trust, the investment of the Liquidating Trust Assets or the distribution of the Liquidating Trust Assets to the Beneficiaries, and no such duties or liabilities shall be implied. The Delaware Trustee shall not be liable for the acts or omissions of the Debtors, the Trust Manager, the Liquidating Trust Advisory Board or any other person, nor shall the Delaware Trustee be liable for supervising or monitoring the performance of the duties and obligations of the Debtors, the Trust Manager, the Liquidating Trust Advisory Board or any other person under this Agreement. The Delaware Trustee shall not be obligated to give any bond or other security for the performance of any of its duties hereunder. The Delaware Trustee shall not be personally liable under any circumstances, except for its own gross negligence, bad faith or willful misconduct in the performance of its express duties under this Agreement. Without limiting the foregoing:

(i)     the Delaware Trustee shall not be personally liable for any error of judgment made in good faith, except to the extent such error of judgment constitutes willful misconduct, bad faith or gross negligence in the performance of its express duties under this Agreement;

(ii)     the Delaware Trustee shall not have any duty or obligation to manage or deal with the Liquidating Trust Assets, or to otherwise take or refrain from taking any action under this Agreement except as expressly provided in Section 8.2(a), and no implied trustee duties or obligations shall be deemed to be imposed on the Delaware Trustee;

(iii)     no provision of this Agreement shall require the Delaware Trustee to expend or risk its personal funds or otherwise incur any financial liability in the performance of its rights or powers hereunder if the Delaware Trustee has reasonable grounds to believe that the payment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

(iv)     the Delaware Trustee shall not be personally liable for the validity or sufficiency of this Agreement, the value or sufficiency of the Liquidating Trust Assets or for the due execution hereof by the other parties hereto;

(v)     the Delaware Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence

35

that such resolution has been duly adopted by such body and that the same is in full force and effect;

(vi)     the Delaware Trustee may request the Trust Manager to provide a certificate with regard to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, and such certificate shall constitute full protection to the Delaware Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon;

(vii)    in the exercise of its duties hereunder, the Delaware Trustee (I) may act directly or through agents or attorneys pursuant to agreements entered into with any of them and shall not be liable for the acts or omissions of any agents or attorneys selected by it in good faith, and (II) may consult with counsel selected by it in good faith and employed by it, and it shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel;

(viii)   the Delaware Trustee acts solely as Delaware Trustee hereunder and not in its individual capacity, and all persons having any claim against the Delaware Trustee by reason of the transactions contemplated by this Agreement shall look only to the Liquidating Trust Assets for payment or satisfaction thereof;

(ix)     the Delaware Trustee shall not be personally liable for any representation, warranty, covenant, agreement, or indebtedness of the Wave Computing Liquidating Trust;

(x)      the Delaware Trustee shall not incur liability to anyone in acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper (or copy thereof) reasonably believed by it to be genuine and reasonably believed by it to be signed by the proper party or parties;

(xi)     the Delaware Trustee shall have no duty to inquire as to the authenticity of, or to require substantiating evidence of any kind in respect of, any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper provided pursuant to subsection (v), (vi) or (x) of this Section 8.2(b);

(xii)    the Delaware Trustee shall not have any duty or obligation to file Tax Returns or otherwise report Taxes for or on behalf of the Wave Computing Liquidating Trust or Beneficiaries;

(xiii)   the Delaware Trustee shall not have any duty or obligation to act or respond to any notice, direction or other request or instruction unless given or made in writing and otherwise in accordance with this Agreement;

36

(xiv)  the Delaware Trustee shall not have any duty or obligation to perform, and shall not incur any liability for the failure of any other person to perform, any duty or obligation incurred by or imposed upon any other party to this Agreement;

(xv)  The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Debtors, the Trust Manager, the Liquidating Trust Advisory Board or any other person set forth herein. The Delaware Trustee shall be one of the trustees of the Trust for the sole and limited purpose of fulfilling the requirements of Section 3807 of the Trust Act and for taking such actions as are required to be taken by a Delaware trustee under the Trust Act;

(xvi)  The Wave Computing Liquidating Trust at all times shall have at least one other Trustee other than the Delaware Trustee to perform all obligations and duties other than fulfilling the Trust's obligations pursuant to Section 3807(a) of the Trust Act; and

(xvii)  this Agreement is executed and delivered by [  ] not individually or personally but solely as trustee of the Wave Computing Liquidating Trust, in the exercise of the powers and authority expressly conferred and vested in it under this Agreement.

