MARTA E. VILLACORTA (NY SBN 4918280)
Assistant United States Trustee
JASON BLUMBERG (CA SBN 330150)
Trial Attorney
United States Department of Justice
Office of the U.S. Trustee
280 South First Street, Ste. 268
San Jose, California 95113
Telephone: (408) 535-5525
Facsimile: (408) 535-5532
Email: jason.blumberg@usdoj.gov

Attorneys for James L. Snyder,
Acting United States Trustee for Region 12[1]

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| In re:<br><br>**WAVE COMPUTING, INC.,** *et al.*,<br><br>Debtors.[2] | Bankruptcy Case<br>No. 20-50682 MEH<br><br>Chapter 11<br>(Lead Case)<br><br>Date: February 18, 2021<br>Time: 10:15 a.m.<br>Judge: Honorable M. Elaine Hammond<br>Via Zoom |

**OBJECTION AND RESERVATION OF RIGHTS OF THE
UNITED STATES TRUSTEE TO DEBTORS' MOTION FOR ORDER
CONDITIONALLY AUTHORIZING SALE OF THEIR ASSETS**

James L. Snyder, Acting United States Trustee for Region 12 (the "UST"), by and through his undersigned counsel, hereby files this objection to the Debtors' motion (ECF No. 1055) (the "Sale Motion") for an Order conditionally authorizing the sale of substantially all their assets. In support of his Objection, the UST respectfully represents as follows:

---

[1] James L. Snyder, Acting United States Trustee for Region 12, is acting in this appointment for Tracy Hope Davis, United States Trustee for Region 17, who has recused herself.

[2] The Debtors in these chapter 11 cases are Wave Computing, Inc., MIPS Tech, Inc., Hellosoft, Inc., Wave Computing (UK) Limited, Imagination Technologies, Inc., Caustic Graphics, Inc., and MIPS Tech, LLC. The Debtors' mailing address is 3201 Scott Blvd., Santa Clara, CA 95054.

## I. INTRODUCTION

1. Transparency is the hallmark of bankruptcy proceedings. Here, though, the Sale Motion does not disclose the identity of the Stalking Horse Bidder[3] to creditors or other parties in interest.

2. Previously, in December 2020, the Court authorized the Debtors to file an unredacted version of the Stalking Horse Agreement under seal. The primary basis of the Debtors' sealing request was their concern that disclosure of the Stalking Horse Bidder's identity "*at least until the auction is conducted*—will have an adverse effect on the Debtors and their ability to conduct the auction." *See* ECF No. 887 (motion to seal), at p.4 of 7 (emphasis added). However, because the auction was completed in December, the risks attendant to disclosure appear to have substantially diminished.

3. Conversely, the Stalking Horse Bidder's identity is highly relevant to creditors' assessment of the Sale Motion, particularly (i) the Sale Motion's request for a good faith finding under 11 U.S.C. § 363(m), and (ii) the provision of adequate assurance to contract counterparties under 11 U.S.C. § 365(f). Thus, the identity of the Stalking Horse Bidder should be disclosed to creditors prior to the Court's consideration of the Sale Motion.

## II. STATEMENT OF FACTS

A. **General Case Background**

4. On April 27, 2020, Wave Computing, Inc. ("Wave Computing") and its above-referenced direct and indirect subsidiaries (collectively, the "Debtors") commenced voluntary cases under Chapter 11 of the United States Bankruptcy Code. *See* ECF No. 1. The Debtors are currently debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code.

---

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

5. On May 1, 2020, the Court entered an Order directing the joint administration of these cases for procedural purposes only. See ECF No. 50.

6. On May 18, 2020, the UST appointed an official committee of unsecured creditors (the "Committee") for Debtor Wave Computing. See ECF No. 114; see also ECF Nos. 593 and 855.

**B.     The Plan**

7. On December 3, 2020, the Court entered an Order approving the adequacy of the Debtors' fifth amended disclosure statement (ECF No. 848) (the "Disclosure Statement"). See ECF No. 859.

8. On January 15, 2021, the Debtors filed the Fifth Amended Joint Chapter 11 Plan of Reorganization. See ECF No. 1063 (the "Plan"). The Debtors, the Committee, and Tallwood Technology Partners LLC ("Tallwood") are co-proponents of the Plan. See Disclosure Statement, at p. 11 of 140; Plan, at p. 6 of 91. Tallwood is the Debtors' pre-petition lender, the DIP lender, and a holder of interests in Wave Computing. Id., at p. 24 of 91 (§ I.A.170).