8.3  Compensation. The Delaware Trustee in its individual capacity shall be entitled to receive compensation out of the Trust Administration Reserve for the services that the Delaware Trustee performs in accordance with this Agreement in accordance with such fee schedules as shall be agreed from time to time by the Delaware Trustee in its individual capacity and the Trust Manager. The Delaware Trustee may also consult with counsel (who may be counsel for the Trust Manager) with respect to those matters that relate to the Delaware Trustee's role as the Delaware Trustee of the Wave Computing Liquidating Trust, and the reasonable legal fees incurred in connection with such consultation and any other reasonable out-of-pocket expenses of the Delaware Trustee shall be reimbursed out of the Trust Administration Reserve.

8.4  Duration and Replacement. The Delaware Trustee shall serve for the duration of the Wave Computing Liquidating Trust or until the earlier of (i) the effective date of the Delaware Trustee's resignation, or (ii) the effective date of the removal of the Delaware Trustee. The Delaware Trustee may resign at any time by giving thirty (30) days' written notice to the Trust Manager and the Liquidating Trust Advisory Board; provided, however, that such resignation shall not be effective until such time as a successor Delaware Trustee has accepted appointment. The Delaware Trustee may be removed by the Trust Manager after consultation with the Liquidating Trust Advisory Board, by providing thirty (30) days' written notice to the Delaware Trustee; provided, however, that such removal shall not be effective until such time as a successor Delaware Trustee has accepted appointment. Upon the resignation or removal of the Delaware Trustee, the Trust Manager after consultation with the Liquidating Trust Advisory Board shall appoint a successor Delaware Trustee. If no successor Delaware Trustee shall have been appointed and shall have accepted such appointment within forty-five (45) days after the giving of such notice of resignation or removal, the Delaware Trustee may, at the expense of the Wave Computing Liquidating Trust, petition the Bankruptcy Court for the appointment of a successor Delaware Trustee. Any successor Delaware Trustee appointed pursuant to this

Section shall be eligible to act in such capacity in accordance with this Agreement and, following compliance with this Section, shall become fully vested with the rights, powers, duties and obligations of its predecessor under this Agreement, with like effect as if originally named as Delaware Trustee. Any such successor Delaware Trustee shall notify the Delaware Trustee of its appointment by providing written notice to the Delaware Trustee and upon receipt of such notice, the Delaware Trustee shall be discharged of its duties herein. Any such successor Delaware Trustee shall also file an amendment to the Certificate of Trust as required by the Trust Act.

## ARTICLE IX
## TAX MATTERS

9.1    Tax Treatment.

(a)    For all United States federal income tax purposes, all parties (including, without limitation, the Debtors, the Reorganized Debtors, the Trust Manager, the Liquidating Trust Advisory Board and the Beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Wave Computing Liquidating Trust as:

(i)    a transfer of the Liquidating Trust Assets (subject to any obligations relating to those assets) directly to the Beneficiaries, other than Liquidating Trust Assets that are allocable to Disputed General Unsecured Claims (which shall be treated as a transfer of such assets to the Disputed General Unsecured Claims Reserve based on the number of Interests held in the Disputed General Unsecured Claims Reserve), followed by

(i)    the transfer by such Beneficiaries (and the Disputed General Unsecured Claims Reserve(s)) to the Wave Computing Liquidating Trust of such Liquidating Trust Assets, in exchange for the Interests.

(b)    Accordingly, those persons and entities receiving Interests shall be treated for United States federal income tax purposes as the grantors and owners of their respective shares of the Liquidating Trust Assets other than Liquidating Trust Assets that are allocable to the Disputed General Unsecured Claims Reserve (which shall be treated as a transfer of such assets to the Disputed General Unsecured Claims Reserves based on the number of Interests held in or deemed to be held in the Disputed General Unsecured Claims Reserve). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

9.2    Tax Reporting.

(a)    The Wave Computing Liquidating Trust shall file Tax Returns treating the Wave Computing Liquidating Trust as a grantor trust pursuant to Treas. Reg. § 1.671-4(a) and in accordance with the Plan. The Wave Computing Liquidating Trust also shall annually send (or otherwise make available) to each holder of a beneficial interest in the Wave Computing Liquidating Trust a separate statement setting forth the holder's share of items of income, gain, loss, deduction, or credit and will instruct all such holders to report such items on

38

their United States federal income tax returns or to forward the appropriate information to their respective beneficial holders with instructions to report such items on their United States federal income tax returns. The Wave Computing Liquidating Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Wave Computing Liquidating Trust that are required by any Governmental Unit or Tax Authority.