9. As set forth in the Disclosure Statement, the Plan contemplates a restructuring of "approximately $56,908,138 in principal amount of funded and general unsecured debt and creditor claims, as well as a committed exit financing up to $5,110,000." See Disclosure Statement, at p. 18 of 140.

10. The Plan has a "toggle" feature that would allow the Debtors to instead proceed with an asset sale if the Debtors receive "one or more qualified bids in an amount in excess of $52,500,000." See Disclosure Statement, at p. 18 of 140.

11. The hearing to consider confirmation of the Plan is February 10, 2021. See ECF No. 981.

## C. The Auction Process and Sale Motion

12. Consistent with the Plan's dual-track strategy, the Debtors entered into the Stalking Horse Agreement with the Stalking Horse Bidder in December 2020. *See* Sale Motion, at p. 10 of 23. Pursuant to the Stalking Horse Agreement, the Stalking Horse Bidder has proposed to acquire the Debtors' assets for approximately $57.5 million. *See id*.

13. On December 11, 2020, the Court authorized the Debtors to file the unredacted Stalking Horse Agreement[4] under seal, in order to maintain confidentiality of the Stalking Horse Bidder's name. *See* ECF No. 891 (sealing Order).[5] The Debtors requested this relief because "[t]he name of the Stalking Horse Bidder is commercially-sensitive information, the disclosure of which—*at least until the auction is conducted*—will have an adverse effect on the Debtors and their ability to conduct the auction." *See* ECF No. 887 (motion to seal), at p.4 of 7 (emphasis added).

14. On December 21, 2020, the Debtors commenced an auction pursuant to Court-approved bidding procedures. At the conclusion of the auction on December 22, 2020, the Debtors selected Tallwood as the successful bidder and the Stalking Horse Bidder as the backup bidder. Tallwood's winning bid reflected certain improvements to the value of the restructuring option of the Plan. *See* Sale Motion, at p. 11 of 33.

15. On January 15, 2021, the Debtors filed the Sale Motion. *See* ECF No. 1055. In the Sale Motion, the Debtors seek an Order conditionally authorizing the sale of their assets to the

---

[4] The Debtors filed the redacted version of the Stalking Horse Agreement as an exhibit to their motion to approve bidding procedures. *See* ECF No. 883-1.

[5] As set forth in the Court's Order, parties in interest may request an unredacted copy of the Stalking Horse Agreement by filing a notice with the Court and entering into a confidentiality agreement with the Debtors "that shall be subject to further Court Order. If the Debtors and a Requesting Party cannot agree to a form of confidentiality within ten (10) days of the filing of the Notice, the Requesting Party or the Debtors may seek further Court adjudication to determine whether the Requesting Party is entitled to the unredacted version of the Stalking Horse Agreement." *See* ECF No. 891, at p.3 of 4 (sealing Order).

Stalking Horse Bidder for $57.5 million, in the event that the Debtors' Board determines that there is a material risk that the effective date of the Plan will not occur on or before March 1, 2021. *See* Sale Motion, at pp. 2, 11-12 of 33. As part of the Sale Motion, the Debtors are seeking a good faith finding under 11 U.S.C. § 365(m). *Id.* at p. 21 of 33.

### III. OBJECTION

16. Bankruptcy Code Section 363(b) states that a trustee,[6] after notice and a hearing, may sell property of the bankruptcy estate other than in the ordinary course of business. *See* 11 U.S.C. § 363(b); *In re Lahijani*, 325 B.R. 282, 287 (B.A.P. 9th Cir. 2005) ("Bankruptcy trustees are permitted to sell property of the estate not in the ordinary course of business after notice and a hearing.").

17. To confirm a sale, a debtor in possession "must establish that: (1) a sound business purpose exists for the sale; (2) the sale is in the best interest of the estate, i.e., the sale price is fair and reasonable; (3) notice to creditors was proper; and (4) the sale is made in good faith." *See In re Slates*, 2012 WL 5359489, at *11 (B.A.P. 9th Cir. Oct. 31, 2012); *see also In re Alaska Fishing Adventure, LLC*, 594 B.R. 883, 887 (Bankr. D. Alaska 2018) ("Proposed sales are reviewed to determine whether they are within the best interests of the estate resulting from a fair and reasonable price, are supported by a valid business judgment and proposed in good faith.").