(b)     Allocations of Wave Computing Liquidating Trust taxable income among the Beneficiaries will be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (without regard to any restrictions on distributions described in the Plan) if, immediately prior to such deemed distribution, the Wave Computing Liquidating Trust had distributed all of its other assets (valued at their tax book value) to the Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Wave Computing Liquidating Trust. Similarly, taxable loss of the Wave Computing Liquidating Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Liquidating Trust Assets (valued at their tax book value). The tax book value of the Liquidating Trust Assets for this purpose will equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, and applicable tax regulations, and other applicable administrative and judicial authorities and pronouncements.

(c)     The Wave Computing Liquidating Trust shall (i) treat the Disputed General Unsecured Claims Reserve, and the Liquidating Trust Assets allocable thereto, as a "disputed ownership fund" governed by Treas. Reg. § 1.468B-9 by timely making an election, (ii) file such Tax Returns and pay such Taxes as may be required consistent with such treatment, and (iii) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.

(d)     The Wave Computing Liquidating Trust may request an expedited determination of Taxes of the Wave Computing Liquidating Trust, under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Wave Computing Liquidating Trust for all taxable periods through the dissolution of the Wave Computing Liquidating Trust.

9.3     Tax Payment.

(a)     The Wave Computing Liquidating Trust shall be responsible for the payment of any Taxes imposed on the Wave Computing Liquidating Trust or the Liquidating Trust Assets, out of the Trust Administration Reserve.

(b)     Notwithstanding subsection (a), the Wave Computing Liquidating Trust shall utilize Cash in or allocable to the Disputed General Unsecured Claims Reserve for the payment of any Taxes imposed in respect thereof; provided that in the event, and to the extent, that the Cash in the Disputed General Unsecured Claims Reserve is insufficient to pay all or any portion of such Taxes, such Taxes shall be paid by the Wave Computing Liquidating Trust from the Trust Administration Reserve and shall be reimbursed to the Trust Administration Reserve by the Disputed General Unsecured Claims Trust to the extent that Cash subsequently

39

becomes available therefor in the Disputed General Unsecured Claims Reserve. Any distribution on account of a Disputed General Unsecured Claim that subsequently becomes Allowed, in whole or in part, shall be reduced, dollar-for-dollar, by the amount of any Taxes that the Wave Computing Liquidating Trust was required to pay with respect to any distribution made to the Disputed General Unsecured Claims Reserve in respect of such Disputed General Unsecured Claim.

## ARTICLE X
## LIMITATION OF LIABILITY AND INDEMNIFICATION

10.1    Limitation of Liability.

(a)    None of the Delaware Trustee (including in its individual capacity), the Trust Manager, the Disbursing Agent, the Liquidating Trust Advisory Board Members, the Liquidating Trust Agents, or their respective principals, advisors, employees or professionals, shall be liable to the Wave Computing Liquidating Trust, any Beneficiary or any Holder of a Disputed General Unsecured Claim for any damages arising out of the creation, administration, management, operation or termination of the Wave Computing Liquidating Trust, including actions taken or omitted in fulfillment of his, her or its duties with respect to the Wave Computing Liquidating Trust, except as may be determined by Final Order to have arisen out of such party's gross negligence, bad faith or willful misconduct; provided that in no event will any such party be liable for punitive, exemplary, consequential or special damages under any circumstances. Furthermore, none of the Delaware Trustee (including in its individual capacity), the Trust Manager or any Liquidating Trust Advisory Board Member shall be liable to the Wave Computing Liquidating Trust, any Beneficiary or holder of a Disputed General Unsecured Claim for any action taken in good faith reliance upon the advice of professionals employed by the Wave Computing Liquidating Trust, and the Trust Manager shall have no liability for any action taken with the Majority Consent or unanimous consent of the Liquidating Trust Advisory Board.