18. The debtor in possession bears the burden of proof on these elements. *See In re Slates*, 2012 WL 5359489, at *11; *In re 240 N. Brand Partners, Ltd.*, 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996) ("debtors who wish to utilize § 363(b) to dispose of property of the estate must demonstrate that such disposition has a valid business justification.").

---

[6] In a chapter 11 case, a debtor in possession has the powers and duties of a trustee. *See* 11 U.S.C. § 1107(a).

19. Here, the Debtors have not provided creditors with notice of the identity of the Stalking Horse Bidder. This information is highly relevant to creditors' consideration of the Sale Motion, particularly the Sale Motion's request for a good faith finding under 11 U.S.C. § 365(m). *Cf. In re R.B.B., Inc.*, 211 F.3d 475, 478 (9th Cir. 2000) ("The first requirement of having a purchaser in good faith is to have a purchaser. Who was the purchaser of the Franchise?"); *In re Fitzgerald*, 428 B.R. 872, 882 (B.A.P. 9th Cir. 2010) ("The first requirement of a 'good faith' purchaser is that there be an identifiable purchaser….").

20. The identity of the Stalking Horse Bidder is also relevant to the issue of adequate assurance of future performance by the Stalking Horse Bidder with respect to the Assignable Contracts. *See* 11 U.S.C. § 365(f)(2); *In re Valdez Heli-Ski Guides, LLC*, 2006 WL 3247117, at *2 (Bankr. D. Alaska Nov. 3, 2006) ("Under 11 U.S.C. § 365(f)(2), a trustee may assign an unexpired lease of the debtor only if the proposed assignee can provide adequate assurance of future performance under it."); *In re Egghead.com, Inc.,* 2001 WL 35671549, at *3 (Bankr. N.D. Cal. Sept. 21, 2001) ("[T]he *identity* of the Buyer provides adequate assurance to all nondebtor parties to the Assumed Contracts and the Leasehold Interests ….") (emphasis added); *In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance based on assignee's "personal financial resources and his expressed willingness to devote sufficient funding to the new restaurant in order to give it a strong likelihood of succeeding ….").[7]

---

[7] The Debtors do not propose to notify contract counterparties of the Stalking Horse Bidder's identity until after the Sale Motion is approved and the Plan Termination Date occurs. *See* Sale Motion, at p.15 of 33 n.20. The counterparties would then have only 3 days to object on adequate assurance grounds. *Id.* at p. 16 of 33. Moreover, paragraph 29 of the proposed Order could arguably be read to require that adequate assurance objections be filed *before* the Sale Motion is approved and the identity of the Stalking Horse Bidder is even disclosed. *See* ECF No. 1094-1, at p. 14 of 18 ("To the extent that any entity *did not* timely file a Contract Objection by the Contract Objection Deadline with respect to any Assumed Agreement set forth on the Contract Notice, such entity *shall forever be barred* and estopped from objecting: … (iii) that the Purchaser has not provided adequate assurance of future performance as contemplated by section 365 of the Bankruptcy Code.") (emphasis added).

21. Thus, the identity of the Stalking Horse Bidder should be disclosed to creditors prior to the Court's consideration of the Sale Motion. *Cf. In re R.B.B., Inc.*, 211 F.3d at 479-80 (reversing order approving sale and assignment of franchise agreement due to ambiguity as to identity of approved buyer); *In re Lahijani*, 325 B.R. at 288–89 ("The requirement of a notice and hearing [under Section 363(b)] operates to provide both *a means of objecting* and a method for attracting interest by potential purchasers.") (emphasis added); *In re Silicon Graphics, Inc.*, 2009 Bankr. LEXIS 1350, *9 (Bankr. S.D.N.Y. April 24, 2009) ("[A]n auction sale process (here with a stalking-horse bidder) requiring court approval *demands transparency*.") (emphasis added); *see also In re Gordon Properties, LLC*, 514 B.R. 449, 460 (Bankr. E.D. Va. 2013) (the "hallmark of every bankruptcy case is transparency—the full, fair and timely disclosure of information that affects the administration of the estate.").

### IV. CONCLUSION

22. Based on the foregoing, the UST respectfully requests that the Court sustain the Objection and deny the Sale Motion, unless supplemented to identify the Stalking Horse Bidder.

23. The UST reserves his rights to object to any and all amendments and supplements to the Sale Motion.

Dated: February 3, 2021

                                            Respectfully submitted,

                                            James L. Snyder
                                            Acting United States Trustee, Region 12

                                            By: /s/ Jason Blumberg
                                            JASON BLUMBERG
                                            Trial Attorney for the
                                            United States Trustee