(b)    None of the Delaware Trustee (including in its individual capacity), the Trust Manager, any Liquidating Trust Advisory Board Member, the Disbursing Agent or the Liquidating Trust Agents, when acting in such capacities, shall be subject to any personal liability whatsoever, whether in tort, contract or otherwise, to any person, in connection with the affairs of the Wave Computing Liquidating Trust to the fullest extent provided under section 3803 of the Trust Act, and all Beneficiaries claiming against any of the Delaware Trustee (including in its individual capacity), the Trust Manager, the Liquidating Trust Advisory Board Members or Liquidating Trust Agent, or otherwise asserting claims of any nature in connection with affairs of the Wave Computing Liquidating Trust, shall look solely to the Liquidating Trust Assets for satisfaction of any such claims.

(c)    No successor Trust Manager, Disbursing Agent or Delaware Trustee shall be in any way responsible for the acts or omissions of any Trust Manager, Disbursing Agent or Delaware Trustee in office prior to the date on which such successor becomes the

40

Trust Manager, Disbursing Agent or Delaware Trustee, as the case may be, unless the successor expressly assumes such responsibility.

(d)     Except as otherwise provided herein, the Trust Manager, Disbursing Agent, the Delaware Trustee (including in its individual capacity), any of the Liquidating Trust Agents and the Liquidating Trust Advisory Board Members may absolutely and unconditionally rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties.

(e)     Nothing contained in the Plan Documents shall be deemed to be an assumption by the Delaware Trustee (including in its individual capacity), the Trust Manager, any Liquidating Trust Advisory Board Member, or any Liquidating Trust Agent of any of the liabilities, obligations or duties of the Debtors or shall be deemed to be or contain a covenant or agreement by any of them to assume or accept any such liability, obligation or duty. Neither the Trust Manager, Delaware Trustee (including in its individual capacity) the Disbursing Agent nor the Liquidating Trust Advisory Board Members shall be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against them.

The provisions of this Section 10.1 shall survive the death, dissolution, liquidation, resignation, replacement, or removal, as may be applicable, of the Trust Manager, the Disbursing Agent, the Delaware Trustee or the Liquidating Trust Advisory Board Members, or the termination of the Wave Computing Liquidating Trust or this Agreement, and shall inure to the benefit of the parties heirs, successors, and assigns.

10.2     Indemnification.

(a)     The Delaware Trustee (including in its individual capacity), the Trust Manager, the Liquidating Trust Advisory Board Members, any other agent of the Wave Computing Liquidating Trust and their respective affiliates, and the officers, directors, partners, managers, members, and employees of each of them, as the case may be (all persons so entitled to indemnification, collectively, the "Covered Parties"), shall be indemnified and held harmless, to the fullest extent permitted by law by the Wave Computing Liquidating Trust (but not, for the avoidance of doubt, by the Beneficiaries directly) from and against any and all losses, claims, taxes, damages, reasonable expenses and liabilities (including liabilities under state or federal securities laws) of any kind and nature whatsoever (the "Indemnified Claims"), to the extent that such expenses arise out of or are imposed upon or asserted against Covered Parties with respect to the creation, administration, management, operation or termination of the Wave Computing Liquidating Trust or the execution, delivery or performance of this Agreement or the transactions contemplated hereby and shall not be liable for actions taken or omitted in their capacity as Delaware Trustee (including in its individual capacity), Trust Manager, Disbursing Agent or Liquidating Trust Advisory Board Member, on behalf of, or in fulfillment of their duties with respect to, the Wave Computing Liquidating Trust, except those acts or omissions that are determined by Final Order to have arisen out of such party's own gross negligence, bad faith or willful misconduct, and each shall be entitled to be indemnified,

41

held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such persons and entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such persons or entities regarding the implementation or administration of the Plan Documents or this Agreement or the discharge of their respective duties hereunder or thereunder or in respect thereof, except for any actions or inactions that are determined by Final Order to have arisen out of their own gross negligence, bad faith, or willful misconduct. Without limiting the provisions of this Section 10.2, the Covered Parties shall not be liable for any loss or damage by reason of any action taken or omitted by them pursuant to the discretion, powers and authority conferred, or in good faith believed by them to be conferred on them by any of the Plan Documents and this Agreement.

(b)     The Covered Parties shall be entitled to obtain advances from the Wave Computing Liquidating Trust to cover their reasonable expenses of defending themselves in any action threatened or brought against them as a result of the acts or omissions, actual or alleged, of any such party in its capacity as such; provided, however, that the Covered Parties receiving such advances shall repay the amounts so advanced to the Wave Computing Liquidating Trust immediately upon the entry of a Final Order finding that such parties were not entitled to any indemnity under the provisions of this Section 10.2.

(c)     Any claim of the Covered Parties to be indemnified, held harmless, or reimbursed shall be satisfied solely from the Liquidating Trust Assets, bonds (if any) or any applicable insurance that the Wave Computing Liquidating Trust has purchased, as provided in Section 2.10. The rights of the Covered Parties under this Section 10.2 shall survive the resignation or removal of any Covered Parties and the termination of this Agreement.

(d)     The Wave Computing Liquidating Trust may also determine to provide indemnification to other Liquidating Trust Agents and their respective officers, directors, partners, managers, members and employees, on such terms as the Trust Manager may determine, after consultation with the Liquidating Trust Advisory Board.

## ARTICLE XI
## DURATION OF THE WAVE COMPUTING LIQUIDATING TRUST

11.1    Duration.

(a)     The Wave Computing Liquidating Trust shall commence the process to dissolve upon the date that is the earliest to occur of: (i) the distribution of all Liquidating Trust Assets pursuant to the Plan Documents, (ii) the determination of the Trust Manager that the administration of the Liquidating Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit, or (iii) all the distributions required to be made under this Agreement have been completed; provided, however, that in no event shall the Wave Computing Liquidating Trust dissolve later than five (5) years from the Effective Date, unless (x) the Bankruptcy Court or other court with jurisdiction over the Wave Computing Liquidating Trust, within ninety (90) days prior to the fifth (5th) anniversary of the Effective Date (or within ninety (90) days prior to the end of an extension period), determines that a fixed-period

42

extension, together with any prior extensions, is necessary to facilitate or complete the recovery on and liquidation of the Liquidating Trust Assets, provided that no one individual fixed-period extension shall exceed three (3) years or (y) the Wave Computing Liquidating Trust obtains a favorable private letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the trust as a grantor trust that is a liquidating trust for United States federal income tax purposes. Upon dissolution, the Trust Manager shall wind up and liquidate the Wave Computing Liquidating Trust in accordance with section 3808 of the Trust Act and upon receipt of written notice of the completion of such dissolution and winding up from the Trust Manager, the Delaware Trustee and the Trust Manager shall execute and file a Certificate of Cancellation of the Wave Computing Liquidating Trust with the Delaware Secretary of State in accordance with the Trust Act and thereupon this Agreement shall terminate.

(b) If at any time the Trust Manager determines, in reliance upon its professionals and after consultation with the Liquidating Trust Advisory Board, that the expense of administering the Wave Computing Liquidating Trust, including the making of a final distribution to the Beneficiaries, is likely to exceed the value of the assets remaining in the Wave Computing Liquidating Trust, the Trust Manager may (i) reserve any amounts necessary to dissolve the Wave Computing Liquidating Trust, (ii) donate any balance to one or more organizations selected by the Trust Manager which is described in section 501(c)(3) of the Tax Code and exempt from United States federal income tax under section 501(a) of the Tax Code, as provided in Section 2.8(b), and (iii) dissolve the Wave Computing Liquidating Trust.

11.2    Post-Termination. After the dissolution of the Wave Computing Liquidating Trust and solely for the purpose of liquidating and winding up the affairs of the Wave Computing Liquidating Trust, the Liquidating Trust Advisory Board Members and the Trust Manager shall continue to act as such until their duties have been fully performed. Upon distribution of all the Liquidating Trust Assets, the Trust Manager shall designate a Liquidating Trust Agent to retain all books and records pertaining to the Debtors or the Wave Computing Liquidating Trust that have been delivered to or created by the Wave Computing Liquidating Trust, subject to the provisions of Section 11.3.

11.3    Destruction of Books and Records. All books and records pertaining to the Wave Computing Liquidating Trust that have been delivered to or created by the Wave Computing Liquidating Trust may be destroyed at any time following (x) the date that is six (6) years after the final distribution of Liquidating Trust Assets (unless such records and documents are necessary to fulfill the Wave Computing Liquidating Trust's remaining obligations) subject to the terms of any joint prosecution and common interests agreement(s) to which the Wave Computing Liquidating Trust may be a party, or (y) such earlier date as may approved by the Trust Manager in consultation with the Liquidating Trust Advisory Board. Notwithstanding anything herein to the contrary, neither the Debtors, Reorganized Debtors, or any of the directors, officers, managers, or their advisors or representatives shall dispose of or otherwise destroy any books and records or other documents or information not already provided to the Wave Computing Liquidating Trust that may be relevant to the Transferred Causes of Action or the pursuit of any Liquidating Trust Assets if the Wave Computing

43

Liquidating Trust is continuing to pursue any Liquidating Trust Assets unless upon further order of the Bankruptcy Court or written affirmative consent of the Wave Computing Liquidating Trust.

11.4    Discharge. Except as otherwise specifically provided herein, upon the final distribution of Liquidating Trust Assets and the filing by the Delaware Trustee and the Trust Manager of a Certificate of Cancellation of the Wave Computing Liquidating Trust with the Delaware Secretary of State, the Trustees and the Liquidating Trust Advisory Board Members shall be deemed discharged and have no further duties or obligations hereunder, the Interests shall be cancelled and the Wave Computing Liquidating Trust will be deemed to have been dissolved. In the event that there are Liquidating Trust Assets at the termination of the Wave Computing Liquidating Trust, the Trust Manager after consultation with the Liquidating Trust Advisory Board shall cause to be donated such Liquidating Trust Assets to one or more charitable organizations of the Trust Manager's choice described in section 501(c)(3) of the Tax Code and exempt from United States federal income tax under section 501(a) of the Tax Code, as provided in Section 2.8(b).

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

12.1    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware (without reference to conflicts of law).

12.2    Jurisdiction. Subject to the provisos below, the parties agree that the Bankruptcy Court shall retain jurisdiction over disputes concerning or involving the Wave Computing Liquidating Trust, including, without limitation, the administration and activities of the Wave Computing Liquidating Trust; provided, however, that notwithstanding the foregoing or anything to the contrary set forth in any of the Plan Documents, the Wave Computing Liquidating Trust shall have power and authority to bring (or cause to be brought) any action in any court of competent jurisdiction to prosecute any Transferred Causes of Action, provided, further, however, that (i) the Bankruptcy Court shall have exclusive jurisdiction solely over disputes concerning the transfer of privileges from the Debtors or their estates to the Wave Computing Liquidating Trust under the Plan Documents (subject to any appeals), and (ii) all other disputes regarding the prosecution of Transferred Causes of Action (including discovery disputes, and disputes regarding whether documents or communications are subject to an applicable privilege) may be brought in any court of competent jurisdiction (including the Bankruptcy Court and any court in which any Transferred Causes of Action are brought).

12.3    Severability. If any provision of this Agreement or the application thereof to any person or circumstances shall be determined by Final Order to be invalid or unenforceable to any extent, the remainder of this Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

12.4    Notices. Any notice or other communication required or permitted to be made under this Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally or by facsimile, sent by nationally recognized overnight delivery service, or mailed by first-class mail:

(a)    if to the Delaware Trustee, to:

[ ]

(b)    if to the Wave Computing Liquidating Trust, to:

[ ]

with copies (which shall not constitute notice) to:

[ ]

(c)    if to the Trust Manager, to

[ ]

with copies (which shall not constitute notice) to:

[ ]

(d)    if to the Liquidating Trust Advisory Board Members, to

[ ]

with copies (which shall not constitute notice) to:

[ ]

(e)    if to the Reorganized Debtors, to:

[ ]

With copies (which shall not constitute notice) to:

[ ]

(f)    if to any Beneficiary or holder of a Disputed General Unsecured Claim (and up to one counsel or other agent for each such Beneficiary or holder), to the last known address of such Beneficiary or holder (and such counsel or agent) according to (i) the official claims register of the applicable Debtor or Reorganized Debtors or (ii) if such Beneficiary or holder of a Disputed General Unsecured Claim has properly noticed an updated address to the Wave Computing Liquidating Trust pursuant to this Agreement, such updated address.

45

12.5    Headings. The headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

12.6    Plan Documents. Nothing contained herein shall modify the terms of any other Plan Document, which are intended to be supplemented by the terms of this Agreement. However, to the extent that the terms of any of the other Plan Documents are inconsistent with the terms set forth in this Agreement with respect to the Wave Computing Liquidating Trust, then the terms of each Plan Document shall have controlling effect in the following order of priority (i) the Confirmation Order, (ii) ~~this Agreement~~the Plan and (iii) ~~the Plan~~this Agreement.

12.7    Confidentiality. The Trustees, the Liquidating Trust Advisory Board Members and the Liquidating Trust Agents, and their respective officers, directors, partners, managers, members and employees (the "Confidentiality Parties"), shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidentiality Party of or pertaining to the Debtors, the Reorganized Debtors, the Wave Computing Liquidating Trust, the Beneficiaries or the Liquidating Trust Assets; provided, however, that such information may be disclosed if:

(a)    it was, is now or in the future becomes generally available to the public other than as a result of an improper disclosure by any of the Confidentiality Parties;

(b)    such disclosure is (i) required of any of the Confidentiality Parties pursuant to legal process, including subpoena or other court order or other applicable laws or regulations or (ii) would have been required to produce in response to appropriate discovery measures; or

(c)    the Trust Manager determines that such disclosure is in the interests of the Wave Computing Liquidating Trust or the Beneficiaries, provided, that in respect of material, non-public information pertaining to the Reorganized Debtors the Confidentiality Parties may disclose such information only (i) to a person in accordance with the terms of any confidentiality or similar agreement between such person and the Reorganized Debtors; (ii) to a person pursuant to an agreement of any other person with the Reorganized Debtors allowing such disclosure to such person; (iii) in connection with pursuing the Transferred Causes of Action or otherwise pursuing, preserving or protecting the Transferred Causes of Action to any party that has been advised of the confidential nature of such information and has agreed to comply with the provisions of this Section 12.7; (iv) in a filing made in any legal proceeding commenced in connection with the matters set forth in clause (ii) of this subsection, or (v) as otherwise agreed by the Reorganized Debtors.

12.8    Entire Agreement. This Agreement, including the Exhibits attached hereto, the Plan and the Confirmation Order, contain the entire agreement between the parties and supersede all prior and contemporaneous agreements or understandings between the parties with respect to the subject matter hereof. For the avoidance of doubt, to the extent any person or entity that would otherwise be entitled to receive Interests has established or in the future

establish trusts or other entities or vehicles to facilitate the implementation of the Plan with respect to their Interests or for other purposes, the agreements governing such trusts or other entities or vehicles shall not limit or impose requirements in any way on the Wave Computing Liquidating Trust, the Liquidating Trust Advisory Board Members, the Trustees, Liquidating Trust Agents or any other employee, agent or representative of the Wave Computing Liquidating Trust, and to the extent there is any conflict between the provisions of such agreements and this Agreement, this Agreement shall have controlling effect.

12.9    Named Party. In pursuing any Transferred Causes of Action, or in disposing of any Liquidating Trust Assets, or otherwise administering the Wave Computing Liquidating Trust or any Liquidating Trust Assets, including, without limitation, the execution of documents, such as bills of sale, releases, and agreements, the Trust Manager may authorize the pursuit of such matters and/or execution of any such documents in the name of "Wave Computing Liquidating Trust" or in such other names or such representative capacities as necessary or appropriate.

12.10    Amendment.

(a)    Unless otherwise specified in this Section 12.10, this Agreement may be amended with the unanimous written consent of the Trust Manager and the Liquidating Trust Advisory Board; provided, however, that Bankruptcy Court approval shall be required for any changes or amendments to this Agreement that are inconsistent in any material respect with the terms of the Plan or the Confirmation Order.

(b)    Any amendment, waiver, or modification of this Agreement (or any provision herein) that materially and adversely affects the rights of any Reorganized Debtor shall require the reasonable written consent of such Reorganized Debtor. For the avoidance of doubt, any amendment, waiver, or modification that affects any privilege of any Reorganized Debtor, materially and adversely affects the rights of such Reorganized Debtor.

(c)    Notwithstanding anything to the contrary in this Section 12.10, this Agreement may be amended by order of the Bankruptcy Court upon motion of (i) the Trust Manager after consultation with the Liquidating Trust Advisory Board, or (ii) the Majority members of the Liquidating Trust Advisory Board, in each case, subject to the right of the Liquidating Trust Advisory Board or the Trust Manager, respectively, to respond to such motion, with the reasonable costs of such motion or response to be paid for by the Wave Computing Liquidating Trust.

(d)    Notwithstanding this Section 12.10, no amendments to this Agreement shall be inconsistent with the purpose and intention of the Wave Computing Liquidating Trust to liquidate in an orderly manner the Liquidating Trust Assets (which will maximize the value of such assets) in accordance with Treas. Reg. § 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684. In the event that the Wave Computing Liquidating Trust shall fail or cease to qualify as a liquidating trust in accordance with Treas. Reg. § 301.7701-4(d), this Agreement may be amended with Majority Consent of the Liquidating Trust Advisory Board or Bankruptcy Court approval, to the extent necessary to take such action as the Trust Manager

47

deems appropriate to have the Wave Computing Liquidating Trust classified as a partnership for United States federal tax purposes under Treas. Reg. § 301.7701-3 (but not a publicly traded partnership under section 7704 of the Tax Code), including, if necessary, creating or converting it into a Delaware limited liability partnership or limited liability company that is so classified. Notice of any amendment, waiver or modification to this Agreement shall be delivered to the Debtors or Reorganized Debtors, as applicable, and each Beneficiary in accordance with Section 12.4, unless such amendment, waiver or modification is immaterial.

12.11   Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed original, but such counterparts shall together constitute one and the same instrument. A facsimile or portable document file (PDF) signature of any party shall be considered to have the same binding legal effect as an original signature.

**[REMAINDER OF PAGE BLANK]**

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers, representatives or agents, effective as of the date first above written.

**TRUST MANAGER**

By: _____
Name: Robert A. Kors

**DELAWARE TRUSTEE**
**[ ]**

By: _____
Name:
Title:

**[ ], AS LITIGATION TRUST ADVISORY
BOARD MEMBER**

By: _____
Name:
Title:

**[ ], AS LITIGATION TRUST ADVISORY
BOARD MEMBER**

By: _____
Name:
Title:

**[ ], AS LITIGATION TRUST ADVISORY
BOARD MEMBER**

By: _____
Name:
Title:

49

**WAVE COMPUTING, INC.**, as a Reorganized Debtor

By: _____
Name:  Sanjai Kohli
Title:   President

**MIPS TECH, INC.**, as a Reorganized Debtor

By: _____
Name:  Sanjai Kohli
Title:   President

**HELLOSOFT, INC.**, as a Reorganized Debtor

By: _____
Name:  Sanjai Kohli
Title:   President

**IMAGINATION TECHNOLOGIES, INC.**, as a Reorganized Debtor

By: _____
Name:  Sanjai Kohli
Title:   President

**CAUSTIC GRAPHICS, INC.**, as a Reorganized Debtor

By: _____
Name:  Sanjai Kohli
Title:   President

**MIPS TECH, LLC**, as a Reorganized Debtor

By: _____
Name:  Sanjai Kohli
Title:   President

50

**EXHIBIT A**

**FORM OF**
**CERTIFICATE OF TRUST**
**OF**
**WAVE COMPUTING LIQUIDATING TRUST**

This Certificate of Trust of Wave Computing Liquidating Trust is being duly executed and filed on behalf of such trust by the undersigned, as trustee, to form a statutory trust under the Delaware Statutory Trust Act (12 Del. C. § 3801 et seq.) (the "Trust Act").

1.     Name. The name of the Delaware statutory trust formed by this Certificate of Trust is WAVE COMPUTING LIQUIDATING TRUST.

2.     Delaware Trustee. The name and business address of the trustee of the Trust with a principal place of business in the State of Delaware are [  ], [  ].

3.     Effective Date. This Certificate of Trust shall be effective upon the occurrence of both (i) its filing with the Secretary of State of the State of Delaware and (ii) the effective date of the chapter 11 plan of reorganization of Wave Computing, Inc. and its affiliated debtors and debtors in possession.

IN WITNESS WHEREOF, the undersigned has duly executed this Certificate of Trust in accordance with section 3811(a)(1) of the Trust Act.

<div style="margin-left:40%">

[  ], not in its individual capacity but solely as trustee

_____

Name:


[  ], not in his individual capacity but solely as Trust Manager

_____

Name:

</div>

51

## SCHEDULE A

Trust Manager Compensation

[TO COME] [TO BE
REDACTED]

52

53

| Summary report: Litera® Change-Pro for Word 10.8.2.11 Document comparison done on 1/16/2021 3:48:19 PM | |
|---|---|
| **Style name:** Sidley Default | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Wave - Liquidating Trust Agreement [Draft] 263969008_10.DOCX | |
| **Modified DMS:** iw://SIDLEYDMS/ACTIVE/263969008/13 | |
| **Changes:** | |
| Add | 191 |
| Delete | 209 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 400 |